1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**G**RIFFITH & **T**HORNBURGH, LLP
ATTORNEYS AND COUNSELORS
8 EAST FIGUEROA STREET, SUITE 300
POST OFFICE BOX 9
SANTA BARBARA, CA 93102-0009
TELEPHONE: 805-965-5131
TELECOPIER: 805-965-6751

(SPACE BELOW FOR FILING STAMP ONLY)

Joseph M. Sholder, Bar No. 126347

Attorneys for Los Osos Community Services District

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

| | |
|---|---|
| In re | ) BK No. ND 06-10548-RR |
| | ) |
| LOS OSOS COMMUNITY SERVICES DISTRICT, | ) Chapter 9 |
| | ) |
| DEBTOR. | ) SECOND AMENDED DISCLOSURE STATEMENT WITH RESPECT TO PLAN FOR ADJUSTMENT OF DEBTS FOR THE LOS OSOS COMMUNITY SERVICES DISTRICT DATED OCTOBER 22, 2010 |
| | ) |
| | ) Hearing on Plan Confirmation Statement |
| | ) |
| | ) Date:   July 28, 2011 |
| | ) Time:   9:00 a.m. |
| | ) Place:  Courtroom 201 |
| | )        1415 State St. |
| | )        Santa Barbara, CA. |

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................2

II.   PURPOSE OF THIS DISCLOSURE STATEMENT AND PLAN
      CONFIRMATION PROCEDURE ......................................................................6

      A.   Purpose of This Disclosure Statement .....................................................6

      B.   Summary of Entities Entitled to Vote on the Plan and
           Certain Requirements Necessary for Confirmation of the Plan............................8

           1.   Classes Entitled to Vote....................................................8
           2.   Confirmation Requirements...............................................9
           3.   Procedure for Voting.........................................................9
           4.   Hearing on Confirmation of the Plan ................................9

III.  HISTORY AND OPERATIONS OF THE DEBTOR.......................................10

      A.   Organization and Formation of the Debtor.............................................10
      B.   LOCSD's Governance .............................................................................11
      C.   Current Operations.................................................................................12
      D.   Funding LOCSD's Operations................................................................12
      E.   Limitations on the Collection and Use of Funds ...................................13
      F.   Events Leading to LOCSD's Chapter 9 Filing .......................................14

IV.   LOCSD'S CHAPTER 9 CASE .........................................................................16

      A.   Commencement and Administration of this Chapter 9 Case................16
      B.   The Passage of AB 2701 and the Impact of the AB 2701 on the Case................17
      C.   The Status of the Wastewater Project .....................................................19
      D.   Litigation with the Contractors Regarding the Remaining
           State Revolving Fund Proceeds ..............................................................19
      E.   Litigation with the County Over the Remaining State
           Revolving Fund Proceeds and the Surplus Real Property ....................20
      F.   Litigation with the Contractors Over Their Claims ..............................21
      G.   Litigation with MWH Americas, Inc. ....................................................21
      H.   Litigation with Taxpayers Watch...........................................................22
      I.   Litigation with Taxpayers Watch, American Alternative Insurance
           Company and Other Parties ...................................................................23
      J.   Claims Objections Over Pre-Paid Assessments.....................................25
      K.   The Contractors Motion to Dismiss the Bankruptcy Case....................26

V.    LOCSD'S LIABILITIES AND ASSETS...........................................................27

      A.   Liabilities ................................................................................................27
      B.   Assets .......................................................................................................28

        1.      Real Property .................................................................28
        2.      Personal Property ..........................................................29

VI.     SUMMARY OF THE PLAN OF DEBT ADJUSTMENT ................................30

        A.      Classification and Treatment of Claims and Description
                Of Claims Filed in the Chapter 9 Case ..................................30

                1.      Unclassified Claims ...............................................30

                        a.      Unpaid Administrative Claims .......................31
                        b.      Professional Claims .....................................32
                        c.      Bar Date for Requesting Payment of
                                Administrative Claims (Other Than Ordinary
                                Course Administrative Claims and Professional Claims)..........32

                2.      Classified Claims ...................................................33

                        a.      Unimpaired Classes of Claims........................33
                                (i)     Class 1 (Secured Claim of Frank K. Freitas,
                                        San Luis Obispo Tax Collector) ...................33
                                (ii)    Class 2 (Secured Claim of Key Equipment
                                        Finance).........................................34
                                (iii)   Class 3 (Secured Claim of Citizens Business Bank..........34
                                (iv)    Class 4 (Secured Claim of California
                                        Infrastructure & Development Bank) ...............34
                                (v)     Class 5(A) (Secured Claim of Bank of New
                                        York Trust Co., N.A.) ............................35
                        b.      Impaired Classes of Claims ...........................35
                                (i)     Class 5 (B) (Secured Claim of MBIA Ins. Corp.)..............35
                                (ii)    Class 6 (Unsecured Claim of the Regional
                                        Water Quality Control Board) ....................36
                                (iii)   Class 7 (Unsecured Claim of the State Water
                                        Resources Control Board).........................37
                                (iv)    Class 8 (All Other Allowed General
                                        Unsecured Claims)...............................37

        B.      Implementation and Means for Consummating This Plan ...................39

                1.      Funding the Plan ...................................................39
                        a.      Payment of Administrative Claims and Professional Claims........39
                        b.      Payment of Class 1, 2, 3, 4, and 5(A) Allowed Secured
                                Claims ..........................................................40
                        c.      Payment of Class 5(B) Allowed Secured Claim.........................40
                        d.      Payment of Class 6, 7, and 8 Allowed Unsecured Claims............40
                2.      Bar Date       .................................................42
                        a.      Pre-Petition Claims .....................................42

|  |  | b. | Administrative Claims | 43 |
|  | 3. | | Filing of Objections to Claims | 44 |
|  |  | a. | Claims Objection Deadline | 44 |
|  |  | b. | No Distribution Pending Allowance | 44 |
|  |  | c. | Authority to Prosecute Claim Objections | 44 |
|  |  | d. | Authority to Settle Disputed Claims | 45 |
|  | 4. | | Preservation of Rights of Action | 45 |
|  | 5. | | Authority to Prosecute Rights of Action | 49 |
|  | 6. | | No Waiver or Limitation of Rights of Action | 49 |
|  | 7. | | Authority to Settle Rights of Action | 50 |
|  | 8. | | Continued Vesting of Property | 51 |
|  | 9. | | Authorization | 51 |
|  | 10. | | Implementation Reports | 51 |
| C. | | | Treatment of Executory Contracts and Unexpired Leases | 52 |
|  | 1. | | Generally | 52 |
|  | 2. | | Rejection | 52 |
|  | 3. | | Assumption | 52 |
|  | 3. | | Cure Payments | 53 |
|  | 4. | | Deadline for the Assertion of Claims for Cure Payments | 53 |
|  | 5. | | Deadline for the Assertion of Rejection Damage Claims; Treatment of Rejection Damage Claim | 54 |
| D. | | | Distributions | 54 |
|  | 1. | | Disbursing Agent | 54 |
|  | 2. | | Delivery of Distributions | 55 |
|  | 3. | | Timeline of Payments | 55 |
|  | 4. | | No Post Petition Accruals | 55 |
|  | 5. | | Undeliverable Distributions | 56 |
|  |  | a. | Holding of Undeliverable Distributions | 56 |
|  |  | b. | Unclaimed Property | 56 |
|  | 6. | | Time Bar to Cash Payments | 57 |
|  | 7. | | Compliance with Tax Requirements | 57 |
|  | 8. | | No Distributions on Account of Disputed Claims | 58 |
|  | 9. | | Disputed Claims Reserve | 58 |
|  | 10. | | Distribution After Allowance | 59 |
|  | 11. | | No De Minimis Distribution | 60 |
|  | 12. | | Setoffs | 60 |
|  | 13. | | Estimation of Claims | 60 |
|  | 14. | | Amendment to Claims | 61 |
|  | 15. | | Allocation of Distributions | 61 |
| E. | | | Continuing Jurisdiction of the Bankruptcy Court | 62 |
| VII. | | | CONFIRMATION AND EFFECTIVENESS OF THE PLAN | 62 |

A.  Voting and Right to be Heard at Confirmation.....................................................63

    1.  Who May Support or Object to Confirmation of Plan?...........................63
    2.  Who May Vote to Accept or Reject the Plan..........................................63

        a.  Allowed Claims for Voting Purposes.......................................63
        b.  Impaired Claims ......................................................................64

    3.  Who is Not Entitled to Vote...................................................................65
    4.  Vote Necessary to Confirm the Plan......................................................65

B.  Confirmation Schedule .........................................................................................66

    1.  Best Interest of Creditors ......................................................................66
        a.  LOCSD Has Made More Than a Reasonable Effort
            to Maximize Distributions to Creditors in this Case ..............66
        b.  Alternative 1- Raising Taxes without a Vote ..........................68
        c.  Alternative 2 – The Forced Sale of Water System..................69
        d.  The Consequences to Small Class 8 Creditors ........................71
        e.  The Consequences to Large Class 8 Creditors ........................71

    2.  Feasibility.............................................................................................72

        a.  Funding of Distributions Under the Plan and Continued
            Operations .................................................................................73
            (i)  Payment of Administrative Claims...................................73
            (ii)  Payment of Classes 1, 2, 3, 4, and 5
                 Allowed Secured Claims...................................................73
            (iii)  Payment of Allowed Classes 6, 7, and 8
                 Allowed Unsecured Claims ..............................................74
        b.  Sustaining Ongoing Operations................................................74

    3.  Good Faith     ..........................................................................................75

D.  Confirmation Without Acceptance of all Impaired Classes:
    The Cramdown Alternative....................................................................................75

E.  Conditions to Confirmation and Effectiveness of Plan.........................................76

    1.  Conditions to Confirmation ...................................................................76
    2.  Conditions to Effective Date..................................................................77
    3.  Non-Occurrence of Effective Date ........................................................77

F.  Effect of Confirmation ..........................................................................................78

    1.  Discharge of LOCSD.............................................................................78
    2.  Judgments Void .....................................................................................79
    3.  Injunction     ...........................................................................................79

4.      Term of Existing Injunction and Stays ..................................................80
5.      Release by Claimants ...........................................................................80

VIII.   CERTAIN RISK FACTORS TO BE CONSIDERED ......................................................80

A.      Fixed Revenue Source and Inability to Raise Revenue ......................................81
B.      Claims Estimates ..................................................................................81
C.      The Solid Waste Franchise Agreement ......................................................82
D.      The Special Tax ...................................................................................82
E.      Treatment of the State Water Resources Board Class 7 Claim .........................82

IX.     CERTAIN TAX CONSEQUENCES ......................................................................82

X.      MISCELLANEOUS PROVISIONS .....................................................................83

A.      Severability .........................................................................................83
B.      Interpretation ......................................................................................84
C.      Successors and Assigns.........................................................................84
D.      Governing Law .....................................................................................84
E.      Headings ............................................................................................84
F.      Saturday, Sunday or Legal Holiday ..........................................................85
G.      Notice of Effective Date ........................................................................85

XII.    RECOMMENDATION AND CONCLUSION .......................................................85

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  The Los Osos Community Services District, a California

2  Community Services District ("LOCSD" or the "Debtor"), Chapter

3  9 Debtor, provides the following Second Amended Disclosure

4  Statement (the "Disclosure Statement") in this Chapter 9 Case:

5  **I.**

6  **INTRODUCTION**

7  LOCSD filed a petition under Chapter 9 of title 11 of the

8  United States Code (the "Bankruptcy Code") on August 25, 2006

9  (the "Bankruptcy Case") which is currently pending before the

10  United States Bankruptcy Court for the Central District of

11  California, Northern Division (the "Bankruptcy Court").  LOCSD

12  is the proponent of the Second Amended Plan For The Adjustment

13  Of Debts of The Los Osos Community Services District, Dated

14  September 1, 2010, (the "Plan"), a copy of which is attached to

15  this Disclosure Statement as Exhibit A.

16  The Plan has been developed based on a review and analysis

17  of LCOSD's financial condition, business plan and

18  rehabilitation alternatives.  LOCSD is providing this

19  Disclosure Statement to all of its known impaired creditors

20  (the "Impaired Creditors") to describe the Plan and to give

21  Impaired Creditors adequate information necessary for them to

22  understand and to vote on the Plan.  The Bankruptcy Court has

23  determined that this Disclosure Statement contains adequate

24  information within the meaning of section 1125 of the

25  Bankruptcy Code and has authorized LOCSD to transmit it to

26  holders of Impaired Claims to solicit votes in favor of the

27  Plan.

28

2

1   There are four Impaired Classes under the Plan, Classes
2   5(B), 6, 7 and 8.  Class 5(B) consists of the Allowed Secured
3   Claim of MBIA Insurance Corporation.  Class 6 consists of the
4   Allowed Unsecured Claim of the Regional Water Quality Control
5   Board.  Class 7 consists of the Allowed Unsecured Claim of the
6   State Water Resources Control Board.  Class 8 consists of All
7   Other Allowed General Unsecured Claims.

8   Generally, the Plan provides that Class 5(B) will be paid
9   an agreed-upon annual amount until it is paid in full from real
10  property assessments.  The Claim of the Class 6 Creditor will
11  be subordinated to the Claims of other Unsecured Creditors if
12  (a) the Plan is approved; (b) the County of San Luis Obispo
13  (the "County") adopts a due diligence resolution to proceed
14  with the County's waste water project; (c) the LOCSD provides
15  the Class 6 Creditor with a draft water conservation plan.  The
16  Claim of the Class 7 Creditor will by paid per the County's
17  agreement to borrow funds to pay the Class 7 Creditor in full
18  as part of an anticipated loan the County will obtain from the
19  State Revolving Fund.

20  The Class 8 Creditors will be paid their Pro Rata share of
21  the Available Funds.  The Available Funds total approximately
22  $4,500,000.  They consist of (1) the Remaining State Revolving
23  Fund Proceeds which total approximately $1,700,000 as of
24  September 10, 2010; and (2) the County's contribution of
25  $2,800,000 resulting from the return by LOCSD's to the County
26  of the Solid Waste Franchise Agreement previously transferred
27  by the County to LOCSD in 2001.  As of the Petition Date, the
28  Class 6, 7 and 8 Claims totaled approximately $46,500,000.  As

3

described in Article IV, Sections C through I of this Disclosure Statement, as the result of the LOCSD's efforts to reduce claims, these Claims now total approximately $27,445,070.  If the Plan is approved, as noted above, the Claims of the Class 6 and 7 Creditors which total approximately $15,263,565 will be satisfied from sources other than the Available Funds.  Class 8 Claims would then total $12,181,505. Further, the Class 8 Claim of Barnard Construction Co. of $5,540,314 must be reduced by Post-Petition Date amounts received by Barnard Construction totaling $785,000. **Thus, Class 8 Creditors will total approximately $11,396,505 and their Pro Rate share of the Available Funds will be approximately 39%. The distribution to Class 8 Creditors may be increased if the Class 8 Creditors decide to seek a vote of the registered voters who live in the area which was to be served by LOCSD's former waste water project (the "Prohibition Zone") to approve a Special Tax to pay Claims of Class 8 Creditors (the "Special Tax") and the voters subsequently vote to approve the Special Tax.**

LOCSD estimates that it will be able to make Distributions from the Remaining State Revolving Fund Proceeds to Class 8 Creditors within 60 days of the Effective Date of the Plan. LOCSD also estimates that the Distributions from amounts received from the $2,800,000 received from the County from the return to the County of LOCSD's Solid Waste Franchise Agreement could take approximately eight months from the Effective Date due to the need to obtain regulatory approvals required for the transfer from the Local Area Formation Organization ("LAFCO")

4

and the need to conduct a California Environmental Quality Act ("CEQA") analysis.  Distributions to Class 8 Creditors of the $2,800,000 received in connection with the return to the County of the Solid Waste System Franchise Agreement transfer will be made on the first Business Day following each Calendar Quarter in which the funds are received until such Available Funds have been exhausted.  If registered voters in the Prohibition Zone approve the Special Tax vote by the requisite two-thirds majority, annual distributions (less the standard administrative costs charged for collecting and processing the tax charged by the County of San Luis Obispo) will be made to Class 8 Creditors.

**LOCSD requests that you cast your ballot in favor of the Plan.**  As described more fully in this document, LOCSD believes that the Plan is in the best interest of all parties, and that any alternative restructuring or reorganization or the dismissal of this Case would result in delay, uncertainty, and significant litigation and expense to LOCSD and its Creditors. Creditors are directed to carefully review the Plan itself before casting their ballots.

**PLEASE READ ARTICLE VI OF THIS DISCLOSURE STATEMENT FOR A DESCRIPTION OF THE PLAN, A SUMMARY OF THE DISTRIBUTIONS THAT CREDITORS WILL RECEIVE UNDER THE PLAN, AND AN EXPLANATION OF CERTAIN ASSUMPTIONS AND PREMISES UPON WHICH THE PLAN IS BASED.**

/ / /

/ / /

/ / /

/ / /

## II.

**PURPOSE OF THIS DISCLOSURE STATEMENT AND PLAN CONFIRMATION**

**PROCEDURE**

### A.    Purpose of This Disclosure Statement

Pursuant to Sections 901(a) and 1125 of the Bankruptcy Code, LOCSD submits this Disclosure Statement to provide Creditors with adequate information to allow them to make an informed judgment regarding the acceptability of the Plan. Section 1125 of the Bankruptcy Code generally requires that the proponent of a plan of adjustment prepare and file with the Bankruptcy Court a disclosure statement that provides information of a kind, and in sufficient detail, that would enable a typical holder of claims in an impaired class of creditors to make an informed judgment on the plan.  This Disclosure Statement provides such information, as well as deadlines for casting ballots and how to do so, the deadlines for objecting to confirmation of the Plan, the requirements that must be satisfied for the Bankruptcy Court to confirm the Plan, and other relevant information.

A copy of the Plan is attached to this Disclosure Statement as Exhibit A.  Upon Confirmation by the Bankruptcy Court, the provisions of the Plan are binding on all Creditors. Therefore, you should read the Plan carefully.

THE DEBTOR PROPOSES THIS DISCLOSURE STATEMENT IN GOOD FAITH, IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE.  THE DEBTOR AUTHORIZES NO REPRESENTATIONS CONCERNING THE DEBTOR OR ITS OPERATIONS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR MAKES NO

6

1  REPRESENTATIONS OTHER THAN THAT THE INFORMATION CONTAINED IN

2  THIS DISCLOSURE STATEMENT IS BELIEVED TO BE CORRECT AT THE TIME

3  OF ITS FILING.  YOU SHOULD NOT RELY ON ANY REPRESENTATIONS OR

4  INDUCEMENTS MADE TO SECURE ACCEPTANCES OR REJECTIONS OF THE

5  PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE

6  STATEMENT IN ARRIVING AT A DECISION TO VOTE FOR OR AGAINST THE

7  PLAN.  YOU SHOULD REPORT ANY SUCH ADDITIONAL REPRESENTATIONS

8  AND INDUCEMENTS TO THE ATTENTION OF COUNSEL FOR THE DEBTOR AND

9  THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF

10  CALIFORNIA IMMEDIATELY.

11      EXCEPT AS OTHERWISE EXPRESSLY STATED, THE DEBTOR HAS

12  DERIVED THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT

13  REGARDING THE DEBTOR AND ITS OPERATIONS FROM THE RECORDS OF THE

14  DEBTOR.  THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT

15  HAS NOT BEEN SUBJECTED TO AN AUDIT.  THE RELIABILITY OF

16  DOCUMENTS PREPARED BY THE DEBTOR DEPENDS ON THE DEBTOR'S

17  FINANCIAL PROCEDURES.  WHILE DEBTOR HAS MADE A REASONABLE

18  EFFORT TO PRESENT ACCURATE INFORMATION REGARDING THE DEBTOR,

19  DEBTOR CANNOT GUARANTEE THE ACCURACY OF THE INFORMATION.

20      DEBTOR HAS TAKEN CERTAIN OF THE MATERIALS CONTAINED IN

21  THIS DISCLOSURE STATEMENT DIRECTLY FROM OTHER, READILY

22  ACCESSIBLE, INSTRUMENTS OR HAS SUMMARIZED OTHER INSTRUMENTS.

23  WHILE THE DEBTOR HAS MADE EVERY EFFORT TO RETAIN THE MEANING OF

24  SUCH OTHER INSTRUMENTS OR THE PORTIONS TRANSPOSED, THE DEBTOR

25  URGES THAT ANY RELIANCE ON THE CONTENTS OF SUCH OTHER

26  INSTRUMENTS SHOULD DEPEND ON A THOROUGH REVIEW OF THE

27  INSTRUMENTS THEMSELVES.

28

**B.    Summary of Entities Entitled to Vote on the Plan And Certain Requirements Necessary for Confirmation of the Plan.**

**1.    Classes Entitled to Vote.**

The Plan divides the Claims of Creditors into nine classes.  Only classes of Creditors with Claims Impaired under the Plan are entitled to vote on the Plan.  Generally, and subject to specific provisions of the Bankruptcy Code, this includes Creditors whose Claims, under the Plan, will be modified in terms of principal, interest, length of time for payment, or a combination of these things.  Each holder of a Claim in a Class that is not Impaired under the Plan is conclusively presumed to have accepted the Plan, and solicitation of acceptances from the holders of such Claims is not required.

The holders of the Allowed Claims in Class 5(B) (MBIA Insurance Corporation), Class 6 (the Regional Water Quality Control Board), Class 7 (the State Water Resources Control Board) and the holders of Class 8 Allowed Claims (All Other Allowed General Unsecured Claims) are entitled to vote on the Plan, because such Classes are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.  Each holder of an Allowed Secured Claim in Class 1 (the San Luis Obispo County Tax Collector), Class 2 (Key Equipment Finance) and Class 3 (Citizens Business Bank), Class 4 (California Infrastructure & Economic Development Bank, and Class 5(A) (the Holders of the Bonds) are deemed to have accepted the Plan because their claims are not impaired by the Plan.

8

### 2.    Confirmation Requirements

The Bankruptcy Court may confirm the Plan only if at least one Class of Impaired Claims has voted to accept the Plan and if certain requirements of the Bankruptcy Code are met as to non-consenting members within a consenting Class and as to non-consenting Classes (if any).  A Class of Claims has accepted the Plan only when at least two-thirds in amount and more than one-half in number of Allowed Claims of the Class actually voting have accepted the Plan.

### 3.    Procedure for Voting

LOCSD has provided copies of this Disclosure Statement and ballots to all known holders of Impaired Claims in the Voting Classes.  **Those Creditors in a Voting Class entitled to vote may cast their vote by completing, dating and signing the Ballot included with this Disclosure Statement and mailing it to: Joseph M. Sholder, Griffith & Thornburgh, LLP, 8 East Figueroa Street, Third Floor, Santa Barbara, CA. 93101.**

**YOUR VOTE WILL NOT COUNT UNLESS IT IS COMPLETED, SIGNED, RETURNED TO AND ACTUALLY RECEIVED NO LATER THAN JULY 8, 2011 AT 5:00 P.M. PACIFIC DAYLIGHT TIME (THE "BALLOTING DEADLINE"). BALLOTS RECEIVED AFTER THE BALLOTING DEADLINE AND BALLOTS RETURNED TO ANYONE OTHER THAN JOSEPH M. SHOLDER MAY NOT BE COUNTED IN CONNECTION WITH CONFIRMATION OF THE PLAN.**

**A BALLOT DOES NOT CONSTITUTE A VALID PROOF OF CLAIM IN THE DEBTOR'S CHAPTER 9 CASE.**

### 4.    Hearing on Confirmation of the Plan.

The Bankruptcy Court has set July 28, 2011, at 9:00 a.m., before the Honorable Robin L. Riblet, United States Bankruptcy

1  Judge, Courtroom 201, 1415 State Street, Santa Barbara,

2  California, for a hearing on confirmation of the Plan.  If the

3  requisite number of acceptances is obtained, the Court, at the

4  hearing on Confirmation, will determine if the Debtor has

5  complied with the provisions of Bankruptcy Code sections 901(a)

6  and 1129.  If the Court makes such a finding, the Court will

7  confirm the Plan.  If the requisite number of acceptances has

8  not been obtained, the Court may, nevertheless, confirm the

9  Plan pursuant to the provisions of Bankruptcy Code sections

10  901(a) and 1129(b).

11      **Any Creditor or party in interest wishing to object to**

12  **confirmation of the Plan shall file their written objections**

13  **with the Bankruptcy Court and serve a copy thereof on Joseph M.**

14  **Sholder, Griffith & Thornburgh, LLP, 8 East Figueroa Street,**

15  **Third Floor, Santa Barbara, CA. 93101 by July 8, 2011.**

16  **Objections not timely filed and served may be deemed waived.**

17                          **III.**

18              **HISTORY AND OPERATIONS OF THE DEBTOR**

19  **A.    Organization and Formation of the Debtor**

20      The LOCSD is an independent special district formed

21  pursuant to Sections 61000 et seq. of the California Government

22  Code (commonly referred to as "Community Services District

23  Law").  The District was formed in 1998 by a vote of the

24  registered voters within LOCSD's boundaries who approved

25  Measure K-98.

26      The LOCSD was formed to provide a number of public

27  services, including constructing and operating a wastewater

28  system within Benefit Zone K, and to provide specific services

previously performed by the County in specific Benefit Zones of what was formerly County Services Area 9 ("CSA-9").  The current LOCSD zones (the "Zones of Benefit") are listed below:

> Zone 9A – water service.

> Zone 9B  – fire protection and prevention services.

> Zone 9D  - Cabrillo Estates, street lighting.

> Zone 9E - Vista De Oro drainage, street lighting, septic tank maintenance.

> Zone 9F - Bay Ridge Estates drainage, street lighting, open space maintenance.

> Zone 9J - drainage.

> Zone K (the "Prohibition Zone") – construction and operation of a wastewater system.

Three maps of the Zones of Benefit are attached collectively as Exhibit B.  Note the first map depicts the various zones operated by CSA-9 that were transferred to the District.  The second map shows the boundary of Zone K (Prohibition Zone) and the LOCSD boundary.  The third map shows the LOCSD boundary and the three water companies (including the Zone A water company) that operate within the LOCSD boundaries.

**B.    LOCSD's Governance**

The LOCSD is governed by a five-person board of directors. The members of the board serve four-year terms.  They are elected by the registered voters living within LOCSD's boundaries.

/ / /

/ / /

11

**C.    Current Operations**

As set forth in detail in article IV, section B below, LOCSD currently has no authority to construct or maintain a wastewater treatment system (the services allocated to Zone K). It continues to provide all the other services in the Zones of Benefit.

**D.    Funding LOCSD's Operations**

LOCSD funds its operations within the various zones from revenues collected within the individual zones as follows:

Zone A – water benefit zone:  Rates Charges and Property Taxes.

Zone B – fire protection benefit zone:  Property Taxes and Special Taxes.

Zone D – Cabrillo Estates, street lighting benefit zone.  Property Taxes:

Zone E – Vista De Oro drainage, street lighting, septic tank maintenance benefit zone:  Property Taxes.

Zone F – Bay Ridge Estates drainage, street lighting, open space maintenance benefit zone:  Property Taxes.

Zone J – drainage benefit zone: Property Taxes and Special Taxes.

Zone K (the "Prohibition Zone") – construction and operation of a wastewater system benefit zone (currently unfunded).

LOCSD's financial statement for the month ending January 31, 2011, and its audited financial statement for the 2009-2010 fiscal year which describe LOCSD's finances and the accounting

1    attributable to each Zone of Benefit are attached as Exhibits C

2    and D.

3    **E.    Limitations on the Collection and Use of Funds**

4         LOCSD collects and uses revenues within the separate Zones

5    of Benefit as mandated by California law.  Specifically,

6    California Government Code sections 61120 through 61124 and

7    Articles XIII(A), XIII(C) and XIII(D) of the California

8    Constitution (the constitutional articles are commonly known as

9    "Proposition 218") mandate that the rates, charges and

10   assessments collected within one Zone of Benefit only be used

11   for facilities and services within that Zone of Benefit.

12         Similarly, the California Constitution limits the

13   rates and charges that LOCSD can charge within a Zone of

14   Benefit. Article XIIID(6) of the California  Constitution

15   imposes the following requirements to impose rates and

16   charges:

17       "(1) Revenues derived from the fee or charge shall

18       not exceed the funds required to provide the

19       property related service; (2) Revenues derived from

20       the fee or charge shall not be used for any purpose

21       other than that for which the fee or charge was

22       imposed; (3) The amount of a fee or charge imposed

23       upon any parcel or person as an incident of property

24       ownership shall not exceed the proportional cost of

25       the service attributable to the parcel; (4) No fee

26       or charge may be imposed for a service unless that

27       service is actually used by, or immediately

28       available to, the owner of the property in question.

13

1     Fees or charges based on potential or future use of

2     a service are not permitted.  Standby charges,

3     whether characterized as charges or assessments,

4     shall be classified as assessments and shall not be

5     imposed without compliance with Section 4."

6    LOCSD cannot charge more than the reasonable costs of

7 providing services within a Zone of Benefit unless it obtains

8 the approval of two-thirds of the votes within that Zone of

9 Benefit to levy a "special tax" like the Special Tax which, at

10 the election of the Class 8 Creditors, will be held pursuant to

11 the Plan.

12 **F.     Events Leading to LOCSD's Chapter 9 Filing**

13    LOCSD filed this chapter 9 case because of events that

14 occurred within the Prohibition Zone (Zone K).  Beginning

15 shortly after its formation in 1998, LOCSD embarked on a

16 lengthy process of designing and constructing a wastewater

17 system (the "Old Project") pursuant to Regional Water Quality

18 Control Board orders and the adopted Basin Plan to remediate

19 groundwater pollution.  As part of that process, LOCSD acquired

20 several parcels of land upon which it intended to build the Old

21 Project.  LOCSD paid for those parcels from proceeds of an

22 assessment district formed pursuant to the procedures of

23 Proposition 218.  One of those parcels was centrally located in

24 the commercial area of Los Osos.  It was commonly known as the

25 "Tri-W" or "Mid-Town" property.

26    The design of the Old Project had the main wastewater

27 treatment facility located on the Mid-Town property.  That and

28 other design features engendered considerable controversy among

14

1   the citizens of Los Osos.  After innumerable public hearings

2   and decisions by various regulatory boards and agencies, in

3   2005, LOCSD received the requisite permits, including permits

4   from the Regional Water Quality Control Board and the

5   California Coastal Commission, to build the Old Project.

6        LOCSD incurred a number of significant financial

7   obligations in connection with the Old Project. LOCSD borrowed

8   $8,636,656.57 from the State Water Resources Control Board's

9   State Revolving Fund, a source of low-interest favorable

10  financing to construct wastewater systems.  LOCSD also obtained

11  the affirmative Proposition 218 vote of the property owners

12  within the Prohibition Zone (Zone K) to pay for land

13  acquisition and the initial design work on the Old Project.

14  And LOCSD contracted with the major creditors in this case,

15  including Monterey Mechanical Co. ("Monterey"), Barnard

16  Construction Co. ("Barnard"), and Whitaker Construction Co.

17  ("Whitaker") (collectively, the "Contractors") and others to

18  construct the Old Project. The Contractor Claims and the bulk

19  of the remaining Claims in this Case are attributable to the

20  Old Project within the Prohibition Zone (Zone K) as described

21  above.

22       At or about the time construction began on the Old

23  Project, a contingent of anti-Old Project Los Osos citizens

24  organized a recall election of three pro-Old Project members of

25  LOCSD's board.  That recall election was successful and the

26  three pro-Old Project members were replaced with three anti-Old

27  Project members.  These new board members formed a majority and

28  voted to stop construction of the Old Project.

15

1    Once the Old Project was stopped, the Regional Water

2 Quality Control Board began procedures to levy fines against

3 LOCSD for violation of prior Regional Water Quality Control

4 Board orders to remediate groundwater pollution.  Those fines

5 totaled $6,627,000 as of the Petition Date.  The State Water

6 Resources Control Board sought to recover the $8,636,656.57 it

7 had loaned LOCSD to build the Old Project by asserting breach

8 of contract claims against LOCSD.  The Contractors sued LOCSD

9 for breach of contract for more than $28,000,000 and suits were

10 filed by other contractors as well.  LOCSD lacked the funds to

11 litigate or to pay these claims and so it filed this Chapter 9

12 Case.

13            **IV.**

14       **LOCSD'S CHAPTER 9 CASE**

15 **A. Commencement and Administration of this Chapter 9 Case.**

16    LOCSD filed this Chapter 9 Case by filing a voluntary

17 petition under chapter 9 of the Bankruptcy Code on August 25,

18 2006.  The Petition was filed in accordance with sections 109,

19 301, 901(a) and 921 of the Bankruptcy Code.

20    On August 28, 2006, the Ninth Circuit Court of Appeals

21 appointed the Honorable Robin L. Riblet, United States

22 Bankruptcy Judge, to preside over this case.

23    In an order entered on September 14, 2006, the Bankruptcy

24 Court confirmed the order for relief that was automatically

25 entered in the Chapter 9 Case pursuant to section 301 of the

26 Bankruptcy Code upon the filing of LOCSD's petition.  The

27 Bankruptcy Court also approved the form of notice of

28 commencement of the Chapter 9 Case and set a deadline for

16

1   objections to LOCSD's eligibility for relief under Chapter 9.

2   The notice was duly served and no objections were received to

3   LOCSD's eligibility for Chapter 9 relief.

4      On December 7, 2006, an Official Committee of Unsecured

5   Creditors (the "Committee") was formed by the Office of the

6   United States Trustee.

7      In an order entered on February 27, 2010, the Bankruptcy

8   Court set May 15, 2007 as the last day to file proofs of claim

9   in this Case.  One hundred thirty-one claims were timely filed.

10   Eight claims were filed after the May 15, 2007 deadline.

11 **B.**    **The Passage of AB 2701 and the Impact of AB 2701 on this**

12       **Case.**

13      On September 20, 2006, less than one month after LOCSD

14   filed its Chapter 9 Case, in response to LOCSD's termination of

15   the Old Project and the urgent need to get a wastewater system

16   constructed to stop groundwater pollution and the pollution of

17   Morro Bay, the governor signed special legislation known as AB

18   2701, codified at California Government Code section 25825.5.

19   AB 2701 became effective on January 1, 2007.

20      AB 2701 prevents LOCSD from constructing a wastewater

21   system.  Instead, it gives County the option to construct a

22   wastewater system and authorizes the County to conduct

23   extensive due diligence, and to obtain the requisite permits

24   and financing prior to exercising the option.  Pursuant to AB

25   2701 the option is exercised by a adopting a due diligence

26   resolution.  The County adopted this resolution on March 15,

27   2011.

28

1        Most importantly for this Chapter 9 Case, since the

2   County decided to build a wastewater project, AB 2701

3   (Cal.Gov.Code §25825.5(h)) requires LOCSD to convey at no cost

4   the Old Project assets to the County that are needed to build

5   the County's wastewater system.   Thus, AB 2701 severely

6   restricted the assets LOCSD could use to fund the Plan.

7   Recognizing this, LOCSD's efforts have been focused on two

8   things: (1) obtaining the County's participation in the Plan

9   process; and (2) the reduction of Creditor Claims.

10       The LOCSD believes that the County will demand that LOCSD

11   convey to the County the following assets owned and paid for by

12   LOCSD pursuant to AB 2701: (a) real property consisting of the

13   Broderson Property (for the disposal of treated effluent) and

14   miscellaneous parcels acquired for pumping/lift stations; (b)

15   the Old Project engineering plans; and (c) the below-described

16   sewer collection system pipes.

17       Before the Old Project was terminated, work was started on

18   the collection system.   That work included the construction of

19   6.1% of the collection pipe (the Old Project Pipe).   The Old

20   Project Pipe was paid for and installed by Barnard and

21   Whitaker.   LOCSD reimbursed Barnard and Whitaker for a small

22   portion of these costs from State Revolving Fund Proceeds.   The

23   Old Project Pipe was never formally transferred to LOCSD by

24   Barnard and Whitaker.   LOCSD believes that the Old Project Pipe

25   will be used in the County's wastewater project and that the

26   County will request that the LOCSD convey the Old Project Pipe

27   to the County pursuant to AB 2701.   Based upon the foregoing

28

18

1  facts, the LOCSD plans to quitclaim what ever interest it may

2  have in the Old Project Pipe to the County.

3  **C.    The Status of the Wastewater Project.**

4      The County's due diligence efforts to determine whether it

5  will build its own wastewater system have consumed the last

6  three years.  In August 2010, the California Coastal Commission

7  issued a Coastal Development Permit to the County to construct

8  a wastewater system.  On March 1, 2011, the State Water

9  Resources Control Board committed to State Revolving Fund

10  financing for a portion of the wastewater system.  LOCSD's

11  understand is that the SRF financing, combined with the

12  financing obtained from the United States Department of

13  Agriculture, is all of the funding the County needs to go

14  forward with the wastewater project.  On March 15, 2011, the

15  County adopted the due diligence resolution required by AB

16  2701.

17  **D.    Litigation with the Contractors Regarding the Remaining**

18       **State Revolving Fund Proceeds.**

19      On September 28, 2006, LOCSD removed to the Bankruptcy

20  Court a San Luis Obispo County Superior Court lawsuit that the

21  Contractors had previously filed against LOCSD (the "State

22  Court Lawsuit").

23      Before the State Court Lawsuit was removed, the Superior

24  Court had entered an injunction in favor of the Contractors

25  prohibiting LOCSD from (1) using the Remaining State Revolving

26  Fund Proceeds then totaling approximately $2,000,000

27  representing the remaining funds LOCSD had received from the

28  State Water Resources Control Board $8,636,656.57 loan to pay

1   Old Project costs, and (2) selling or hypothecating any of

2   LOCSD's real property assets related to the Old Project.  LOCSD

3   filed a motion to vacate the Superior Court's injunction.  In

4   an order entered on January 16, 2007, the Bankruptcy Court

5   granted LOCSD's motion vacating the Superior Court's injunction

6   based upon a finding that the Contractors had no property

7   rights in the Remaining State Revolving Fund Proceeds.  In that

8   order, the Bankruptcy Court also ordered that LOCSD not use the

9   Remaining State Revolving Fund Proceeds before March 15, 2007

10  except to pay up to $10,000 per month to counsel for the

11  Official Committee of Unsecured Creditors. That Order was later

12  modified as referenced in Section E, below.

13  **E.    Litigation with the County Over the Remaining State**

14  **Revolving Fund Proceeds and the Surplus Real Property.**

15       On October 3, 2006, the County sued Los Osos in the

16  Bankruptcy Court (the "County Adversary Proceeding").  In the

17  County Adversary Proceeding, the County sought, among other

18  things, to enjoin LOCSD from transferring or encumbering any of

19  LOCSD's real property which was acquired to build the Old

20  Project.  The County also claimed the right to the Remaining

21  State Revolving Fund Proceeds.  Both these claims were based

22  upon AB 2701 which requires LOCSD to turn over these assets to

23  the County if the County elects to build a wastewater system.

24       In an order entered on April 1, 2008, the Bankruptcy Court

25  approved a settlement agreement between the County and LOCSD.

26  That settlement agreement provided, among other things, that

27  the Remaining State Revolving Fund Proceeds could not be used

28  by LOCSD unless authorized in a confirmed plan of debt

20

1  adjustment in this Chapter 9 Case or otherwise agreed to by the

2  County and LOCSD.  The settlement agreement also provided that

3  LOCSD would not transfer or encumber any of LOCSD's real

4  property which was acquired to build the Old Project unless

5  authorized in a confirmed plan of debt adjustment in the

6  Chapter 9 Case or otherwise agreed to by the County and LOCSD.

7  **F.    Litigation with the Contractors Over Their Claims.**

8      The Contractors filed proofs of claims in the following

9  amounts:  Whitaker--$6,920,188.59; Barnard--$12,000,000.00; and

10  Monterey--$8,876,656.00.  LOCSD disputed the validity and

11  amount of those claims.

12      The Bankruptcy Court granted the Contractors' motions for

13  relief from stay to arbitrate those issues.  The matters were

14  arbitrated and the claims of the Contractors were reduced by

15  approximately $18,000,000.  In orders entered on November 25,

16  2008, the Bankruptcy Court approved the following allowed

17  claims for the Contractors: Whitaker--$1,287,500; Barnard--

18  $5,540,314; Monterey--$4,600,000.  The Barnard claim must be

19  reduced by approximately $785,000 due to the post arbitration

20  receipt of $700,000 from Barnard's sale of Old Project

21  construction pipe and materials and the transfer of

22  approximately $85,000 in retentions held in escrow.

23  **G.    Litigation with MWH Americas, Inc.**

24       MWH Americas, Inc. was the Project Engineer on the Old

25  Project.  It filed a proof of claim for $1,043,774.89.  LOCSD

26  also disputed the validity and amount of this claim and

27  asserted that LOCSD had claims for affirmative relief against

28  MWH Americas, Inc.  After lengthy negotiations, the parties

21

1  entered into a settlement agreement which provided that MWH

2  Americas, Inc. would have no claim in this case and LOCSD would

3  have no affirmative claims against MWH Americas, Inc.  That

4  settlement agreement was approved in an order of the Bankruptcy

5  Court entered on February 17, 2010.

6  **H.    Litigation with Taxpayers Watch**

7  In connection with the controversy over the Old Project

8  discussed in Article III, section F above, a measure was placed

9  on the ballot called Measure B.  Measure B purported to reverse

10  the decision of LOCSD's former-board to build the wastewater

11  treatment facility on the Mid-Town property and to vest the

12  power to locate that facility with the voters.

13  The voters approved Measure B in September 2005.

14  Taxpayers Watch then filed suit to invalidate Measure B in the

15  San Luis Obispo County Superior Court.  It succeeded.  LOCSD

16  then appealed.  When this Chapter 9 Case was filed, that appeal

17  was pending.

18  The passage of AB 2701 effectively mooted this controversy

19  because it gave the County the option to design, locate and

20  construct a wastewater system so neither LOCSD or its property

21  owners had any power to enforce Measure B.  Realizing this, the

22  parties entered into a settlement agreement.

23  That agreement provided that Taxpayers Watch's claim for

24  $31,050 in attorney's fees incurred in litigating the validity

25  of Measure B would be settled by LOCSD's payment to Taxpayers

26  Watch of $100 and by Taxpayers Watch having a $100 claim in

27  this case.  Taxpayers Watch will waive the $100 payment and the

28  $100 claim if the Bankruptcy Court approves LOCSD's Plan.  In

22

1  exchange, LOCSD agreed to dismiss its appeal of the adverse

2  superior court ruling invalidating Measure B.  The settlement

3  was approved in an order of the Bankruptcy Court in an order

4  entered on February 17, 2010.

5  **I.    Litigation with Taxpayers Watch, American Alternative**

6  **Insurance Company and Other Parties.**

7       The termination of the Old Project spawned even more

8  litigation.  There were a number of lawsuits filed and claims

9  asserted involving Taxpayers Watch, Gordon Hensley, Joyce

10 Albright, the State Water Resources Control Board, LOCSD's

11 former general counsel Burke, Williams & Sorensen LLP, and

12 American Alternative Insurance Company. These lawsuits and

13 claims are summarized below.

14      1.   LOCSD sued the State Water Resources Control Board in

15 State Court alleging that State Water Resources Control Board's

16 failure to continue making State Revolving loan payments for

17 the Old Project constituted a breach of contract.  The State

18 Water Resources Control Board cross-complained against the

19 LOSCD and Burke, Williams & Sorensen LLP, seeking recovery of

20 the loan made to the LOCSD.  As to the LOCSD, the State Water

21 Resources Control Board alleged causes of action for breach of

22 contract.  As to Burke, Williams & Sorensen LLP, the

23 allegations were limited to claims that Burke, Williams &

24 Sorensen LLP wrongfully received State Revolving Fund loan

25 proceeds as attorney fee payments.

26      2.   Taxpayers Watch sued the LOCSD and members of the

27 LOCSD Board of Directors alleging that individual Board members

28

23

1 | violated Cal.Code.Civ.P. 526a, which bars public officials from

2 | wasting or illegally spending public funds.

3 |     3.   LOCSD's directors and officers liability insurer,

4 | American Alternative Insurance Company, refused to defend or

5 | indemnify LOCSD and the individual Board members in the

6 | Taxpayers Watch lawsuit.  LOCSD sued American Alternative

7 | Insurance Company in the United States District Court for

8 | declaratory relief that American Alternative Insurance Company

9 | was obligated to do so.  The LOCSD obtained a partial Summary

10 | Judgment against AAIC.

11 |     These disputes were all resolved in a global settlement

12 | agreement.  In essence, $348,150 in Alternative Insurance

13 | Company money was paid to the State Water Resources Control

14 | Board to partially reimburse the State Water Resources Control

15 | Board for the State Revolving Fund monies allegedly paid by

16 | LOCSD to Burke, Williams & Sorensen LLP, and $55,000 of

17 | Alternative Insurance Company money was paid to Taxpayers

18 | Watch's attorneys for fees incurred in connection with the

19 | waste-of-public-funds action.  The $348,150 paid to the State

20 | Water Resources Control Board was credited against the claims

21 | the State Water Resources Control Board has against LOCSD in

22 | this Bankruptcy Case.  Burke, Williams & Sorensen LLP also gave

23 | up approximately $792,618 in pre-petition claims and $31,357 in

24 | post-petition claims against LOCSD.  Burke, Williams & Sorensen

25 | LLP also paid $95,000 to Taxpayers Watch's attorneys. LOCSD

26 | released Burke, Williams & Sorensen LLP from any claims LOCSD

27 | might have against Burke, Williams & Sorensen LLP.  The pending

28 | Taxpayers Watch actions were dismissed or withdrawn.

1    The net benefit to LOCSD's estate was that Burke, Williams

2  & Sorensen LLP relinquished $792,618 in pre-petition claims and

3  $31,357 in post-petition claims against LOCSD, and the State

4  Water Resources Control Board's claim was reduced by $348,150.

5  The settlement was approved by the Bankruptcy Court in an order

6  entered on June 15, 2010.

7  **J.   Claims Objections Over Pre-Paid Assessments.**

8    Of the 139 claims filed in this case, the vast majority

9  (in excess of 100) were filed by LOCSD property owners seeking

10 refunds of pre-paid assessments for the Old Project.  These

11 claims arose from the following facts.

12   LOCSD obtained the affirmative Proposition 218 vote of the

13 property owners in the Prohibition Zone (Zone K) in which the

14 property owners agreed to assess themselves to pay for land

15 acquisition and the initial design work on the Old Project.

16 The LOCSD's then-board offered the property owners a choice of

17 either paying the assessments over a period of years of pre-

18 paying the assessments in one lump sum.  The lump sum option

19 resulted in a discount of the total amount that would have been

20 owed if the assessments were paid over time.

21   A number of property owners chose the pre-payment lump sum

22 option.  Most of the pre-payments ranged from approximately

23 $2,000 to $6,000.  Those funds were then used by LOCSD to pay

24 for the designing and beginning construction on the Old

25 Project.

26   When the Old Project was terminated, the property owners

27 filed their claims in this case.  The basis of these claims

28 was, in essence, that they had been promised that LOCSD would

1  build a completed wastewater project using their pre-paid

2  assessments; the Old Project was never built, so they were

3  entitled to a refund of the pre-paid assessments.

4      LOCSD filed an objection to many of those claims.  It

5  argued that the Proposition 218 voting material distributed to

6  the voters along with the resolutions of LOCSD's then-board and

7  other materials did not promise the voters a completed project,

8  but only that their assessments would be used the initial work

9  on the Old Project.  Taxpayers Watch filed a response to that

10 objection.  The Bankruptcy Court sustained LOCSD's objection to

11 claims totaling $568,990.

12 **K.    The Contractors' Motion to Dismiss the Bankruptcy Case.**

13     On November 9, 2009, Barnard and Monterey filed a motion

14 to dismiss this Bankruptcy Case alleging that LOCSD had unduly

15 delayed in filing a plan and that creditors would receive more

16 on account of their claims if the Bankruptcy Case were

17 dismissed.  LOCSD opposed that motion arguing that its proposed

18 Plan would pay more and pay them faster than if this case was

19 dismissed, and that a dismissal would result in delay,

20 uncertainty, and significant litigation and expense to LOCSD

21 and its Creditors.

22     In an order dated February 19, 2010 the Bankruptcy Court

23 denied the motion to dismiss and ordered that LOCSD, Barnard,

24 Monterey, the County and the Official Committee of Unsecured

25 Creditors attend a settlement conference with the Honorable

26 Randall Newsome, United States Bankruptcy Judge.  The parties

27 attended settlement conferences on July 19, August 6 and

28

26

1  September 3, 2010.  The parties were unable to settle their

2  disputes.

3                                      V.

4                    LOCSD'S LIABILITIES AND ASSETS

5  A.   Liabilities.

6        LOCSD filed its Schedules D, E and F listing its secured,

7  priority and general unsecured Creditors pursuant to section

8  924 of the Bankruptcy Code on February 23, 2007.  As described

9  in Article IV of this Disclosure Statement, many claims have

10  been significantly reduced through litigation and settlements.

11  LOCSD's analysis of the current claims in this case is attached

12  hereto as Exhibit E.  These claims total approximately

13  $23,805,684 in secured claims and $26,438,072 in general

14  unsecured claims.

15        As described in Section 9.7.1 of the Plan, LOCSD can file

16  objections to any claims to which it has not previously

17  objected or resolved through litigation or settlement within

18  one hundred eighty (180) days after the Effective Date.  The

19  Plan also provides for LOCSD to retain any and all Rights of

20  Action, defenses, offset and recoupment rights, and any

21  counterclaims that may exist with respect to any disputed

22  claim, whether under sections 502, 553 or 558 of the Bankruptcy

23  Code or otherwise.  LOCSD reserves all rights with respect to

24  the allowance of disallowance of any claims to which it has not

25  previously objected or resolved through litigation or

26  settlement.  **In voting on the Plan, a creditor may not rely on**

27  **the absence of a reference in this Disclosure Statement or Plan**

28  **or the absence of an objection to its proof of claim as any**

**indication that LOCSD will not ultimately object to the amount,
validity, priority, security or allowability of its claim.**

**B.    Assets.**

    **1.    Real Property.**

A list of LOCSD's real property assets is attached as
Exhibit F.  This real property is of two types: (1) real
property LOCSD uses to provide services to LOCSD's residents
within identified Zones  (for example, its fire station (Zone
B)and water system (Zone A)) and (2) real property LOCSD
acquired to construct the Old Project  (Zone K) that is not
subject to AB 2701.

The primary Old Project real property is the Mid-Town
Property.   The Mid-Town Property was was originally purchased
by LOCSD for approximately $3,200,000.

The current value of the Mid-Town Property is speculative
and, at least for now, it has been significantly reduced in
value.  That is because in granting the County a permit to
build the County's wastewater project, the California Coastal
Commission imposed conditions that will make it difficult if
not impossible to develop the Mid-Town Property for the
foreseeable future.  Specifically, in connection with granting
the County the permit to build the County's wastewater project,
the California Coastal Commission required that the California
Coastal Commission and the County agree upon a revised Local
Coastal Program prior to future development of the Mid-Town
Property.  Part of the revised plan may involve using the Mid-
Town Property to mitigate environmental impacts from further
development within Zone K.  LOCSD has an appraisal stating that

28

1   with these restrictions the Mid-Town Property is worth

2   approximately $950,000.  Because the Mid-Town Property was

3   purchased with assessment district funds from the Old Project,

4   the LOCSD is obtaining a legal opinion addressing whether the

5   Mid-Town Property can be used to satisfy the Claims of Class 8

6   Creditors.

7       LOCSD's remaining real property assets consist of small

8   parcels of land acquired for drainage basins, lift stations and

9   other purposes relating the Old Project.  These parcels are of

10  questionable value due to access and zoning issues.

11      **2.  Personal Property.**

12      LOCSD's financial statement listing its cash assets as of

13  August 31, 2010 is attached as Exhibit C.  The cash assets

14  consist of general operating funds, funds that are restricted

15  by law or agreement for certain uses and mandated reserve funds

16  used to replace worn out equipment or to deal with emergencies

17  like fires and flooding.  LOCSD's other personal property

18  primarily consists of vehicles and equipment it uses to provide

19  services. LOCSD's other non-essential personal property assets

20  include the Remaining State Revolving Fund Proceeds (which

21  total approximately $1,700,000 as of September 10, 2010) and

22  engineering plans for the Old Project.

23      Finally, although not an asset, LOCSD has a solid waste

24  franchise contract with a company that picks up and disposes of

25  solid waste within LOCSD's boundaries (the "Solid Waste

26  Franchise Agreement"). LOCSD acquired the Solid Waste Franchise

27  Agreement in 2001 from the County at no charge with the

28  approval of the LAFCO.  The current Solid Waste Franchise

1  Agreement requires the solid waste company to pay LOCSD ten

2  percent of the fees and charges collected by the solid waste

3  company.  This generates approximately $160,000 in annual

4  revenue to LOCSD.

5  **VI**

6  **SUMMARY OF THE PLAN OF DEBT ADJUSTMENT**

7  **This Disclosure Statement contains a summary of the Plan.**

8  **The discussion of the Plan is qualified by reference to the**

9  **more detailed provisions set forth in the Plan and its**

10 **exhibits, the terms of which are controlling.  All terms**

11 **defined in the Plan have the same meaning in this Disclosure**

12 **Statement.  The definitions do not appear in the summary set**

13 **forth below.  Please refer to Article I of the Plan for the**

14 **definitions.**

15 The Plan, if confirmed, will bind LOCSD, any entity

16 acquiring property under the Plan, and all Creditors in the

17 Chapter 9 Case.  The Plan is intended to deal with all Claims

18 against LOCSD whether or not allowed by the Bankruptcy Court

19 pursuant to Bankruptcy Code section 502.

20 The estimated Claim amounts included in the description of

21 Classes below are LOCSD's best estimates.  The actual total

22 amount of Allowed Claims in certain Classes may differ

23 significantly from the estimates below.

24 **A.    Classification and Treatment of Claims and Description of**

25 **      Claims Filed in the Chapter 9 Case.**

26 **      1.    Unclassified Claims.**

27 In accordance with sections 901 and 1123(a)(1) of the

28 Bankruptcy Code, Administrative Claims and Professional Claims

30

1 have not been classified.  Article IV of the Plan governs the

2 treatment of Administrative Claims and Professional Claims.

3              **a.    Unpaid Administrative Claims.**

4       Administrative Claims are claims for an administrative

5 expense of the kind described in sections 503(b) and 507(a)(1)

6 of the Bankruptcy Code.  Section 4.1 of the Plan provides that

7 except to the extent that the holder of an Allowed

8 Administrative Claim agrees to a different treatment, LOCSD

9 will pay to each holder of an Allowed Administrative Claim, in

10 full satisfaction of that Claim, cash equal to the amount of

11 that Claim on the later of the Effective Date, the date on

12 which such Claim becomes an Allowed Administrative Claim, or as

13 soon thereafter as practical; provided, however, that

14 Administrative Claims (except Professional Claims) that

15 represent obligations in the ordinary course of business of

16 LOCSD ("Ordinary Course Administrative Claims") will be paid in

17 full in the ordinary course of LOCSD's business in accordance

18 with the terms and conditions of those obligations.

19       Throughout the course of this Chapter 9 Case, LOCSD has

20 tried to satisfy administrative expenses as they became due.

21 Thus, LOCSD believes that most claims that would otherwise be

22 Administrative Claims have been or will be satisfied in the

23 ordinary course of business before the Effective Date.

24       The Internal Revenue Service has filed an administrative

25 tax claim (claim no. 139) for $1,010.94 for FICA taxes

26 allegedly owing for the second quarter of 2009.  LOCSD will pay

27 this claim and any accumulated interest on the Effective Date.

28 Also included in the Internal Revenue Service's administrative

1  tax claim also included a claim for miscellaneous penalties of

2  $140,303.00 for the fourth quarter of 2004.  LOCSD disputes

3  this penalty claim.  The Internal Revenue Service's penalty

4  claim will be treated as a Class 8 All Other Allowed General

5  Unsecured Claims.

6           **b.    Professional Claims.**

7        Professional Claims are Claims for reimbursement by

8  LOCSD's bankruptcy counsel (Griffith & Thornburgh, LLP) and

9  counsel for the Committee (South Bay Law Group).  Section

10  943(a)(3) of the Bankruptcy Code provides that all Professional

11  Claims must be approved by the Bankruptcy Court as reasonable.

12  Section 4.2 of the Plan provides that upon Bankruptcy Court

13  approval, LOCSD will pay all unpaid Professional Claims from

14  the Remaining State Revolving Fund Proceeds.

15        To date, LOCSD has paid the fees of the professionals from

16  the Remaining State Revolving Fund Proceeds with the permission

17  of the Bankruptcy Court and/or the permission of the County as

18  those fees have come due.

19           **c.    Bar Date for Requesting Payment of**

20                **Administrative Claims (Other Than Ordinary**

21                **Course Administrative Claims and Professional**

22                **Claims).**

23        Section 9.3 of the Plan provides that all requests for

24  payment of Administrative Claims (Other Than Ordinary Course

25  Administrative Claims and Professional Claims) that have not

26  been paid, released or settled must be filed with the

27  Bankruptcy Court and served upon LOCSD and its counsel no later

28  than thirty (30) days after the date on which the Notice of

1   Effective Date is mailed pursuant to section 10.4 of the Plan.

2   Any untimely request for payment of Administrative Claim will

3   be barred.

4        **2.   Classified Claims.**

5        Sections 901(a) and 1122 of the Bankruptcy Code

6   require that a plan classify the claims of a debtor's

7   creditors.  The Plan classifies the following classes of

8   claims:

9        Class 1 - Allowed Secured Claim of Frank K. Freitas, San

10  Luis Obispo Tax Collector;

11       Class 2 - Allowed Secured Claim of Key Equipment Finance;

12       Class 3 - Allowed Secured Claim of Citizens Business Bank;

13       Class 4 - Allowed Secured Claim of California

14  Infrastructure & Development Bank;

15       Class 5(A) - Allowed Secured Claim of the Holders of the

16  Bonds;

17       Class 5(B) - Allowed Secured Claim of MBIA Insurance Corp;

18       Class 6 - Allowed Unsecured Claim of the Regional Water

19  Quality Control Board;

20       Class 7 - Allowed Unsecured Claim of the State Water

21  Resources Control Board;

22       Class 8 - All Other Allowed General Unsecured Claims.

23            **a.   Unimpaired Classes of Claims**

24                 **(i). Class 1 (Secured Claim of Frank K. Freitas,**

25                      **San Luis Obispo Tax Collector).**

26       The Secured Claim of Frank K. Freitas, San Luis Obispo Tax

27  Collector, is a claim for payment of unpaid real property taxes

28  totaling $3,556.62 (proof of claim no. 43).  Section 6.1 of the

1  Plan provides that the Class 1 Claim will retain all legal and

2  equitable rights under non-bankruptcy law.

3              **(ii). Class 2 (Secured Claim of Key Equipment**

4                        **Finance).**

5      The Secured Claim of Key Equipment Finance is based upon a

6  financing lease of with an approximate balance of $10,508.38

7  (proof of claim no. 101) as of the Petition Date.  This Claim

8  was paid in full on March 15, 2007 and the Class 2 Claimant

9  will receive no further distributions under the Plan.

10             **(iii).    Class 3.  (Secured Claim of Citizens**

11                       **Business Bank).**

12      The Secured Claim of Citizens Business Bank is for a loan

13  made to LOCSD to finance the purchase of a fire truck.  This

14  Claim was paid in full according to the loan terms on September

15  1, 2010.  The Class 3 Claimant will receive no further

16  distributions under the Plan.

17             **(iv).    Class 4 (Secured Claim of California**

18                       **Infrastructure & Development Bank).**

19      The Secured Claim of California Infrastructure &

20  Development Bank is for financing of a water system project

21  constructed by LOCSD in 2005 with an approximate balance as of

22  August 1, 2010 of $4,516,021.29 (proof of claim 151).  This

23  Claim is secured by LOCSD's water system.  Section 6.4 of the

24  Plan provides that California Infrastructure & Development Bank

25  will retain unaltered all legal, equitable and contractual

26  rights under the Enterprise Installment Sale Agreement Dated as

27  of December 6, 2004, Agreement No. CIEDB-B04-060 and that all

28  security interests will remain in place.  LOCSD is current on

34

1    its obligations to California Infrastructure & Development Bank

2    and will continue to make its semi-annual interest payments of

3    $68,869.33 due on February 1, 2011 and will make all further

4    payments per the terms of the Amortization Schedule attached as

5    Exhibit E to the Enterprise Installment Sale Agreement Dated as

6    of December 6, 2004, Agreement No. CIEDB-B04-060.

7             **(v). Class 5(A) (Secured Claim of Bank of New**

8                  **York Trust Co., N.A.).**

9        The secured claim of the Holders of the Bonds which were

10   issued to plan and commence construction of the Old Project.

11   That claim had an approximate balance of $17,000,000 as of the

12   Petition Date.  This Claim is secured by the assessments on the

13   real property of those LOCSD residents living in the

14   Prohibition Zone (Zone K).  Those assessments are collected on

15   an annual basis by the County and the County makes the payments

16   on the Bonds to U.S. Bank.  Section 6.5 of the Plan provides

17   that the Holders will retain unaltered all legal, equitable and

18   contractual rights under the Bond Documents all security

19   interests pertaining to the Bonds will remain in place.

20   Further, the procedure by which the County collects the

21   assessments and pays funds to U.S. Bank will also remain in

22   place until the Bonds are paid in full.  LOCSD is current on

23   its obligations tothe Holders.

24         **b.**    **Impaired Classes of Claims**

25            **(i). Class 5(B) (Secured Claim of MBIA**

26             **Insurance Corp).**

27       The Class 5 Secured Claim of MBIA Insurance Corp. arises

28   out of the bonds that were issued by LOCSD to fund part of the

Old Project.  MBIA Insurance Corp. is the insurer of those bonds.  The Bond Documents required LOCSD to maintain certain bond proceeds in reserve and segregate them (approximately $1,158,000 to the Debt Service Reserve Fund).  Instead, LOCSD pooled the reserve funds and spent them for other purposes.

MBIA Insurance Corp.'s claim is for $714,268.00, plus interest, fees and expenses (proof of claim no. 119) and is secured by the assessments paid annually by the property owners.  The LOSCD is informed that the current balance of the claim is approximately $450,000 in principal, excluding interest, fees and expenses.  Section 7.1 of the Plan provides that in full satisfaction of its Allowed Secured Claim, MBIA Insurance Corp. shall be paid $25,000 per year from the annual assessment overhead charges collected by the County until the Claim is paid in full without interest.  Each annual payment will be made by the County at the time the County collects and makes payments to U.S. Bank.

**(ii).    Class 6 (Unsecured Claim of the Regional Water Quality Control Board).**

The Class 6 Unsecured Claim of the Regional Water Quality Control Board arises from an Administrative Civil Liability Order (No. R3-2005-0137) levied against LOCSD pursuant to California Water Code sections 13308 and 13350 for LOCSD's failure to complete the construction of a community sewer system by August 30, 2004.  The liability imposed by the Regional Water Quality Control Board was $10,000 per day.

The Regional Water Quality Control Board's claim is for $6,627,000.00 (proof of claim no. 126).

36

1    Section 7.2 of the Plan provides that the Claim of the

2    Class 6 Creditor will be subordinated to the Claims of Class 7

3    and 8 Creditors if (a) the Plan is approved; (b) the County of

4    San Luis Obispo (the "County") adopts a due diligence

5    resolution to proceed with the County's waste water project;

6    (c) the LOCSD provides the Class 6 Creditor with a draft water

7    conservation plan.

8                    **(iii).    Class 7 (Unsecured Claim of the**

9                    **State Water Resources Control Board).**

10    The Class 7 Unsecured Claim of the State Water Resources

11   Control Board arises from a loan and other advances to LOCSD by

12   the State Water Resources Control Board's State Revolving Fund

13   to design and construct a portion of the Old Project.

14    State Water Resources Control Board's claim is for

15   $8,636,565.57 and is comprised of a $6,486,144.00 State

16   Revolving Fund loan, $150,421.57 in accrued interest as of the

17   Petition Date, and a $2,000,000 grant (proof of claim no. 128).

18    If the Plan is approved, the County will satisfy the State

19   Water Resources Control Board's claim in connection with the

20   State Revolving Fund financing the County obtained from the

21   State Revolving Fund for the County's wastewater project and

22   the State Water Resources Control Board will not receive a

23   distribution under the Plan.

24                    **(iv).    Class 8 (All Other Allowed General**

25                    **Unsecured Claims).**

26    The Class 8 of All Other General Unsecured Claims consists

27   of all Unsecured Claims other than the Unsecured Claims of the

28   Regional Water Quality Control Board and the State Water

Resources Control Board.  As set forth in Exhibit E and Article IV., Section F, LOCSD estimates that the Other Allowed General Unsecured Claims total approximately $11,396,505 (approximately $12,181,505 less $785,000 received Post-Petition by Barnard).

Section 7.4 of the Plan provides that the Claimants in Class 8 will receive on account of their Allowed General Unsecured Claims and in full satisfaction, release and discharge thereof, a Pro Rata share of any Cash Distribution from the Available Funds and their Pro Rata Share of the Special Tax annual installments.  Available Funds are (1) the Remaining State Revolving Fund Proceeds (net after the payment of Professional Claims); and (2) the County's $2,800,000 contribution to the Plan in exchange for the return to the County of LOCSD's Solid Waste Franchise Agreement.  The Special Tax annual installments will be based upon the amount of the Special Tax the Class 8 Creditors decide to ask the voters in the Prohibition Zone to approve.

LOCSD estimates that it will be able to make Distributions from the Remaining State Revolving Fund Proceeds within 60 days of the Effective Date of the Plan.  LOCSD also estimates that the Distributions from amounts received from the County's contribution based upon the transfer of LOCSD's Solid Waste Franchise Agreement could take approximately eight months from the Effective Date because regulatory approvals are required for that transfer.  Distributions from the proceeds of the return of the Solid Waste System Franchise Agreement will be made on the first Business Day following each Calendar Quarter in which the funds are received until such Available Funds have

1   been exhausted.  Distributions from the Special Tax annual

2   installments will be paid after the County collects and

3   processes the Special Tax payments.

4        On or before the first Distribution to be made to

5   Claimants in Class 8, LOCSD will establish the Disputed Claims

6   Reserve for holders of Disputed Claims.  Subject to LOCSD's

7   right to have the amount of any contingent or unliquidated

8   Disputed Claims estimated and to use the estimated amount for

9   the purposes of setting the Disputed Claims Reserve, LOCSD will

10  deposit into such reserve on each date a Distribution is made

11  to the holders or Disputed Claims an amount equal to the Pro

12  Rata Share of the Available Funds and the Special Tax

13  installments that would have been distributed to holders of

14  Disputed Claims had such Claims been Allowed on the date of

15  each Distribution in the Face Amount.  All Distributions

16  required to be made the holders of Class 8 Claimants from

17  Available Funds and the Special Tax installments and the

18  Disputed Claim Reserve will be established and fully funded by

19  LOCSD with Available Funds and Special Tax installments as such

20  funds are available.

21  **B.   Implementation and Means For Consummating This Plan.**

22       **1.   Funding the Plan**

23            **a.   Payment of Administrative Claims and**

24                 **Professional Claims.**

25       LOCSD's payment obligation under Section 4.1 of the Plan

26  to pay Ordinary Course Administrative Claims will be satisfied

27  from LOCSD funds on hand allocated to that purpose.

28

1    Professional Claims will be satisfied from the Remaining State

2    Revolving Fund Loan Proceeds.

3         **b.    Payment of Class 1, 2, 3, 4 and 5(A) Allowed**

4              **Secured Claims.**

5         LOCSD's payment obligations under Section 6.1 of the Plan

6    to pay Allowed Secured Claims in Class 1, will be satisfied

7    from LOCSD funds on hand allocated to that purpose.  LOCSD's

8    obligation under Section 6.4 of the Plan to pay the Allowed

9    Class 4 Secured Claim will come from revenues received from

10   LOCSD's operation of LOCSD's water system.  Payment of the

11   Allowed Class 5(A) Secured Claim pursuant to Section 6.5 of the

12   Plan will come from assessments of paid by the owners and

13   received by the County.

14        **c.   Payment of Class 5(B) Allowed Secured Claim.**

15        LOCSD's payment obligation under Section 7.1 of the Plan

16   to pay the Allowed Class 5(B) Secured Claim will be satisfied

17   from annual real property bond assessments received by the

18   County.

19        **d.    Payment of Class 6, 7 and 8 Allowed Unsecured**

20             **Claims.**

21        Pursuant to Section 7.2 of the Plan, the Class 6

22   Creditor's Claim will be satisfied by, among other things,

23   LOCSD providing the Regional Water Quality Control Board with a

24   draft groundwater conservation plan.  That plan will be

25   prepared by LOCSD's staff.

26        Pursuant to Section 7.3 of the Plan, the Class 7

27   Creditor's Claim will be satisfied by the County from the State

28   Revolving Fund loan.

LOCSD's obligation under Section 7.4 of the Plan to pay Allowed Class 8 Allowed Unsecured Claims will be satisfied from Available Funds which are: (1) the approximately $1,772,942 in Remaining State Revolving Fund Proceeds (net after the payment of Professional Claims); and (2) the $2,800,000 contribution received from the County from the return to the County of LOCSD's Solid Waste Franchise Agreement.  Class 8 Allowed Unsecured Claims will also receive annual installments from the proceeds from the Special Tax if the Class 8 Creditors seek voter approval of a Special Tax and if the Special Tax is approved by the Prohibition Zone residents. Distributions under the Plan shall constitute payment in full satisfaction, release and discharge of all Allowed Secured Claims and Allowed General Unsecured Claims.

The Remaining State Revolving Fund Proceeds are on hand and are approximately $1,772,942 as of September 10, 2010.  The only contingency to the payment of these funds to Class 8 Creditors is the confirmation of the Plan.

The County's $2,800,000 contribution to the Plan is subject to three contingencies.  First, the County Board of Supervisors and the LOCSD's Board of Directors will have to approve the return of the Solid Waste Franchise Agreement to the County.  Second, the return of the Solid Waste Franchise Agreement will require LAFCO approval and a CEQA analysis.

The third contingency arises from the fact that LOCSD's transfer of the Solid Waste Franchise Agreement will deprive it of approximately $160,000 in revenues.  Per LOCSD's current budget, approximately $113,000 is used for administrative

1  expenses and $47,000 is allocated to reserves.  LOCSD will need

2  to take steps to cut expenses by an equivalent amount.

3      LOCSD can make up some of those lost revenues by cutting

4  certain expenses.  For example, LOCSD can terminate its

5  contract to televise LOCSD board meetings to save approximately

6  $16,000.  LOCSD can also recoup approximately $96,000 to

7  $128,000 in savings by reducing employee costs per LOCSD Policy

8  2050.

9      Other savings will be accomplished by transferring the

10 Bayridge and Vista de Oro Zones of Benefit 9E and 9F to the

11 County as part of LOCSD's/County LAFCO application to transfer

12 the Solid Waste Franchise Agreement to the County.  Before that

13 could occur, the County's Board of Supervisors and the

14 District's Board of Directors would have to agree to the

15 transfer pursuant to the Brown Act and the transfer would have

16 to be approved by LAFCO.

17      **2.  Bar Date.**

18          **a. Pre-Petition Claims**.

19      The Bankruptcy Court set May 15, 2007, as the Bar Date

20 (deadline) for filing proofs of claim against LOCSD except for:

21 (i) claims arising from rejection of executory contracts or

22 unexpired leases; (ii) claims of governmental units; and (iii)

23 claims arising as the result of transfer avoidance pursuant to

24 Chapter 5 of the Bankruptcy Code.  The deadline for filing

25 proofs of claim arising from rejection of executory contracts

26 and leases under Section 10.5 of the Plan, is thirty (30) days

27 after the Effective Date.

28

1    For claims of Governmental Units, the last day for filing

2   proofs of claim is:  (i) before 180 days after the date of the

3   Order for Relief; or (ii) by May 17, 2007, whichever is later.

4   Any Claim for which a proof of claim is not filed with the

5   Bankruptcy Court within such time will be forever barred and

6   will not be enforceable against LOCSD or its assets,

7   properties, or interests in property.

8               **b. Administrative Claims.**

9    Requests for payment of Administrative Claims other than

10  an Ordinary Course Administrative Claim must be filed with the

11  Bankruptcy Court no later than thirty (30) days after Notice of

12  the Effective Date is mailed. Claims for payment of monetary

13  amounts necessary to be paid to cure any existing defaults or

14  arrearages in connection with executory leases or contracts

15  assumed pursuant to Section 10.1 of the Plan must be filed with

16  the Bankruptcy Court and served on LOCSD by the deadline set by

17  the Bankruptcy Court for filing objections to Confirmation of

18  the Plan and in the manner established for filing objections to

19  confirmation of the Plan (see, Article II, Section B.3., supra

20  and Section 10.4 of the Plan).

21   **Except as otherwise provided above, any Administrative**

22  **Claim for which a request for payment is not filed with the**

23  **Bankruptcy Court and served within such time will be forever**

24  **barred and will not be enforceable against LOCSD or its assets,**

25  **properties, or interests in property.**

26  */ / /*

27  */ / /*

28  */ / /*

### 3. Filing of Objections to Claims.

#### a.    Claims Objection Deadline.

LOCSD has the right to object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability or allowance is disputed in whole or in part. The Plan provides that unless otherwise ordered by the Bankruptcy Court, any objections to Claims must be filed and served by LOCSD no later than one hundred and eighty (180) days after the Effective Date (or, in the case of Claims lawfully filed after the Effective Date, by not later than one hundred and eighty (180) days after the date of filing of such Claims).  If the holder of the Claim is a debtor under any chapter of the Bankruptcy Code, then the deadline shall be one hundred eighty (180) days after LOCSD obtains relief from stay or other relief which will permit the Filing of an objection to such Claim. This time period can be extended by the Bankruptcy Court upon LOCSD's request.

#### b.    No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, no Cash or other property shall be distributed under the Plan on account of any Claim unless and until such Claim becomes Allowed.

#### c.    Authority to Prosecute Claim Objections.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing and except as expressly provided herein, from and after the Effective Date LOCSD shall have the exclusive right to file objections to Claims. As to objections Filed prior to the Effective Date but not resolved or determined before the Effective Date, LOCSD, as provided

44

1   herein, shall be vested on the Effective Date with all rights,

2   interests, and authority with respect to the objections.

3          **d.    Authority to Settle Disputed Claims.**

4          From and after the Effective Date, LOCSD shall be

5   authorized with respect to those Claims that are not Allowed

6   hereunder or by Final Order of the Bankruptcy Court, pursuant

7   to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy

8   Code, to compromise and settle Disputed Claims, in accordance

9   with the following procedures, which shall constitute

10  sufficient notice in accordance with the Bankruptcy Code and

11  the Bankruptcy Rules for compromise and settlement of claims:

12              (i). If the proposed amount at which the

13  Disputed Claim to be allowed is less than or equal to $100,000,

14  LOCSD shall be authorized and empowered to settle the Disputed

15  Claim and execute necessary documents, including a stipulation

16  of settlement or release without the need to obtain Court

17  approval of such settlement; and

18              (ii). If the proposed amount at which the

19  Disputed Claim is to be allowed is greater than $100,000, LOCSD

20  shall be authorized and empowered to settle such Disputed Claim

21  and execute necessary documents, including a stipulation of

22  settlement or release, only upon receipt of Bankruptcy Court

23  approval of such settlement after notice to those Persons on

24  the Post-Effective Date Limited Notice List and a hearing.

25         **4. Preservation of Rights Of Action.**

26         Except as otherwise provided in the Plan, all Rights of

27  Action shall remain property of LOCSD and may be prosecuted,

28  settled, or abandoned by LOCSD, subject to the terms and

conditions of the Plan and the Confirmation Order. As explained

in the Plan, Rights of Action means all claims, causes of

action, and defenses of LOCSD, including, but not limited to:

counterclaims; rights of offset or recoupment; objections to

Claims; objections to the validity, priority, amount,

allowance, or classification of any Claim; rights to seek

equitable or contractual subordination of Claims, which claims,

causes of action, and defenses are against, arise out of, or

are related to any of the following (except for such claims,

causes of action, and defenses that have been settled and

released pursuant to the Plan or an order of the Bankruptcy

Court):

        a. All claims, causes of action and defenses against

the current and/or past officers and/or directors of LOCSD,

control persons of LOCSD, LOCSD's predecessors in interest, and

the agents, attorneys, accountants, investment bankers,

underwriters, and other professionals employed by any of the

current and/or past officers and/or directors of LOCSD, or

LOCSD's predecessors in interest, including, but not limited

to, claims, causes of action and defenses arising out of or

related to breach of duty, negligence, mismanagement and/or

excessive compensation;

        b. All claims, causes of action and defenses against

any Person who is or was a past or present officer, director,

executive, control person, or predecessors in interest of

LOCSD, and the agents, attorneys, accountants, investment

bankers, underwriters, and other professionals employed by any

Person who is or was a past or present officer, director,

executive, control person, or predecessors in interest of LOCSD;

c. All claims, causes of action, and defenses arising out of or related to lawsuits and proceedings pending as of the Petition Date, and any lawsuit or proceeding commenced by or against LOCSD after the Petition Date;

d. All rights, claims, causes of action and defenses arising under or related to Claims that have been purchased during this Chapter 11 Case and/or are asserted by a Person other than the original claimant, including, but not limited to, defenses to the amount of such claims based on failure to provide adequate information to the transferors;

e. All claims, causes of action and defenses arising out of or related to any theft claims, fire loss claims and damage claims at any time arising against any Person;

f. All defenses, counterclaims, third party claims, offset claims, rights of recoupment, causes of action for equitable or contractual subordination, indemnity claims and coverage claims arising out of or related to any Claim against LOCSD, whether based on the Bankruptcy Code or any applicable law;

g. All claims related to taxes, and rights to file tax returns and amended returns and to seek tax determinations, including, without limitation, tax loss carryback claims, net operating loss claims, determinations of basis or depreciation, overpayment claims, offset and counterclaims;

h. All claims, causes of action and defenses against or with respect to financial institutions and any other Person for the turnover of funds of, or due to, LOCSD;

i. All causes of action, claims and defenses arising under the Plan and the Bankruptcy Code;

j. All rights, claims, causes of action and defenses for coverage in or under any and all insurance policies of LOCSD; and

k. All rights, claims, or Causes of Action owned by, accruing to, or assigned to LOCSD pursuant to the Bankruptcy Code or pursuant to any contract, statute, or legal theory.

Also expressly retained are all of the claims, causes of action, defenses, counterclaims, causes of action for equitable or contractual subordination, offset and recoupment rights of LOCSD against any Person whether or not particularly disclosed in the Disclosure Statement, it being the intent expressly provided in the Plan, and LOCSD will request that the Confirmation Order include findings of fact and a judicial determination that the requirements of In re Heritage Hotel, 160 B.R. 374, 377 (BAP. 9th Cir. 1993), aff'd, 59 F.3d 175 (9th Cir. 1995), and The Alary Corp. v. Sims (In re Associated Vintage Group, Inc.), 283 B.R. 549, 564 (BAP. 9th Cir. 2002), have been satisfied, and that all claims and causes of action held by LOCSD are retained and shall not be barred under the principles of res judicata, and will not be waived by reason of estoppel, judicial estoppel or res judicata.

1          **5.    Authority to Prosecute Rights of Action.**

2          Section 9.4 of the Plan provides that, following the

3    Effective Date, LOCSD will be the appointed representative to,

4    and may, pursue, litigate, and compromise and settle any and

5    all Rights of Action, as appropriate, without further notice,

6    the opportunity for a hearing, or Bankruptcy Court approval.

7    The deadline for commencing an action based on a Right of

8    Action shall be one hundred eighty (180) days after the

9    Effective Date or as may be further extended by order of the

10   Bankruptcy Court; provided, however, that if the entity against

11   whom the Debtor asserts a Right of Action is a debtor under any

12   Chapter of the Bankruptcy Code, then the deadline shall be one

13   hundred eighty (180) days after the Debtor obtains relief from

14   stay or other relief which will permit the Filing of an action

15   against such entity based on a Right of Action.

16         **6.    No Waiver or Limitation Of Rights Of Action.**

17         The failure to list any potential or existing Rights of

18   Action generally or specifically in the Disclosure Statement is

19   not intended to and shall not limit the rights of LOCSD to

20   pursue any such action. Unless a Right of Action is expressly

21   waived, relinquished, released, compromised or settled in the

22   Plan, LOCSD expressly reserves all Rights of Action for later

23   adjudication and, as a result, no preclusion doctrine,

24   including without limitation the doctrines of res judicata,

25   collateral estoppel, issue preclusion, claim preclusion,

26   estoppel Judicial, equitable or otherwise) or laches, shall

27   apply to such Rights of Action upon or after the confirmation

28   or consummation of the Plan or the Effective Date. In addition,

49

1  LOCSD expressly reserves the right to pursue or adopt against

2  any other entity any claims alleged in any lawsuit in which

3  LOCSD is a defendant or an interested party.

4       **7.  Authority to Settle Rights of Action**.

5       From and after the Effective Date, LOCSD shall be

6  authorized with respect to any Rights of Action, pursuant to

7  Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code,

8  to compromise and settle such Rights of Action, in accordance

9  with the following procedures, which shall constitute

10 sufficient notice in accordance with the Bankruptcy Code and

11 the Bankruptcy Rules for compromise and settlement of such

12 Rights of Action:

13       (i) If (a) the total amount in controversy in

14 connection with a Rights of Action to be settled is less than

15 $100,000 (i.e. the total amount LOCSD seeks to recover,

16 exclusive of costs, attorney's fees, expenses and punitive

17 damages, is less than $100,000), (b) a proceeding has not been

18 commenced with respect to such Rights of Action in any Court

19 and (c) the proposed settlement of the Rights of Action

20 involves solely the payment in Cash to LOCSD of an amount not

21 less than fifty percent (50%) of the total amount in

22 controversy in connection with such Rights of Action, then

23 LOCSD shall be authorized and empowered to settle the Rights of

24 Action and execute necessary documents, including a stipulation

25 of settlement or release, without the need for prior Court

26 approval of such settlement; and

27       (ii) If the settlement of a Rights of Action at issue

28 is not one that complies with the requirements of the foregoing

1  subsection (i), then LOCSD may settle such Rights of Action

2  with the approval of the Bankruptcy Court pursuant to

3  Bankruptcy Rule 9019 after notice to those Persons on the Post-

4  Effective Date Limited Notice List and a hearing.

5       LOCSD currently is not aware of any viable actions against

6  third parties.

7       **8. Continued Vesting of Property.**

8       On and after the Effective Date, LOCSD shall remain vested

9  with all its property.

10      **9. Authorization.**

11      Section 9.8 of the Plan provides that each of the

12  officials and employees of LOCSD, subject to the extent

13  authorized by LOCSD's Governing Board, are authorized to

14  execute, deliver, file, or record such contracts, instruments,

15  releases, indentures, and other agreements or documents and

16  take such actions as may be necessary or appropriate to

17  effectuate and further evidence the terms and provisions of the

18  Plan.

19      **10. Implementation Reports.**

20      On the earlier of 90 days following the Confirmation Date

21  or 30 days after Distributions are first made to the holders of

22  Allowed Claims in Classes 6, 7 and 8, LOCSD will file an

23  implementation report with the clerk of the Bankruptcy Court

24  selling forth the status of implementation of the Plan.

25  Supplemental implementation reports are to be filed every 120

26  days thereafter until the time that LOCSD files a motion with

27  the clerk of the Bankruptcy Court requesting the entry of a

28  final decree closing the Chapter 9 Case.  A final

1 implementation report will be included in LOCSD's motion for a

2 final decree.

3 **C. Treatment of Executory Contracts and Unexpired Leases**.

4     **1. Generally**.

5     The Bankruptcy Code empowers a debtor, subject to the

6 approval of the Bankruptcy Court, to assume or reject the

7 debtor's executory contracts and unexpired leases. An

8 "executory contract" generally means a contract under which

9 material performance other than the payment of money is due by

10 the parties.

11     If an executory contract or unexpired lease is rejected by

12 a debtor, the rejection operates as a pre-petition breach of

13 such agreement. If an executory contract or unexpired lease is

14 assumed by a debtor, the assumption obligates the debtor to

15 perform under the agreement, and damages arising for any

16 subsequent breach of the agreement are treated as

17 administrative expenses.

18     **2.    Rejection**.

19     LOCSD does not intend to reject any executory contracts.

20     **3. Assumption**.

21     Under Section 10.1 of the Plan LOCSD assumes the executory

22 contracts and unexpired leases set forth in Exhibit 1 to the

23 Plan and the Plan constitutes a motion to assume such executory

24 contracts and unexpired leases. Subject to the occurrence of

25 the Effective Date, entry of the Confirmation Order by the

26 Bankruptcy Court will constitute approval of and authorization

27 for the assumption of such executory contracts and unexpired

28 leases pursuant to section 365(a) of the Bankruptcy Code and a

finding by the Bankruptcy Court that each assumption is in LOCSD's best interest and all parties in interest in the Chapter 9 Case.

**3. Cure Payments**.

Section 10.2 of the Plan provides that, as soon as practicable after and in no event later than thirty (30) days after the Effective Date, LOCSD will pay to each party to an executory contract or unexpired lease assumed pursuant to Section 10.1 of the Plan any monetary amounts required to be paid under section 365(b) of the Bankruptcy Code as a condition to assumption, unless LOCSD and such party agree to different arrangements for the satisfaction of obligations under section 365(b). The Bankruptcy Court will retain jurisdiction to and, after the provision of notice and the opportunity for a hearing in accordance with the Bankruptcy Rules, will resolve all disputes regarding (i) the amount of any cure payment to be made pursuant to the Plan; (ii) the ability of LOCSD to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code under the contract or lease to be assumed; and (iii) any other matter pertaining to such assumption.

**4. Deadline for the Assertion of Claims for Cure Payments**.

LOCSD does not believe that any amounts are necessary to be paid in order to cure any existing defaults or arrearages under the executory contracts and unexpired leases to be assumed pursuant to Section 10.1 of the Plan. Any party to such an executory contract or unexpired lease that asserts that any payment or other performance is due in connection with the

53

proposed assumption of such agreement in accordance with the Plan must file with the Bankruptcy Court and serve upon LOCSD a written statement and accompanying declaration in support thereof specifying the basis for its claim within the same deadline and in the manner established for filing objections to confirmation of the Plan (see, Section 10.4 of the Plan), The failure to timely file and serve such a statement will waive any and all objections to the proposed assumption and any claim for cure amounts of the agreement at issue.

**5. Deadline For The Assertion Of Rejection Damage Claims; Treatment Of Rejection Damage Claims.**

All proofs of claim arising from the rejection of executory contracts or unexpired leases pursuant to Section 10.3 of the Plan must be filed with the Bankruptcy Court and served on LOCSD no later than thirty (30) days after the date on which the Notice of Effective Date is mailed. Any claim for which a proof of claim is not filed and served within such time will be forever barred and will not be enforceable against LOCSD or its assets, properties, or interests in property.

Unless otherwise ordered by the Bankruptcy Court, all such claims that are timely filed as provided herein will be treated as General Unsecured Claims and classified into Class 8.

**D. Distributions.**

**1. Disbursing Agent.**

On or after the Effective Date, LOCSD may retain one or more agents to perform or assist it in performing the Distributions to be made pursuant to the Plan, which agents may serve without bond. LOCSD may provide reasonable compensation

to any such agent(s) without further notice or Bankruptcy Court approval.

**2. Delivery of Distributions.**

All Distributions will be made at the address of the holder of an Allowed Claim as set forth in the (i) List of Creditors, unless LOCSD has been notified by such holder in a writing that contains an address for such holder different from the address reflected in such List of Creditors for such holder; or (ii) at the address set forth in the holder's proof of claim, unless LOCSD has been notified by such holder in a writing that contains an address for such holder different from the address set forth in the proof of claim. If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until LOCSD is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder, without interest.

**3. Timeliness Of Payments.**

Any payments or Distributions to be made pursuant to the Plan will be deemed to be timely made if made within fourteen (14) days after the dates specified in the Plan. Whenever any Distribution to be made under the Plan will be due on a day other than a Business Day, such Distribution instead will be made, without interest, on the immediately succeeding Business Day, but will be deemed to have been made on the date due.

**4. No Post Petition Accruals.**

Unless otherwise specifically provided in the Plan or allowed by order of the Bankruptcy Court, LOCSD shall not be

1   required to pay to any holder of a Claim any interest, penalty,

2   or late charge accruing with respect to such Claim on or after

3   the Petition Date. Interest shall not accrue or be paid upon

4   any Disputed Claim in respect of the period from the Petition

5   Date to the date a final Distribution is made thereon if and

6   after such Disputed Claim becomes an Allowed Claim. With

7   respect to oversecured Claims (see 11 U.S.C. § 506(b)), post-

8   petition interest shall accrue on such Claims at the applicable

9   statutory or contractual nondefault rate, as the case may be.

10          **5. Undeliverable Distributions.**

11              **a. Holding of Undeliverable Distributions.**

12          If any Distribution is returned to LOCSD or its agent as

13  undeliverable, no further Distributions will be made with

14  respect to the Claim for which such Distribution is made unless

15  and until LOCSD is notified in writing of the Claim holder's

16  then-current address. Unless and until LOCSD is so notified,

17  such Distribution shall be deemed to be "Unclaimed Property."

18              **b. Unclaimed Property.**

19          LOCSD shall deposit any Unclaimed Distributions in the

20  Disputed Claims Reserve to be maintained by LOCSD and held in

21  trust for the benefit of the holders of Allowed Claims entitled

22  thereto under the terms of the Plan. Prior to the expiration of

23  two years following the payment or Distribution date, Unclaimed

24  Distributions due to the holders of an Allowed Claim shall be

25  released from the Disputed Claims Reserve and delivered to the

26  holder upon presentation of proper proof by such holder of its

27  entitlement thereto. At the end of two years following the

28  payment or Distribution date, the holder of Allowed

Claims theretofore entitled to Unclaimed Distributions shall cease to be entitled thereto, and the Unclaimed Distributions shall then become property of LOCSD.

**6. Time Bar to Cash Payments.**

Checks issued by LOCSD on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to LOCSD by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the second anniversary of the date on which the voided check was mailed. After such date, all Claims in respect of voided checks shall be discharged and forever barred and LOCSD shall retain all moneys related thereto.

**7. Compliance Wwith Tax Requirements.**

LOCSD will comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan will be subject to such withholding and reporting requirements. In connection with each Distribution with respect to which the filing of an information return (such as Internal Revenue Service Form 1099 or 1042) or withholding is required, LOCSD will file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such Distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law. With respect to any entity from whom a tax identification number, certified tax identification number, or other tax

57

information required by law to avoid withholding has not been
received by LOCSD, LOCSD, at its sole option, may withhold the
amount required and distribute the balance to such entity or
decline to make such Distribution until the information is
received. If the holder of an Allowed Claim fails to provide
the information necessary to comply with any withholding
requirements of any Governmental Unit within six (6) months
from the date of first notification to the holder of the need
for such information or for the Cash necessary
to comply with any applicable withholding requirements, then
the holder's Distribution shall be treated as an undeliverable
Distribution in accordance with this Plan.

**8. No Distributions On Account Of Disputed Claims.**

No Distributions will be made on account of any Disputed
Claim until such Claim becomes Allowed (and then only to the
extent so Allowed). Distributions made after the Effective Date
in respect of Claims that were not Allowed as of the Effective
Date (but which later became Allowed) will be deemed to have
been made as of the Effective Date.

**9. Disputed Claims Reserve.**

LOCSD will withhold Disputed Claims Reserve from the Cash
to be distributed to holders of Allowed General Unsecured
Claims in Class 8 under the Plan. LOCSD may request estimation
for any Disputed Claim that is contingent or unliquidated and
LOCSD will withhold the Disputed Claims Reserve based upon the
estimated amount of such Claim as estimated by the Bankruptcy
Court. If the Court so orders, any Claimant whose Claim is so
estimated shall have recourse only to the reserve established

by the Bankruptcy Court for such Claimant's Disputed Claim, and
not to LOCSD or any Person receiving property or Distributions
under the Plan, even if the Allowed Claim of such Claimant
exceeds the maximum estimation of such Claim. **THUS, THE
BANKRUPTCY COURT'S ESTIMATION OF A DISPUTED CLAIM WILL LIMIT
THE DISTRIBUTION TO BE MADE THEREON, REGARDLESS OF THE AMOUNT
FINALLY ALLOWED ON ACCOUNT OF SUCH CLAIM.** If LOCSD elects not
to request such an estimation from the Bankruptcy Court with
respect to a Disputed Claim that is contingent or unliquidated,
LOCSD will withhold the Disputed Claims Reserve based on the
Face Amount of such Claim. If practicable, LOCSD will invest
any Cash that is withheld in the Disputed Claims Reserve
Account in a manner that will yield a reasonable net return,
taking into account the safety of the investment. Nothing in
the Plan or Disclosure Statement will be deemed to entitle the
holder of a Disputed Claim to interest, post-petition or
otherwise, on such Claim.

    **10. Distribution after Allowance.**

    At such time as a Disputed Claim becomes an Allowed Claim,
in whole or in part, LOCSD or its agent shall distribute to the
holder thereof the Distributions, if any, to which such holder
is then entitled under this Plan. Such Distributions, if any,
shall be made as soon as practicable after the date that the
order or judgment of the Bankruptcy Court allowing such
Disputed Claim becomes a Final Order (or such other date as the
Claim becomes an Allowed Claim), but in no event more than
thirty (30) days thereafter.  Unless otherwise specifically
provided in this Plan or allowed by order of the Bankruptcy

59

1 | Court, no interest shall be paid on Disputed Claims that later

2 | become Allowed Claims.

3 | **11. No De Minimis Distributions**.

4 | No payment of less than ten dollars ($10.00) will be made

5 | by LOCSD on account of any Allowed Claim.

6 | **12. Setoffs**.

7 | The Debtor may, in accordance with section 553 of the

8 | Bankruptcy Code and applicable non-bankruptcy law, set off

9 | against any Allowed Claim and the Distributions to be made

10 | pursuant to the Plan on account of such Claim (before any

11 | Distribution is made on account of such Claim), the claims,

12 | rights and causes of action of any nature that LOCSD may hold

13 | against the holder of such Allowed Claim; provided, however,

14 | that neither the failure to effect such a setoff nor the

15 | allowance of any Claim hereunder shall constitute a waiver or

16 | release by LOCSD of any such claims, rights and causes of

17 | action that LOCSD may possess against such holder.

18 | **13. Estimation of Claims**.

19 | The Debtor may, at any time, request that the Bankruptcy

20 | Court estimate, pursuant to section 502(c) of the Bankruptcy

21 | Code, any Claim that is contingent or unliquidated, regardless

22 | of whether any party in interest has previously objected to

23 | such Claim or whether the Bankruptcy Court has ruled on any

24 | such objection, and the Bankruptcy Court will retain

25 | jurisdiction to estimate any Claim at any time during

26 | litigation concerning any objection to any Claim, including

27 | during the pendency of any appeal relating to any such

28 | objection. In the event that the Bankruptcy Court estimates any

contingent or unliquidated Claim, the amount of such estimation will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, LOCSD may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

**14. Amendment to Claims.**

A Claim may be amended prior to the Confirmation Date only as agreed upon by LOCSD and the holder of such Claim, or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law. After the Confirmation Date, a Claim may not be Filed or amended without the authorization of the Bankruptcy Court. Unless otherwise provided herein, any new or amended Claim Filed after the Confirmation Date shall be deemed disallowed in full without any action by LOCSD, unless the holder of such Claim has obtained prior Bankruptcy Court authorization for the Filing.

**15. Allocation of Distributions.**

Distributions to any holder of an Allowed Claim shall be allocated first to the original principal portion of any such Allowed Claim, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim.

**E. Continuing Jurisdiction of the Bankruptcy Court.**

Article 14 of the Plan provides for the Bankruptcy Court to retain jurisdiction consistent with Section 904 of the Bankruptcy Code in regard to matters relating to the Chapter 9 Case, the Plan, and other related items including: (i) matters arising under the Bankruptcy Code and relating to LOCSD; (ii) matters arising in or related to the Chapter 9 Case or this Plan, including administration of the Chapter 9 Case and implementation and Consummation of the Plan.  Readers are encouraged to review Article 14 carefully to ascertain the nature of the Bankruptcy Court's continuing post-Effective Date jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 9 Case, including the matters set forth in this Article, this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**VII.**

**CONFIRMATION AND EFFECTIVENESS OF THE PLAN**

The law relating to confirmation of a plan of adjustment is complex and technical. The following discussion is not intended to be exhaustive on the requirements of confirmation or issues relating to confirmation, but to provide the reader with basic information concerning the confirmation process.

Several requirements must be met before the Bankruptcy Court may confirm the Plan. Some of the requirements discussed

1  in this Disclosure Statement include acceptance of the Plan by

2  the requisite number of creditors, and whether the Plan is in

3  the "best interests" of creditors. These requirements, however,

4  are not the only requirements for confirmation, and the

5  Bankruptcy Court will not confirm the Plan unless and until it

6  determines that the Plan satisfies all applicable requirements,

7  including requirements not referenced in this Disclosure

8  Statement. These are complex statutory provisions and this

9  summary is not intended to be a complete statement of the law.

10 You are encouraged to consult with your own attorney and

11 financial advisor with respect to issues relating to

12 confirmation of the Plan.

13 **A. Voting and Right to be Heard at Confirmation.**

14     **1. Who May Support Or Object To Confirmation Of The Plan.**

15     Any party in interest may support or object to the

16 confirmation of the Plan. Even entities who may not have a

17 right to vote (e.g., entities whose claims are classified into

18 an unimpaired Class) may still have a right to support or

19 object to confirmation of the Plan. (See Article II, Section

20 B.3., above, for information regarding the applicable deadlines

21 for objecting to confirmation of the Plan).

22     **2. Who May Vote To Accept Or Reject The Plan?**

23     A creditor generally has a right to vote for or against

24 the Plan if its Claim is both "allowed" for purposes of voting

25 and classified into an Impaired Class.

26     **a. Allowed Claims For Voting Purposes.**

27     As noted above, a creditor's claim must be "allowed" for

28 purposes of voting in order for such claim or interest to have

63

the right to vote on the Plan. Generally, for voting purposes, a claim is deemed "allowed" for voting purposes if (a) a proof of claim was timely filed, or (ii) if no proof of claim was filed, the holder of the claim is identified in the List of Creditors as other than "disputed," "contingent: or "unliquidated." In either case, when an objection to a Claim has been filed, the claimant cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or Allows the Claim for voting purposes. Thus, the definition of "Allowed Claim" used in the Plan for the purposes of determining whether creditors are entitled to receive Distributions is different from that used by the Bankruptcy Court to determine whether a particular Claim is "allowed" for purposes of voting. Holders of claims are advised to review the definitions of "Allowed," "Claim," and "Disputed" set forth in Article I of the Plan to determine whether they may be entitled to receive Distributions under the Plan.

### b. Impaired Claims.

As noted above, the holder of a Claim has the right to vote on the Plan if that Claim is Allowed and classified into a Class that is Impaired under the Plan. A Class is Impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class with respect to their Claims. LOCSD believes that Classes 5(B) through 8 are Impaired under the Plan. Any party that disputes such characterization, however, may request that the Bankruptcy Court find that its Claim is Impaired in order to obtain the right to vote on the Plan.

**3. Who Is Not Entitled To Vote.**

The holders of the following types of Claims are not entitled to vote on the Plan: (a) Claims that have been Disallowed; (b) Claims that are subject to a pending objection and which have not been Allowed for voting purposes; and (c) Claims entitled to priority pursuant to sections 507(a)(1) of the Bankruptcy Code (defined as "Administrative Claims" in the Plan). Holders of Administrative Claims are not entitled to vote because such Claims are not placed in Classes and are required to receive certain treatment specified by the Bankruptcy Code.

**4. Votes Necessary to Confirm The Plan.**

The Bankruptcy Court cannot confirm the Plan unless, among other things: (a) at least one Impaired Class has accepted the Plan without counting the votes of any insiders within that Class; and (b) either all Impaired Classes have voted to accept the Plan, or the Plan is eligible to be confirmed by "cramdown" with respect to any dissenting Impaired Class, as discussed below.

At the scheduled hearing on Confirmation of the Plan, the Bankruptcy Court must determine, among other things, if the Plan has been accepted by each Impaired Class. Under section 1126(c} of the Bankruptcy Code (11 U.S.C. § 1126(c)), an Impaired Class of Claims is deemed to have accepted the Plan if Class members holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of all Allowed Claims of Class members actually voting have voted in favor of the Plan.

**B.    Confirmation Standards.**

There are three key standards the Plan must meet before it can be confirmed by the Court: (1) the Plan must be in the best interests of creditors; (2) the Plan must be feasible; and (3) the Plan must be proposed in good faith. (3).

**1.    Best Interest of Creditors.**

In order to confirm the Plan, the Bankruptcy Court also must determine that the Plan is in the "best interests of creditors" pursuant to section 943(b)(7) of the Bankruptcy Code. Commentators note that in the context of a chapter 9 case, the best interest test requires LOCSD to make "a reasonable effort . . . that is a better alternative to the creditors than dismissal of the case." In re County of Orange, 191 B.R. 1005, 1021 (Bankr.C.D.Cal.1996)(quoting 4 Collier on Bankruptcy, ¶943.03(7)(15th ed. 1995)); In re Mount Carbon Metropolitan Dist., 242 B.R. 18, 34-35 (Bankr. D. Colo. 1999); Matter of Sanitary & Improvement Dist. No. 7, 98 B.R. 975-76 (Bankr. D. Neb. 1989).

**a.    LOCSD Has Made More Than A Reasonable Effort to Maximize Distributions to Creditors in this Case.**

The passage of AB 2701 limited LOCSD's ability to use assets to pay Creditor Claims.  Nonetheless, LOCSD has made substantial efforts to maximize the return to creditors in this case.

LOCSD has reduced Creditor Claims as referenced herein. Further, LOCSD has negotiated with the Regional Water Quality Control Board and has obtained an agreement that the Regional

66

1    Water Quality Control Board will subordinate its $6,627,000.00

2    Class 6 Claim to the Claims of all other Creditors if certain

3    contingencies are met.  Additionally, LOCSD negotiated with the

4    County and obtained the County's agreement that the Remaining

5    State Revolving Loan Proceeds could be used to fund a Plan.

6    The LOCSD also obtained the County's agreement to contribute

7    $2,800,000 in exchange for the return of the Solid Waste

8    Franchise Agreement to the County.  The loss of the Solid Waste

9    Franchise Agreement will deprive LOCSD of significant revenue

10    and will force it to cut employee and other costs to make up

11    for this revenue loss.

12        LOCSD has also agreed to conduct a vote of the registered

13    voter in the Prohibition Zone seeking approval of the Special

14    Tax to pay Creditor Claims.  That vote will take place at the

15    election of the Class 8 Creditors and in a dollar amount of the

16    Special Tax to be determined by the Class 8 Creditors.  The

17    cost of preparing for and administering the Special Tax

18    election, along with defending any legal challenges that may be

19    raised in connection with the election, will be paid from the

20    Remaining State Revolving Fund Proceeds.

21        The Contractors have proposed that LOCSD sell its water

22    system (Zone A) to satisfy Zone K (Prohibition Zone) Creditor's

23    Claims.  This proposal would require Zone A water customers to

24    bear the burden of Zone K Creditor's Claims.  LOCSD has

25    obtained a legal opinion attached hereto as Exhibit G which

26    states that selling the Zone A water system would also require

27    a two-thirds vote of the voters within Zone A and it is unclear

28    whether or not the proceeds of such a sale could be used to pay

67

1  Old Project-related (Zone K) debt.  Thus, selling the water

2  system is also infeasible.

3      Additionally, the Contractors have suggested that LOCSD

4  issue approximately $2,400,000 in authorized but unissued bonds

5  from the Old Project.  LOCSD furnished the Contractors with a

6  legal opinion stating that it would be legal, but not feasible,

7  to issue those bonds.

8      LOCSD also thoroughly explored the sale of the Mid-Town

9  Property for which it had paid approximately $3,200,000.  Over

10 the strenuous objections of LOCSD, that property was

11 significantly devalued and made substantially less marketable

12 by the restrictions placed upon its use by the California

13 Coastal Commission in connection with the approval of the

14 County's waste water project.

15     Based upon the foregoing, the LOCSD has made all

16 reasonable efforts to provide Creditors with the maximum

17 payment of their Claims.

18          **b.    Alternative 1 - Raising Taxes Without a Vote.**

19     If this case is dismissed, LOCSD's creditors would sue

20 LOCSD.  LOCSD would not have funds to defend itself in these

21 lawsuits, much less to pay any judgments that would be

22 obtained.  So, presumably in short order, Creditors would

23 obtain judgments in excess of $25,000,000 against LOCSD.

24     Creditors would then attempt to collect from LOCSD under

25 California law.  They would do so by seeking a writ of mandate

26 from the San Luis Obispo Superior Court pursuant Cal.Gov.Code

27 §970-971.2.  Under these statutes, public entities are required

28 to pay judgments from unrestricted funds or by raising taxes.

1   See Cal.Gov.Code §§970.4(a),(b), §970.8(a); see also 8 B.

2   Witkin, California Procedure (Enforcement of Judgment) §61 at

3   102 ("Money judgments against state and local public entities

4   must ordinarily be paid by the appropriation of money raised by

5   taxes or bond issues.")

6       If a judgment against a public entity arises from a breach

7   of contract (as do the Creditor Claims against LOCSD),

8   California constitutional provisions limit the ability of a

9   public entity like LOCSD to raise taxes, assessments or rates

10  to pay the judgment.  Cal.Gov.Code §971(a)(1), (b) (1).  That

11  means that the Government Code provisions allowing the Superior

12  Court to compel a public entity to raise taxes, assessments or

13  fees are trumped by provisions like Proposition 218 in the

14  California Constitution which limit a public entity's taxing

15  power.  See Ventura Group Ventures, Inc. v. Ventura Port

16  District, 24 Cal.4th 1089, 1100-01, 1104-07 (2001)(holding that

17  a public entity could not raise taxes to pay a judgment because

18  it was prohibited from doing so by Propositions 13 and 218).

19  As discussed in Article III, Section E of this Disclosure

20  Statement, the LOCSD is bound by the same constitutional

21  restrictions which applied in the Ventura Port District case

22  and which would prohibit LOCSD from raising taxes to pay

23  judgments if this case were dismissed.

24          c.   Alternative 2 – The Forced Sale of the Water

25               System.

26      The other way for creditors to get their judgments paid is

27  by seeking a writ of mandate forcing LOCSD to sell its assets.

28  The asset of any value identified by the Contractors is LOCSD's

water system.  LOCSD has obtained a legal opinion attached
hereto as Exhibit G stating that under California law LOCSD
could not be forced to sell the water system.  Further, there
is no California case law holding that a public entity must
sell property to pay a judgment.

Based upon the foregoing, at a minimum it is going to be
very difficult if not impossible for the Creditors to utilize
the provisions of Cal.Gov.Code §970-971.2 to collect their
claims because of LOCSD's limited ability to raise taxes and
the lack of any state court power to mandate the sale of
LOCSD's property.

And even if Creditors were successful in obtaining a court
order forcing LOCSD to sell the water system, Creditors would
need to obtain at least $14,897,427 for the water system, net
of attorney's fees and other costs, to receive what they would
receive under the Plan.  There are two reasons for this.
First, if the Plan isn't approved, the County will take the
Remaining State Revolving Fund proceeds and LOCSD won't
transfer the Solid Waste Franchise Agreement to the County.  So
the $4,500,000 currently available to pay Creditors under the
Plan won't be available.

Second, Creditors other than the current Class 8 Other
Unsecured Creditors will have superior or equal rights to the
water system sale proceeds.  For example, the Secured Claim of
the California Infrastructure & Development Bank (Class 4) of
approximately $4,500,000 would have to be paid in full before
Unsecured Creditors received anything.  The remaining net
proceeds would be shared among $26,660,070 in Creditor Claims:

70

1    $11,396,505 in General Unsecured Claims (those in Class 8); the

2    $6,627,000 Claim of the Regional Water Quality Control Board

3    (Class 6); and the $8,636,565 Claim of the State Water

4    Resources Control Board (Class 7).  So after paying the

5    California Infrastructure & Development Bank $4,500,000 Secured

6    Claim, for unsecured Creditors to receive 39% of their claims

7    the remaining net proceeds would have to be $10,397,427.

8             **d.    The Consequences to Small Class 8 Creditors.**

9         At a minimum, before creditors get anything on their

10   judgments in the state courts, they will have to either make

11   new law or get the law discussed above changed.  This will be a

12   time consuming and expensive process.  It seems certain that

13   many of the Class 8 Creditors who have small Claims compared to

14   those of the Regional Water Quality Control Board

15   ($6,627,000.00), the State Water Resources Control Board

16   ($8,636,565.57) and the Contractors (Whitaker--$1,287,500; and;

17   Monterey--$4,600,000 plus the $5,540,314 claim of Barnard which

18   has been transferred to Monterey) will lack the incentive and

19   economic resources to pursue their claims outside of bankruptcy

20   and will receive nothing.

21            **e.    The Consequences to Large Class 8 Creditors.**

22        And the Creditors with even large Claims may find that

23   even if they succeed in overcoming every legal issue described

24   above it is speculative whether they will receive more than

25   they would under the Plan.

26        No one knows what the net proceeds of the sale of the

27   water system would be because it is unknown how much anyone

28   would pay for the water system.  In large part, the value of

the water system depends upon what the purveyor of water can

charge its customers.  Water rates are set by the California

Public Utilties Commission, rather than by local public

agencies or private purveyors.  A purchaser of the water system

would have to seek a significant increase in current rates –

which are limited by Proposition 218 and do not allow for LOCSD

to make a profit -- to pay for the costs of acquiring the

system and, if the purchaser is a private purveyor to make a

profit.

Then there is the issue of how the net proceeds will be

allocated.  Unlike the Bankruptcy Code, there are no provisions

under state law for the allocation among competing creditors

for the assets of a judgment debtor; instead, the race may go

to the swiftest.  It may be that the Regional Water Quality

Control Board or the State Water Resources Control Board beat

the Contractors or other Creditors to the finish line and

satisfy their claims in full from LOCSD's assets.  Or the

Superior Court may order that the net proceeds be shared pro

rata.  If so, the claims of the Regional Water Quality Control

Board and the State Water Resources Control Board will dilute

those other creditors by about 57%.

**2.  Feasibility**.

Section 943(b}(7) of the Bankruptcy Code also requires

that the Plan be feasible.  There is limited authority as to

what feasibility means in the context of a chapter 9 case.

Collier, a leading treatise on bankruptcy law, notes that in

the context of a chapter 9 bankruptcy case of a municipality,

the "feasibility" standard means that "the debtor must

72

1  demonstrate its ability to make the payments required under the

2  plan and still maintain its operations at the level that it

3  selects as necessary to continued viability of the

4  municipality."  4 Collier on Bankruptcy 11 943.03[b] (15th ed.

5  rev. 2002).  LOCSD believes that the same standard is

6  applicable to it.  The requirement that LOCSD maintain its

7  current operations is yet another reason why it cannot sell the

8  water system.

9          **a. Funding of Distributions Under the Plan and**

10             **Continued Operations.**

11             **(i). Payment of Administrative Claims**

12      As discussed above in Article VI, Section A.1.a., LOCSD

13  believes that it has satisfied most Administrative Claims in

14  the ordinary course of business.  With respect to Professional

15  Claims, professionals have been paid on a current basis. LOCSD

16  has sufficient funds on hand from the Remaining State Revolving

17  Loan Proceeds to pay outstanding Professional Claims. LOCSD has

18  sufficient funds on hand to satisfy Administrative Claims that

19  may not have been paid in the ordinary course of business.

20             **(ii). Payment of Classes 1, 2, 3, 4 and 5**

21                **Allowed Secured Claims.**

22      The Class 1 Secured Claim of Frank K. Freitas, San Luis

23  Obispo Tax Collector, is a claim for payment of unpaid real

24  property taxes totaling $3,556.62 can be paid from LOCSD's cash

25  on hand.  LOCSD has fully satisfied its obligations to the

26  holders of the Class 2 (Key Equipment Finance), Class 3

27  (Citizens Business Bank), Class 4 (California Infrastructure &

28  Development Bank) and Class 5(A) (Bankthe Holders of the Bonds)

1 | and 5(B) (MBIA Insurance Corp) because it receives fees and

2 | charges or tax assessments in sufficient amounts to pay those

3 | Claims as required by the Plan.

4 |         **(iii).     Payment of Allowed Classes 6, 7, and 8**

5 |         **Allowed Unsecured Claims.**

6 |     LOCSD has the ability to provide the requisite water

7 | conservation plan to the Class 6 Creditor.  If the Plan is

8 | approved, the Class 7 Creditor be paid by the County.  Payments

9 | to the Class 8 Creditors do not depend on LOCSD's future

10 | operations.  Instead, they come from assets on hand -- the

11 | Remaining State Revolving Fund Loan Proceeds (net of

12 | Professional Claims) and the Solid Waste Franchise Agreement –

13 | and may be increased if the residents in the Prohibition Zone

14 | vote for a Special Tax. As discussed in Article VI, Section

15 | B.1.d, there are contingencies to LOCSD liquidating the Solid

16 | Waste Franchise Agreement. If those contingencies are not

17 | satisfied, then the amounts available to pay Creditors in Class

18 | 8 would be reduced.

19 |        **b. Sustaining Ongoing Operations.**

20 |     The financial statements attached to this Disclosure

21 | Statement as Exhibit also indicate that LOCSD should have

22 | sufficient cash flow to sustain its operations at their current

23 | level while making Distributions required under the Plan. The

24 | Projections assume the ability to sustain current operational

25 | levels.

26 |     THE FINANCIAL STATEMENTS HAVE NOT BEEN AUDITED BY LOCSD'S

27 | INDEPENDENT CERTIFIED PUBLIC ACCOUNTANTS.

28 |

**3.  Good Faith.**

The good faith requirement in section 943(b)(1) of the Bankruptcy Code incorporates the good faith requirement in Bankruptcy Code section 1129(a)(3).  The good faith requirement is satisfied if the Plan comports with the purposes and provisions of the Bankruptcy Code, the plan is feasible, if the plan is proposed with "honesty and sincerity" and if the process used to seek its confirmation is fundamentally fair. In re Mount Carbon Sanitary Dist., supra, 242 B.R. at 40-41. In essence, therefore, the good faith requirement is subsumed in the best efforts and feasibility requirements discussed above, and for those reasons the Plan is being proposed in good faith.

**D.   Confirmation Without Acceptance of all Impaired Classes: the "Cramdown" Alternative.**

The Plan may be confirmed even if not accepted by all Impaired Classes, if at least one Impaired Class of Claims accepts the Plan and the Bankruptcy Court finds that the other applicable requirements of Confirmation under sections 1129 and 943(b) of the Bankruptcy Code (11 U.S.C. §§ 1129 and 943(b)) are satisfied. The requirements include the so-called "cramdown" provisions set forth in sections 1129(b)(1), (b)(2)(A) and (b)(2)(B) of the Bankruptcy Code, (11 U.S.C. § 1129(b)) as made applicable by Bankruptcy Code section 901 (a) (11 U.S.C. § 901 (a)). If the Plan is accepted by at least one, but not all, Impaired Class or Classes, LOCSD will rely on the applicable "cramdown" provisions of section 1129(b) of the Bankruptcy Code and seek Confirmation of the Plan.

1    The Plan may be confirmed under the cramdown provisions,

2  if the Plan is accepted by at least one Impaired Class and in

3  addition to satisfying the other requirements of section 943(b)

4  of the Bankruptcy Code, the Plan (a) is "fair and

5  equitable" and (b) does not discriminate unfairly with respect

6  to each Class of Claims that is Impaired under and has not

7  accepted the Plan.  LOCSD believes that the Plan satisfies the

8  "fair and equitable" standard because, among other things, no

9  Classes junior to the Classes of Unsecured Claims are receiving

10  or retaining any property under the Plan.

11    The requirement that the Plan not "discriminate unfairly"

12  means, among other things, that a dissenting Class must be

13  treated substantially equally with respect to other Classes of

14  equal rank. LOCSD does not believe that the Plan unfairly

15  discriminates against any Class that may not accept or

16  otherwise consent to the Plan.

17    As noted above, given the possible rejection by any of the

18  Classes, LOCSD has requested the Bankruptcy Court to confirm

19  the Plan by "cramdown" in accordance with sections 1129(b)(1),

20  (b)(2)(a) and (b)(2)(b). LOCSD also has reserved the right to

21  modify the Plan to the extent, if any, that Confirmation of the

22  Plan under sections 943 and 1129(b) of the Bankruptcy Code

23  requires such modification.

24  **E. Conditions to Confirmation and Effectiveness of Plan.**

25    **1. Conditions to Confirmation**.

26    Entry of the Confirmation Order in a form and substance

27  satisfactory to LOCSD in its sole discretion is a condition

28  precedent to Confirmation of this Plan.

76

**2. Conditions to Effective Date.**

The Plan will not become effective and operative unless and until the Effective Date occurs. The Effective Date will not occur unless and until (a) the Confirmation Order becomes a Final Order and be in full force and effect; and (b) Plan Documents are in a form and substance acceptable to LOCSD in its sole discretion and have been duly and validly executed and delivered, or deemed executed by the parties thereto, and all conditions to their effectiveness have been satisfied or waived. These conditions to the effectiveness of the Plan may be waived by LOCSD, in whole or in part, in the exercise of its sole discretion (which waiver shall not require any notice or authorization from the Bankruptcy Court, other than the filing of a notice of such waiver with the Bankruptcy Court).

The Effective Date will occur on the first Business Day after which the conditions to effectiveness of the Plan are satisfied or waived.

**3. Non-Occurrence of Effective Date.**

The Plan provides that, if the conditions to effectiveness of the Plan are not satisfied or waived, then, unless otherwise ordered by the Bankruptcy Court: (a) the Confirmation Order will be deemed vacated; (b) all bar dates and deadlines established by the Plan or the Confirmation Order will be deemed vacated; (c) the Chapter 9 Case will continue as if Confirmation had not occurred; and (d) the Plan will be of no further force and effect, with the result that LOCSD and other parties in interest will be returned to the same position as if confirmation had not occurred. The failure of the Effective

77

1  Date to occur, however, will not affect the validity of any

2  order entered in the Chapter 9 Case other than the Confirmation

3  Order.

4  **F. Effect of Confirmation.**

5      Article 12 of the Plan provides that confirmation of the

6  Plan and the occurrence of the Effective Date will have a

7  number of important and binding effects, some of which are

8  summarized below. Readers are encouraged to review Article 12

9  of the Plan carefully and in their entirety to assess the

10 various consequences of confirmation of the Plan.

11     **1. Discharge Of LOCSD.**

12     Pursuant to section 944 of the Bankruptcy Code, on the

13 Confirmation Date LOCSD will be discharged from all of its

14 Debts and all Claims against it that arose prior to the

15 Confirmation Date, whether or not: (a) a proof of Claim based

16 on such Debt is filed or deemed filed under section 501 of the

17 Bankruptcy Code; (b) such Claim is Allowed under section 502 of

18 the Bankruptcy Code; or (c) the holder of such Claim accepts

19 the Plan, except for: (i) any Debt specifically and expressly

20 excepted from discharge by the Plan or the Confirmation Order;

21 or (ii) any Debt owed to an entity that, before the

22 Confirmation of this Plan, had neither notice nor actual

23 knowledge of the Chapter 9 Case.

24     The rights afforded in the Plan and the treatment of

25 Claims will be in exchange for and in complete satisfaction,

26 discharge and release of all Claims of any nature whatsoever

27 arising on or before the Effective Date, known or unknown,

28 including any interest accrued or expenses incurred thereon

78

1  from and after the Petition Date, whether against LOCSD or any

2  of its properties, assets, or interests in property. Except as

3  otherwise provided in the Plan, on the Effective Date, all

4  Claims against LOCSD will be deemed to be satisfied, discharged

5  and released in full.

6       **2. Judgments Void.**

7       Pursuant to sections 901(a) and 524(a)(1) of the

8  Bankruptcy Code, LOCSD's discharge upon Confirmation of the

9  Plan under section 944(b) of the Bankruptcy Code, voids any

10 judgments at any time obtained, to the extent that such

11 judgment is a determination of liability of LOCSD with respect

12 to any Debt discharged, whether or not discharge of such Debt

13 is waived.

14      **3. Injunction.**

15      Section 12.3 of the Plan provides that, except as

16 otherwise provided in the Plan, all entities who have held,

17 hold or may hold pre-Confirmation Date Claims will be

18 permanently enjoined, from and after the Confirmation Date,

19 from (a) commencing or continuing in any manner any action or

20 other proceeding of any kind with respect to any such pre-

21 Confirmation Date Claim against LOCSD or its property; (b)

22 enforcing, attaching, collecting, or recovering by any manner

23 or means any judgment, award, decree or order against LOCSD or

24 its property with respect to such pre-Confirmation Date Claims;

25 (c) creating, perfecting, or enforcing any lien or encumbrance

26 of any kind against LOCSD or its property; and (d) further

27 excepting setoff rights under Section 553 of the Bankruptcy

28 Code.

**4. Term Of Existing Injunctions And Stays**.

Section 12.4 of the Plan provides that all injunctions or stays provided for in the Chapter 9 Case pursuant to sections 105, 362, or 922 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.

**5. Release by Claimants**.

On the Effective Date, all Claimants and each entity (collectively, "Releasing Parties") that has held, holds or may hold a Claim, in consideration for the obligations of LOCSD under the Plan, shall have conclusively, absolutely, unconditionally, irrevocably and forever, releases LOCSD and the County from any Claim or Cause of Action existing as of the Effective Date arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to, the Claim of such Releasing Party, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation. The releases provided in Section 12.5 of the Plan shall also act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset or recover any Claim or Cause of Action satisfied or release under this Plan to the fullest extent authorized or provided by the Bankruptcy Code.

## VIII.

### CERTAIN RISK FACTORS TO BE CONSIDERED

Holders of Claims against LOCSD should read and consider carefully the following risk factors, as well as the other

80

1   information set forth in this Disclosure Statement and the

2   documents delivered with this Disclosure Statement and/or

3   incorporated by reference, before deciding whether to vote to

4   accept or reject the Plan. These risk factors should not,

5   however, be regarded as constituting the only risks involved in

6   connection with the Plan and its implementation.

7   **A. Fixed Revenue Source and Inability to Raise Revenue**.

8        As discussed above, all of LOCSD's funding property tax

9   revenues from properties, restricted grants and other

10  government funds and from rates, charges and assessments

11  received from the landowners in within each zone for the costs

12  of the services LOCSD provides.  These revenue streams must be

13  used to provide services from the Zones of Benefit that

14  generated them and LOCSD does not have the ability to raise

15  additional revenue to cover any short falls in revenue. In the

16  event that governmental funding, the grants and the rates,

17  charges and assessments are insufficient to cover actual costs

18  (beyond the Reserve Fund), LOCSD might be forced to seek

19  further protection under the Bankruptcy Code or otherwise

20  attempt to further adjust its obligations.

21  **B.    Claims Estimates**.

22       There can be no assurance that the estimated Claim amounts

23  set forth herein are correct and the actual amount of Allowed

24  Claims may differ from the estimates. The estimated amounts are

25  subject to certain risks, uncertainties and assumptions. Should

26  one or more of these risks or uncertainties materialize or

27  should the underlying assumptions prove incorrect, the actual

28  Allowed amount of Claims may vary from those estimated herein.

**C.     The Solid Waste Franchise Agreement.**

As discussed in Article VI, Section 1.B. of this Disclosure Statement, the return of the Solid Waste Franchise Agreement depends upon approval by the County's Board of Supervisors and LOCSD's Board of Directors and LAFCO.  If those approvals are not obtained, the Available Assets could be reduced by $2,800,000.

**D.     The Special Tax.**

The Special Tax requires the affirmative vote of two-thirds of the voters in the Prohibition Zone.  This is a high threshold for approval and the Special Tax vote may not succeed.

**E.     Treatment of the State Water Resources Board Class 7 Claim.**

As set forth in Article VI, Section A.2.b.(iii) of this Disclosure Statement, if the County does not obtain a loan from the State Revolving Fund, the Class 7 Creditor's Claim will be paid as a Class 8 Creditor.  That would add approximately $8,600,000 to the Class 8 Creditor pool and would reduce the Pro Rata distribution to Class 8 Creditors from approximately 39% to 22%.

**IX. CERTAIN TAX CONSEQUENCES**

The implementation of the Plan may have federal, state, local or foreign income and franchise tax consequences to the holders of Claims in the Chapter 9 Case. No rulings with respect to the federal, state, local or foreign tax consequences of the Plan will be sought or obtained. No tax opinion has been sought or will be obtained with respect to any

tax consequences of the Plan. No tax opinion is intended to be given by this Disclosure Statement, and the description of tax consequences contained herein is provided for informational purposes only and should not be considered by any Creditor to be tax advice.

The Plan provides for the payment of certain Claims. The effect of the payment likely will depend on the recipient's method of tax accounting. For example, if an accrual-basis taxpayer already has included the amount of the Claim in income, the receipt of the payment will have no tax effect. By contrast, a cash-basis taxpayer will include the amount of the payment in income if the payment is compensation for the provision of goods or services.

HOLDERS OF CLAIMS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

## X. MISCELLANEOUS PROVISIONS

**A. Severability.**

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, with the consent of LOCSD shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or

1  interpreted. Notwithstanding any such holding, alteration or

2  interpretation, the remainder of the terms and provisions of

3  the Plan shall remain in full force and effect and shall in no

4  way be affected, impaired or invalidated by such holding,

5  alteration or interpretation. The Confirmation Order shall

6  constitute a judicial determination and shall provide that each

7  term and provision of this Plan, as it may have been altered or

8  interpreted in accordance with the foregoing, is valid and

9  enforceable pursuant to its terms.

10  **B. Interpretation.**

11     To the extent that the terms of the Plan are inconsistent

12  with the terms of any agreement or instrument concerning any

13  Claim, or any other matter, the terms of the Plan shall

14  control.

15  **C. Successors and Assigns.**

16     The rights, benefits and obligations of any Person named

17  or referred to in the Plan shall be binding upon and inure to

18  the benefit of any heir, executor, administrator, successor, or

19  assignee of such Person.

20  **D. Governing Law.**

21     Except to the extent that the Bankruptcy Code or other

22  federal law is applicable, or to the extent that an Exhibit

23  attached to the Plan or Plan Document provides otherwise, the

24  rights, duties and obligations arising under the Plan shall be

25  governed by, and construed and enforced in accordance with the

26  laws of the State of California, without giving effect to

27  principles of conflicts of laws.

28  **E. Headings.**

1      Headings are used in the Plan for convenience and

2  reference only, and shall not constitute a part of the Plan for

3  any other purpose.

4  **F. Saturday. Sunday or Legal Holiday.**

5      If any payment or act under the Plan is required to be

6  made or performed on a date that is not a Business Day, then

7  the making of such payment or the performance of such act may

8  be completed on the next succeeding Business Day, but shall be

9  deemed to have been completed as of the required date.

10  **G. Notice Of Effective Date.**

11      On or before ten (10) Business Days after occurrence of

12  the Effective Date, LOCSD or its agent shall mail or cause to

13  be mailed to all holders of Claims a Notice that informs such

14  holders of (a) entry of the Confirmation Order; (b) the

15  occurrence of the Effective Date; (c) the rejection of LOCSD's

16  executory contracts and unexpired leases pursuant to the Plan,

17  as well as the deadline for the filing of Claims arising from

18  such rejection; (d) the deadline established under the Plan for

19  the filing of Administrative Claims; (e) the procedures for

20  changing an address of record pursuant to Section 11.2 of the

21  Plan; and (f) such other matters as LOCSD deems to be

22  appropriate.

23          **XII. RECOMMENDATION AND CONCLUSION**

24      LOCSD believes that confirmation and Implementation of the

25  Plan is preferable to all other available and feasible

26  alternatives. Accordingly, LOCSD urges holders of Impaired

27  Claims to vote to accept the Plan by so indicating on their

28

1 | ballots and returning them as specified In this Disclosure

2 | Statement and on their ballots.

3 | DATED:   April 20, 2011.

4 |                               LOS OSOS COMMUNITY SERVICES DISTRICT

5 |

6 |                               By:_____

7 |                                  MARSHALL OCHYLSKI, President of

8 |                                  the Board of Directors of the Los

9 |                                  Osos Community Services District

10 |

11 |

12 | DATED:   April 20, 2011.

13 |                               GRIFFITH & THORNBURGH, LLP

14 |

15 |                               By_____

16 |                                  JOSEPH M. SHOLDER, Attorneys

17 |                                  for Los Osos Community
                                     Services District

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1    **G**RIFFITH  &  **T**HORNBURGH, LLP          (SPACE BELOW FOR FILING STAMP ONLY)
         ATTORNEYS AND COUNSELORS
2       8 EAST FIGUEROA STREET, SUITE 300
              POST OFFICE BOX 9
3        SANTA BARBARA, CA  93102-0009
            TELEPHONE:  805-965-5131
4           TELECOPIER:  805-965-6751

5        Joseph M. Sholder, Bar No. 126347

6
     Attorneys for Los Osos Community Services District
7

8              **UNITED  STATES  BANKRUPTCY  COURT**

9              **CENTRAL  DISTRICT  OF  CALIFORNIA**

10                      **NORTHERN  DIVISION**

11

12   In re                              )   BK No. ND 06-10548-RR
                                        )
13   LOS OSOS COMMUNITY SERVICES        )   Chapter 9
     DISTRICT,                          )
14                                      )   SECOND AMENDED PLAN FOR
                  DEBTOR.               )   ADJUSTMENT OF DEBTS FOR THE
15                                      )   LOS OSOS COMMUNITY SERVICES
                                        )   DISTRICT DATED OCTOBER 22,
16                                      )   2010
                                        )
17                                      )   Hearing on Confirmation
                                        )
18                                      )   Date:    July 28, 2011
                                        )   Time:    9:00 a.m.
19                                      )   Place:   Courtroom 201
                                        )            1415 State Street
20                                      )            Santa Barbara, CA.
                                        )
21   ───────────────────────────────────

22

23

24

25

26

27

28

                              1

1    The Los Osos Community Services District, a California

2 Community Services District ("LOCSD" or the "Debtor"), chapter

3 9 Debtor, hereby proposes the following "Plan For The Adjustment

4 of Debts of the Los Osos Community Services District, Dated

5 October 22, 2010" (the "Plan") pursuant to section 941 of the

6 Bankruptcy Code.

7    Please refer to the accompanying "Second Amended

8 Disclosure Statement With Respect To Plan For Adjustment of

9 Debts for the Los Osos Community Services District Dated

10 October 22, 2010" ("Disclosure Statement") for a discussion of

11 LOCSD's history, operations, and financial condition, and for a

12 summary and analysis of this Plan and other important

13 information. LOCSD encourages you to read this Plan and the

14 Disclosure Statement in their entirety before voting to accept

15 or reject this Plan. No materials other than the Disclosure

16 Statement and the various Exhibits and Schedules attached to or

17 incorporated therein have been approved by the Bankruptcy Court

18 for use in soliciting acceptance or rejections of this Plan.

19                           **ARTICLE 1**

20                          **DEFINITIONS**

21    For purposes of this Plan, the following terms shall have

22 the meanings specified below. Any term used in this Plan that

23 is not otherwise defined in this Article I shall have the

24 meaning assigned to that term in the Bankruptcy Code and in the

25 Bankruptcy Rules.

26    **1.1**    **Administrative Claim** means any Claim for an

27 administrative expense of the kind described in sections 503(b)

28 or 507(a)(1) of the Bankruptcy Code.

2

**1.2    Allowed** means a Claim that:

(i) has been deemed filed within the meaning of section 925 of the Bankruptcy Code, and as to which (a) no proof of Claim has been filed in compliance 1 with section 501 of the Bankruptcy Code, and (b) no objection has been filed within the deadline established pursuant to Section 9.7.1 of the Plan;

(ii) is asserted in a proof of Claim filed in compliance with section 501 of the Bankruptcy Code and any applicable orders of the Bankruptcy Court and as to which (a) no objection has been filed within the deadline established pursuant to Section 9.7.1 of the Plan; (b) the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim (but only in the amount so allowed); or (c) the Bankruptcy Court has entered a Final Order under section 502(c) of the Bankruptcy Code estimating the 9 amount of the Claim for purposes of allowance; or

(iii) Is an Administrative Claim as to which the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim (but only in the amount  so allowed).

**1.3    Allowed General Unsecured Claim** means a General Unsecured Claim that is an Allowed Claim.

**1.4    Allowed Secured Claim** means a Secured Claim that is an Allowed Claim.

**1.5    Available Funds** means (1) the Remaining State Revolving Fund Proceeds which total approximately $1,700,000 as of September 10, 2010; and (2) the County's contribution of $2,800,000 resulting from the return by LOCSD's to the County

3

1  of the Solid Waste Franchise Agreement previously transferred

2  by the County to LOCSD in 2001.

3      **1.6**  **Ballot** means the ballot, in the form approved by the

4  Bankruptcy Court in the Plan Solicitation Order, accompanying

5  the Disclosure Statement and that is provided to each holder of

6  a Claim entitled to vote to accept or reject this Plan, on

7  which such holders may vote to accept or reject this Plan.

8      **1.7**  **Bankruptcy Code** means Title 11 of the United States

9  Code, as amended from time to time, as applicable to the

10 Chapter 9 Case.

11     **1.8**  **Bankruptcy Court** means the United States Bankruptcy

12 Court for the Central District of California, Northern

13 Division, before which the Chapter 9 Case is pending, or in the

14 event such Bankruptcy Court ceases to exercise jurisdiction

15 over the Chapter 9 Case, such Bankruptcy Court or adjunct unit

16 thereof that exercises jurisdiction over the Chapter 9 Case in

17 lieu of the United States Bankruptcy Court for the Central

18 District of California.

19     **1.9**  **Bankruptcy Rules** mean the Federal Rules of Bankruptcy

20 Procedure, as amended from time to time, as applicable to the

21 Chapter 9 Case, together with the local rules of the Bankruptcy

22 Court applicable to the Chapter 9 Case. Unless otherwise

23 indicated, references in this Plan to "Bankruptcy Rule" are to

24 the specifically identified rule of the Federal Rules of

25 Bankruptcy Procedure.

26     **1.10**  **Bar Date** means May 15, 2007, the last day for filing

27 proofs of claim against the Debtor as fixed by order of the

28 Bankruptcy Court other than for: (i) claims arising from

4

1  rejection of executory contracts or unexpired leases; (ii)

2  claims of Governmental Units; and (iii) claims arising as the

3  result of transfer avoidance pursuant to Chapter 5 of the

4  Bankruptcy Code. Except for claims arising from rejection of

5  executory contracts and leases under Section 10.5 of the Plan,

6  for claims otherwise arising from the rejection of executory

7  contracts or unexpired leases pursuant to 11 U.S.C. §365,

8  pursuant to an order of the Bankruptcy Court, the last day to

9  file a proof of claim is: (i) 30 days after the date of entry

10  of the order authorizing the rejection; or (b) May 15, 2007,

11  whichever is later. For claims of Governmental Units, pursuant

12  to an order of the Bankruptcy Court, the last day for filing

13  proofs of claim is: (i) 180 days after the date of the Order

14  for Relief; or (ii) by May 17, 2007, whichever is later. By

15  order of the Bankruptcy Court, the last day to file proofs of

16  claim for claims arising from the avoidance of a transfer under

17  chapter 5 of the Bankruptcy Code is: (i) 30 days after the

18  entry of judgment avoiding the transfer; or (ii) May 17, 2007,

19  whichever is later.

20     **1.11** Bonds means bonds issued by the Debtor in the total

21  amount of $17,990,000 and entitled the "Los Osos Community

22  Services District Wastewater Assessment District No. 1 Limited

23  Obligation Improvement Bonds."

24     **1.11A** Bond Documents means the Official Statement for the

25  Bonds, Los Osos Community Services District Wastewater

26  Assessment District No. 1 Resolutions Nos. 2002-33, 2002-34 and

27  2006-29, and all related documents.

28

5

1    **1.12** __Business Day__ means any day, other than a Saturday,

2  Sunday or "legal holiday'" (as defined in Bankruptcy Rule

3  9006(a)).

4    **1.13** __Calendar Quarter__ means a three-month period ending

5  on March 31, June 30, September 30 and December 31 of each

6  calendar year.

7    **1.14** __Cash__ means cash and cash equivalents, including bank

8  deposits, wire transfers, checks, and other similar items.

9    **1.15** __Chapter 9 Case__ means the case under chapter 9 of the

10  Bankruptcy Code commenced by the Debtor, styled as In re Los

11  Osos Community Services District, BK Case No. ND 06-10548-RR,

12  which is currently pending in the Bankruptcy Court.

13    **1.16** __Claim__ means a claim against the Debtor or the

14  property of the Debtor within the meaning of section 101(5) of

15  the Bankruptcy Code.

16    **1.17** __Claimant__ means the holder of a Claim against the

17  Debtor.

18    **1.18** __Class__ means one of the classes of Claims established

19  under Article V of the Plan pursuant to section 1122 of the

20  Bankruptcy Code.

21    **1.19** __Collateral__ means any property or interest in

22  property of LOCSD subject to a Lien to secure the payment or

23  performance of a Claim, which Lien is not subject to avoidance

24  or otherwise invalid under the Bankruptcy Code or applicable

25  state law.

26    **1.20** __County__ means the County of San Luis Obispo.

27

28

1.21 **Confirmation** means the entry of an order by the Bankruptcy Court confirming the Plan at or after hearing pursuant to section 943 of the Bankruptcy Code.

1.22 **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.23 **Confirmation Order** means the order of the Bankruptcy Court confirming this Plan under section 943 of the Bankruptcy Code.

1.24 **Consummation** means the substantial completion of the Distributions to be made under the Plan as determined by the Bankruptcy Court.

1.25 **Creditor** means all Persons with Claims against the Debtor.

1.26 **Debt** means liability on a Claim.

1.27 **Debtor** means Los Osos Community Services District, a California Community Services District.

1.28 **Disallowed** means a Claim or portion thereof that satisfies any of the following: (i) has been disallowed by a Final Order; (ii) is identified in the List of Creditors in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which no proof of Claim was filed on or before the Bar Date; or (iii) is not identified in the List of Creditors and as to which no proof of Claim has been filed or deemed filed on or before the Bar Date.

1.29 **Disbursement Reserve Account** has the meaning set forth in Section 9.1.1 of this Plan.

7

**1.30 <u>Disbursing Agent</u>** means the Debtor or such other agents as may be retained by the Debtor without bond to make or assist the Debtor in making Distributions.

**1.31 <u>Disclosure Statement</u>** means the disclosure statement, and all exhibits and schedules incorporated therein, that relates to this Plan and that is approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented in accordance with the Bankruptcy Code.

**1.32 <u>Disputed</u>** means any Claim or portion thereof that has not become Allowed and that is not Disallowed. In the event that any part of a Claim is Disputed, except as otherwise provided in this Plan, such Claim shall be deemed Disputed in its entirety for purposes of distribution under this Plan unless the Debtor agrees otherwise in its sole discretion. Without limiting the foregoing, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, reduce, subordinate, or estimate such Claim shall be deemed to be Disputed.

**1.33 <u>Disputed Claims</u>** means (a) a Claim as to which, if no proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law and such Claim has been scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated: (1) the Debtor has objected to the Claim and (2) (i) any agreement to settle the dispute has not been executed, or (ii) if such agreement was executed prior to the Confirmation Date, such agreement has not

8

been approved by the Court; or (b) a Claim as to which, if a proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law, an objection has been Filed by the Debtor or any other party in interest and which objection, if timely Filed, has not been withdrawn on or before any date fixed by the Plan or order of the Court for Filing such objections and such objection has not been denied by a Final Order.  Prior to the time that an objection has been or may be timely Filed, for purposes of the Plan, a Claim asserted in a proof of Claim shall be considered a Disputed Claim if:  (a) the amount of the Claim specified in the proof of Claim exceeds the amount of any corresponding Claim scheduled by the Debtor in its Schedules (b) any corresponding Claim in the Debtor's Schedules has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (c) no corresponding Claim has been scheduled by the Debtor in its Schedules.  As to any Disputed Claim, only the portion thereof which either (a) exceeds the amount of any corresponding Claim scheduled by the Debtor in its Schedules or (b) is asserted by the Debtor in objections Filed in connection therewith as disputed, contingent or unliquidated shall be deemed the "disputed portion" of such Disputed Claim.

1.34 **Disputed Claims Reserve Account** means a segregated interest bearing account into which the Debtor has deposited from the Net Funds an amount of Cash which, in the exercise of the Debtor's sole discretion, the Debtor believes is the amount that would have been distributed on account of all Disputed Claims in Class 8 if all such Disputed Claims were allowed in

9

the full amount claimed by the holders thereof on the Effective Date, except as to those Disputed Claims that are estimated as provided in Section 9.2 and pursuant to section 502(c) of the Bankruptcy Code.

**1.35 Distribution(s)** means the Cash to be distributed under this Plan.

**1.36 Effective Date** means the fifth (5th) Business Day after the date on which the conditions specified in Article 15 of the Plan have been satisfied or waived.

**1.37 Face Amount** means (a) when used with reference to a Disputed or Disallowed Claim, the full stated amount Claimed by the Claimant in a proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the Allowed amount of the Claim.

**1.38 File or Filed or Filing** means properly filed with the Bankruptcy Court in the Chapter 9 Case, as reflected on the official docket of the Bankruptcy Court.

**1.39 Final Order** means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which:

(i)  the time to appeal or petition for review, rehearing or certiorari has expired and no appeal or petition for review, rehearing or certiorari is then pending; or

(ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or

10

1  petition for review, rehearing or certiorari can be taken or

2  granted.

3     **1.40 General Unsecured Claim** means any Unsecured Claim

4  against the Debtor, including the Unsecured Claims in Classes

5  6, 7 and 8 under the Plan.

6     **1.41 Governmental Unit** has the meaning provided in section

7  101(27) of the Bankruptcy Code.

8     **1.41A** Holders means the beneficial owners of the Bonds.

9     **1.42 Impaired** has the meaning provided in section 1124 of

10  the Bankruptcy Code.

11     **1.43 LAFCO** means the Local Area Formation Commission with

12  jurisdiction over LOCSD.

13     **1.44 Lien** has the meaning provided in Section 101 (37) of

14  the Bankruptcy Code.

15     **1.45 List of Creditors** means the List of Creditors filed

16  by the Debtor pursuant to section 924 of the Bankruptcy Code on

17  or about February 23, 2007, as it may be amended, modified or

18  supplemented from time to time.

19     **1.46 Notice of Effective Date** means the Notice prepared

20  and mailed pursuant to Section 16.7.

21     **1.47 Old Project** means the wastewater project on which

22  LOCSD began but then stopped construction before the Petition

23  Date.

24     **1.48 Order for Relief** means the commencement of this

25  Chapter 9 Case under the Bankruptcy Code by the Debtor's filing

26  of a voluntary petition under such chapter, which an order for

27  relief was automatically entered pursuant to section 301 of the

28

EXHIBIT A
page 97

1  Bankruptcy Code, as confirmed by order of the Bankruptcy Court

2  entered on September 14, 2006.

3      **1.49 Ordinary Course Administrative Claim** means an

4  Administrative Claim, other than a Professional Claim, that

5  represents an obligation incurred in the ordinary course of

6  business of the Debtor (as determined by the Debtor in its sole

7  discretion) from and after the Petition Date through and

8  including the Confirmation Date.

9      **1.50 Person** means and includes an individual, corporation,

10  partnership, joint venture, association, joint stock company,

11  limited liability company, limited liability partnership,

12  trust, estate, unincorporated organization or other entity, and

13  a Governmental Unit.

14      **1.51 Petition Date** means August 25, 2006, the date on

15  which an order for relief was automatically entered pursuant to

16  section 301 of the Bankruptcy Code and confirmed by order of

17  the Bankruptcy Court entered on September 14, 2006.

18      **1.52 Post-Petition Date** means after August 25, 2006.

19      **1.53 Plan** means this Plan of Adjustment of Debts, together

20  with all Exhibits hereto, each in their present form or as they

21  may be altered, amended or modified from time to time in

22  accordance with the provisions of this Plan, the Confirmation

23  Order, the Bankruptcy Code, and the Bankruptcy Rules.

24      **1.54 Plan Documents** means all agreements, instruments and

25  documents required or contemplated by the Plan including

26  agreements, instruments and documents to be executed, entered

27  into, delivered or recorded pursuant to the Plan.

28

1        **1.55 Plan Solicitation Order** means the Order Approving (i)

2    Adequacy Of Information In Disclosure Statement With Respect To

3    Los Osos Community Services District's Plan Of Adjustment; (ii)

4    Form, Scope And Nature Of Solicitation, Balloting, Tabulation

5    And Notices With Respect Thereto; And (iii) Related

6    Confirmation Procedures, Deadlines And Notices, by which the

7    Bankruptcy Court approved the Disclosure Statement as

8    containing adequate information for the purpose of

9    dissemination and solicitation of votes on and confirmation of

10   this Plan and established certain rules, deadlines, and

11   procedures for the solicitation of votes with respect to and

12   the balloting on this Plan.

13       **1.56 Professional Claim** means a Claim for approval of

14   amounts paid or to be paid for professional services and

15   expenses in the Chapter 9 Case or incident to this Plan and

16   afforded treatment under section 507(a)(1) of the Bankruptcy

17   Code.

18       **1.57 Pro Rata** means, at any time the proportion that the

19   Face Amount of a Claim in a particular Class bears to the

20   aggregate Face Amount of all Claims (including Disputed Claims,

21   but excluding Disallowed Claims) in such Class, unless the Plan

22   provides otherwise.

23       **1.58 Remaining State Revolving Fund Proceeds** means the

24   loan proceeds LOCSD obtained from the State Water Board's State

25   Revolving Fund to design and construct the Old Project.

26       **1.59 Reinstated or Reinstatement** means (a) leaving

27   unaltered the legal, equitable and contractual rights to which

28   a Claim is entitled, so as to leave such Claim unimpaired in

13

1   accordance with section 1124 of the Bankruptcy Code, or (b)

2   notwithstanding any contractual provision or applicable law

3   that entitles the holder of such claim to demand or receive

4   accelerated payment of such Claim after the occurrence of a

5   default (i) curing any such default that occurred before or

6   after the Petition Date, other than a default of a kind

7   specified in section 365(b)(2) of the Bankruptcy Code; (ii)

8   reinstating the maturity of such Claim as such maturity existed

9   before such default; (iii) compensating the holder of such

10  claim for any damages incurred as a result of any reasonable

11  reliance by such holder of such claim on such contractual

12  provision or such applicable law; and (iv) not otherwise

13  altering the legal, equitable or contractual rights to which

14  the holder of such Claim is entitled; provided, however, that

15  any contractual right that does not pertain to the payment when

16  due of principal and interest on the obligation on which such

17  Claim is based, including, but not limited to, circumstances

18  that may give rise to an alleged non-monetary default, shall

19  not be required to be cured or Reinstated in order to

20  accomplish Reinstatement.

21      **1.60 <u>Rights of Action</u>** means all claims, causes of action,

22  and defenses of the Debtor, including, but not limited to:

23  counterclaims; rights of offset or recoupment; objections to

24  Claims; objections to the validity, priority, amount,

25  allowance, or classification of any Claim; rights to seek

26  equitable or contractual subordination of  Claims; and

27  avoidance and recovery of Pre-petition or Post-petition

28  transfers (including but not limited to the Avoidance Actions),

14

1   which claims, causes of action, and defenses are  against,

2   arise out of, or are related to any of the following (except

3   for such claims, causes  of action, and defenses that have been

4   settled and released pursuant to this Plan or an order of the

5   Bankruptcy Court):

6          a.   All claims, causes of action and defenses

7   against the current and/or past officers and/or directors of

8   the Debtor, control persons of the Debtor, the Debtor's

9   predecessors in interest, and the agents, attorneys,

10  accountants, investment  bankers, underwriters, and other

11  professionals employed by any of the current and/or past

12  officers and/or directors of the Debtor, or the Debtor's

13  predecessors in interest,  including, but not limited to,

14  claims, causes of action and defenses arising out of or related

15  breach of duty, negligence, mismanagement and/or excessive

16  compensation;

17         b.   All claims, causes of action and defenses

18  against any Person who is or was a past or present officer,

19  director, executive, control person, or predecessors in

20  interest of the Debtor, and the agents, attorneys, accountants,

21  investment bankers, underwriters, and other professionals

22  employed by any Person who  is or was a past or present

23  officer, director, executive, control person, or predecessors

24  in interest of the Debtor;

25         c. All claims, causes of action and defenses against

26  any Person;

27         d.   All claims, causes of action, and defenses

28  arising out of or related to lawsuits and proceedings pending

15

1   as of the Petition Date, and any lawsuit or proceeding

2   commenced by or against the Debtor after the Petition Date;

3         e.    All rights, claims, causes of action and

4   defenses arising under or related to Claims that have been

5   purchased during this Chapter 9 Case and/or are asserted by a

6   Person other than the original claimant, including, but not

7   limited to, defenses to the amount of such claims based on

8   failure to provide adequate information to the transferors;

9         f.    All claims, causes of action and defenses

10  arising out of or related to any theft claims, fire loss claims

11  and damage claims at any time arising against any Person;

12        g.    All claims, causes of action and defenses

13  arising out of or related to amounts due the Debtor, by any

14  Person, for deposit refund claims, chargebacks, rebates,

15  premium adjustments, refunds and accounts receivable claims;

16        h.    All defenses, counterclaims, third party claims,

17  offset claims, rights of recoupment, causes of action for

18  equitable or contractual subordination, indemnity claims and

19  coverage claims arising out of or related to any Claim against

20  the Debtor, whether based on the Bankruptcy Code or any

21  applicable law;

22        i.    All claims related to taxes, and rights to file

23  tax returns and amended returns and to seek tax determinations,

24  including, without limitation, tax loss carryback claims, net

25  operating loss claims, determinations of basis or depreciation,

26  overpayment claims, offset and counterclaims;

27

28

16

1         j.    All claims, causes of action and defenses

2 against or with respect to financial institutions and any other

3 Person for the turnover of funds of, or due to, the Debtor;

4         k.    All rights, causes of action, defenses, claims,

5 powers, privileges and licenses of the Debtor;

6         l.    All causes of action, claims and defenses

7 arising under the Plan and the Bankruptcy Code;

8         m.    All rights, claims, causes of action and

9 defenses for coverage in or under any and all insurance

10 policies of the Debtor; and

11         n.    All rights, claims, or Causes of Action owned

12 by, accruing to, or assigned to the Debtor pursuant to the

13 Bankruptcy Code or pursuant to any contract, statute, or legal

14 theories.

15     **1.61 Secured Claim** means a Claim that is alleged to be

16 secured, in whole or in part, (a) by a Lien that is not subject

17 to avoidance or subordination under the Bankruptcy Code or

18 applicable non-bankruptcy law; or (b) as a result of a valid

19 right of setoff under section 553 of the Bankruptcy Code, but

20 in any event only to the extent of the value, determined in

21 accordance with section 506(a) of the Bankruptcy Code, of the

22 holder's interest in the Debtor's interest in property or to

23 the extent of the amount subject to such valid setoff, as the

24 case may be.

25     **1.62 Solid Waste Franchise Agreement** means the solid waste

26 franchise contract with a company that picks up and disposes of

27 solid waste within LOCSD's boundaries.

28

1        **1.62A Special Tax** means a tax which could be imposed to

2   pay Class 8 Creditors **if** (a) the Class 8 creditors decide to

3   seek a vote of the registered voters who live in the area which

4   was to be served by LOCSD's former wastewater project (the

5   "Prohibition Zone") to approve that tax in an amount to be

6   determined by the Class 8 Creditors, and (b) two-thirds of the

7   registered voters vote to assess the Special Tax.

8        **1.63 Unclaimed Distribution** means any Distributions that

9   are unclaimed two (2) years following the date of the making of

10  the Distribution. Unclaimed Distributions shall include (a)

11  checks (and the funds represented thereby) which have been

12  returned as undeliverable without a proper forwarding address,

13  (b) funds for checks which have not been paid, (c) checks (and

14  the funds represented thereby) which were not mailed or

15  delivered because of the absence of a proper address with which

16  to mail or deliver such property, and (d) interest on cash from

17  unclaimed Distributions.

18       **1.64 Unsecured Claim** means any Claim that is not a Secured

19  Claim or an Administrative Claim.

20       **1.65 U.S. Bank** means U.S. Bank National Association,

21  acting in its capacity as Paying Agent pursuant to the Paying

22  Agent/Bond Registrar Agreement dated February 15, 2007, between

23  Debtor and U.S. Bank, and as Trustee of the Redemption Fund and

24  the Reserve Fund established by the Debtor pursuant to Los Osos

25  Community Services District Wastewater Assessment District No.

26  1 Resolution No. 2006-29, dated November 16, 2006.

27

28

EXHIBIT A
page 104

## ARTICLE 2

### RULES OF CONSTRUCTION

The following rules of construction apply to this Plan:

**2.1** Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used in the Plan shall have the meanings provided in the Bankruptcy Code or the Bankruptcy Rules.

**2.2** The rules of construction set forth in section 102 of the Bankruptcy Code apply.

**2.3** In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a).

**2.4** Unless otherwise specified; all references in this Plan to "Sections" and "Exhibits" are to the respective Section in or Exhibit to this Plan, as the same may be amended or modified from time to time.

**2.5** Section captions and the headings in this Plan are for convenience of reference only and do not limit or otherwise affect the provisions of this Plan.

**2.6** Words denoting the singular number include the plural number and vice versa.

**2.7** The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular Section, subsection, or clause contained in this Plan.

**2.8** The first letters of terms defined in the Plan are capitalized.

19

**ARTICLE 3**

**CERTAIN GENERAL TERMS AND CONDITIONS**

The following general terms and conditions apply to this Plan:

**3.1** To the extent any Claim or portion of any Claim of a Creditor is a Disputed Claim, or is otherwise contingent or unliquidated, or has not been allowed by the Bankruptcy Court, the Disbursing Agent may either reserve and segregate from such Distributions under the Plan an amount sufficient to provide for each of such Claims under the Plan, ask the Bankruptcy Court to determine an appropriate reserve, or ask the Bankruptcy Court to estimate for purposes of allowance any contingent or unliquidated Claim which would otherwise delay the administration of the Chapter 9 Case.

**3.2** Pursuant to sections 901(a) and 1123(a)(1) of the Bankruptcy Code, Article V of the Plan designates nine Classes of Claims. As set forth below, Claims of the kind specified in sections 507(a)(1) of the Bankruptcy Code have not been classified and are excluded from the Classes set forth in Article V of the Plan, in accordance with section 1123(a)(1) of the Bankruptcy Code.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class. Multiple proofs of claim filed by a Creditor that qualify for

20

1 inclusion within the same Class shall be aggregated and, if

2 allowed, shall constitute a single Allowed Claim.

**ARTICLE 4**

**TREATMENT AND DEADLINE FOR THE ASSERTION**

**OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS**

6     **4.1 <u>Treatment Of Administrative Claims</u>**.  The Debtor or its

7 agent shall pay from Net Funds to each holder of an Allowed

8 Administrative Claim, in full satisfaction, release and

9 discharge of such Claim, Cash in an amount equal to such

10 Allowed Administrative Claim on the later of the Effective Date

11 or the date on which such Claim becomes an Allowed

12 Administrative Claim, or as soon thereafter as is practicable,

13 unless the holder of an Allowed Administrative Claim agrees to

14 a different treatment; provided however, that Ordinary Course

15 Administrative Claims shall be paid in full and honored by the

16 Debtor in the ordinary course of business in accordance with

17 the terms and conditions of the particular transactions and any

18 agreements relating thereto.

19     **4.2 <u>Treatment Of Professional Claims</u>**. Pursuant to section

20 943(b)(3) of the Bankruptcy Code, all amounts paid or to be

21 paid for services or expenses in the Chapter 9 Case or incident

22 to this Plan must be approved by the Bankruptcy Court as

23 reasonable. The Debtor or its agent shall pay from Net Funds to

24 each holder of a Professional Claim, in full satisfaction,

25 release and discharge of such Claim, Cash in an amount equal to

26 that portion of such Claim that the Bankruptcy Court approves

27 as reasonable (except to the extent such Claim previously has

28 been paid or satisfied) on or as soon as reasonably practicable

21

1  following the date on which the Bankruptcy Court order

2  determining such reasonableness becomes a Final Order.

3      **4.3**  **Deadline For The Filing And Assertion Of**

4            **Administrative Claims (Other Than Ordinary Course**

5            **Administrative Claims And Professional Claims).**

6      All requests for payment or any other means of preserving

7  and obtaining payment of Administrative Claims (other than

8  Ordinary Course Administrative Claims and requests for approval

9  of Professional Claims) that have not been paid, released, or

10  otherwise settled, must be filed with the Bankruptcy Court and

11  served upon the Debtor and the United States Trustee no later

12  than thirty (30) days after the date on which the Notice of

13  Effective Date is mailed. Any request for payment of an

14  Administrative Claim (other than an Ordinary Course

15  Administrative Claim and a request for approval of Professional

16  Claim) that is not timely filed by such date will be forever

17  barred, and holders of such Claims shall be barred from

18  asserting such Claims in any manner against the Debtor or

19  receiving any Distributions under this Plan.

20                **ARTICLE 5**

21        **DESIGNATION OF CLASSES OF CLAIMS**

22      Pursuant to section 1122 of the Bankruptcy Code, set forth

23  below is a designation of Classes of Claims against the Debtor.

24  A Claim is placed in a particular Class for the purposes of

25  voting on the Plan and receiving distributions pursuant to the

26  Plan only to the extent that such Claim is an Allowed Claim in

27  that Class and such Claim has not been paid, satisfied or

28  otherwise settled prior to the Effective Date. In accordance

EXHIBIT A
page 108

1  with Sections 901 and 1123(a)(1) of the Bankruptcy Code,

2  Administrative Claims and Professional Claims have not been

3  classified and their treatment is set forth in Article IV

4  above. All Claims other than Administrative Claims and

5  Professional Claims are classified for all purposes, including

6  voting, confirmation, and distribution pursuant to this Plan,

7  as follows:

8      **5.1  Class 1** – Allowed Secured Claim of Frank K. Freitas,

9  San Luis Obispo Tax Collector;

10     **5.2  Class 2** – Allowed Secured Claim of Key Equipment

11 Finance;

12     **5.3  Class 3** – Allowed Secured Claim of Citizens Business

13 Bank;

14     **5.4  Class 4** – Allowed Secured Claim of California

15 Infrastructure & Development Bank;

16     **5.5  Class 5(A)** – Allowed Secured Claim of the Holders of

17 the Bonds.

18     **5.6  Class 5(B)** – Allowed Secured Claim of MBIA Insurance

19 Corp;

20     **5.7  Class 6** – Allowed Unsecured Claim of the Regional

21 Water Quality Control Board;

22     **5.8  Class 7** – Allowed Unsecured Claim of the State Water

23 Resources Control Board;

24     **5.9  Class 8** - All Other Allowed General Unsecured Claims.

25                         **ARTICLE 6**

26          **UNIMPAIRED CLASS (NONVOTING) UNDER THE PLAN**

27     **6.1 Class 1.**   The Secured Claim of Frank K. Freitas, San

28 Luis Obispo Tax Collector, is a claim for payment of unpaid

real property taxes totaling $3,556.62 (proof of claim no. 43). The Class 1 Claim will retain all legal and equitable rights under non-bankruptcy law.

**6.2 Class 2.**   The Secured Claim of Key Equipment Finance is based upon a financing lease of with an approximate balance of $10,508.38 (proof of claim no. 101) as of the Petition Date. This Claim was paid in full on March 15, 2007 and the Class 2 Claimant will receive no further distributions under the Plan.

**6.3 Class 3.**   The Secured Claim of Citizens Business Bank is for a loan made to LOCSD to finance the purchase of a fire truck.   This Claim was paid in full according to the loan terms on September 1, 2010.   The Class 3 Claimant will receive no further distributions under the Plan.

**6.4 Class 4.**   The Secured Claim of California Infrastructure & Development Bank is for financing of a water system project constructed by LOCSD in 2005 with an approximate balance as of August 1, 2010 of $4,516,021.29 (proof of claim 151).   This Claim is secured by LOCSD's water system. California Infrastructure & Development Bank will retain unaltered all legal, equitable and contractual rights under the Enterprise Installment Sale Agreement Dated as of December 6, 2004, Agreement No. CIEDB-B04-060 and that all security interests will remain in place.   LOCSD is current on its obligations to California Infrastructure & Development Bank and will continue to make its semi-annual interest payments of $68,869.33 due on February 1, 2011 and will make all further payments per the terms of the Amortization Schedule attached as

24

1  Exhibit E to the Enterprise Installment Sale Agreement Dated as

2  of December 6, 2004, Agreement No. CIEDB-B04-060.

3      **6.5 Class 5(A)**. The secured claim of the Holders of the

4  Bonds, which claim trustee on behalf of the bond holders who

5  purchased the bonds issued to plan and commence construction of

6  the Old had an approximate balance of $17,000,000 as of the

7  Petition Date.  This Claim is secured by the assessments on the

8  real property of those LOCSD residents living in the

9  Prohibition Zone (Zone K).  Those assessments are collected on

10  an annual basis by the County and the County makes the payments

11  on the bonds to U.S. Bank.   The Holders will retain unaltered

12  all legal, equitable and contractual rights under the Bonds and

13  the Bond Documents and all security interests securing the

14  Bonds pursuant to the Bond Documents will remain in place.

15  Further, the procedure by which the County collects the

16  assessments and pays U.S. Bank will remain in place until the

17  Bonds are paid in full.  LOCSD is current on its obligations to

18  the Holders.

19      **6.6**. Pursuant to sections 901(a) and 1126(f) of the Code,

20  each Creditor holding a Claim in Classes 1, 2, 3, 4 and 5(A) is

21  conclusively presumed to have accepted the Plan, and

22  solicitation of an acceptance with respect to each such

23  Creditor is not required.

24                          **ARTICLE 7**

25          **TREATMENT OF CLASSES IMPAIRED UNDER THE PLAN**

26      Classes 5(B), 6, 7 and 8 are Impaired under the Plan and

27  shall be treated in accordance with the terms stated below. The

28

                                25

Debtor will solicit acceptances of the Plan from each Impaired

Class. The Impaired Classes will be treated as follows:

**7.1 Class 5(B).** The Class 5 Secured Claim of MBIA

Insurance Corp. arises out of the bonds that were issued by

LOCSD to fund part of the Old Project.  MBIA Insurance Corp. is

the insurer of those bonds.  The bond indenture required LOCSD

to maintain certain bond proceeds in reserve and segregate them

(approximately $1,158,000 to the Debt Service Reserve Fund).

Instead, LOCSD pooled the reserve funds and spent them for

other purposes.  MBIA Insurance Corp.'s claim is for

$714,268.00, plus interest, fees and expenses (proof of claim

no. 119) and is secured by the assessments paid annually by the

property owners.  The LOSCD is informed that the current

balance of the claim is approximately $450,000, excluding

interest, fees and expenses.  In full satisfaction of its

Allowed Secured Claim, MBIA Insurance Corp. shall be paid

$25,000 per year from the annual assessment overhead charges

collected by the County until the Claim is paid in full without

interest.  Each annual payment will be made by the County at

the time the County collects the assessments and makes payments

to the U.S. Bank.

**7.2  Class 6.** The Unsecured Claim of the Regional Water

Quality Control Board arises from an Administrative Civil

Liability Order (No. R3-2005-0137) levied against LOCSD

pursuant to California Water Code sections 13308 and 13350 for

LOCSD's failure to complete the construction of a community

sewer system by August 30, 2004.  The liability imposed by the

Regional Water Quality Control Board was $10,000 per day.

26

1    The Regional Water Quality Control Board's claim is for

2    $6,627,000.00 (proof of claim no. 126).

3        The Claim of the Class 6 Creditor will be subordinated to

4    the Claims of Class 7 and 8 Creditors if (a) the Plan is

5    approved; (b) the County of San Luis Obispo (the "County")

6    adopts a due diligence resolution to proceed with the County's

7    wastewater project; (c) the LOCSD provides the Class 6 Creditor

8    with a draft water conservation plan.

9        **7.3    Class 7.** The Unsecured Claim of the State Water

10   Resources Control Board arises from a loan and other advances

11   to LOCSD by the State Water Resources Control Board's State

12   Revolving Fund to design and construct a portion of the Old

13   Project.  State Water Resources Control Board's claim is for

14   $8,636,565.57 and is comprised of a $6,486,144.00 State

15   Revolving Fund loan, $150,421.57 in accrued interest as of the

16   Petition Date, and a $2,000,000 grant (proof of claim no. 128).

17       If the Plan is approved, the County will satisfy the State

18   Water Resources Control Board's claim in connection with the

19   State Revolving Fund financing the County obtained from the

20   State Revolving Fund for the County's wastewater project and

21   the State Water Resources Control Board will not receive a

22   distribution under the Plan.

23       **7.4   Class 8.** The class of All Other General Unsecured

24   Claims consists of all Unsecured Claims other than the

25   Unsecured Claims of the Regional Water Quality Control Board

26   and the State Water Resources Control Board.

27       The Claimants in Class 8 will receive on account of their

28   Allowed General Unsecured Claims and in full satisfaction,

27

release and discharge thereof, a Pro Rata share of any Cash Distribution from the Available Funds and their Pro Rata Share of the Special Tax annual installments.

LOCSD estimates that it will be able to make Distributions from the Remaining State Revolving Fund Proceeds within 60 days of the Effective Date of the Plan.  LOCSD also estimates that the Distributions from amounts received from the County's contribution based upon the transfer of LOCSD's Solid Waste Franchise Agreement could take approximately eight months from the Effective Date because regulatory approvals are required for that transfer.  Distributions from the proceeds of the return of the Solid Waste System Franchise Agreement will be made on the first Business Day following each Calendar Quarter in which the funds are received until such Available Funds have been exhausted.  Distributions from the Special Tax annual installments will be paid after the County collects and processes the Special Tax payments.

On or before the first Distribution to be made to Claimants in Class 8, LOCSD will establish the Disputed Claims Reserve for holders of Disputed Claims.  Subject to LOCSD's right to have the amount of any contingent or unliquidated Disputed Claims estimated and to use the estimated amount for the purposes of setting the Disputed Claims Reserve, LOCSD will deposit into such reserve on each date a Distribution is made to the holders or Disputed Claims an amount equal to the Pro Rata Share of the Available Funds and the Special Tax installments that would have been distributed to holders of Disputed Claims had such Claims been Allowed on the date of

28

1  each Distribution in the Face Amount.  All Distributions

2  required to be made the holders of Class 8 Claimants from

3  Available Funds and Special Tax installments and the Disputed

4  Claim Reserve will be established and fully funded by LOCSD

5  with Available Funds and Special Tax installments as such funds

6  are available.

7  **ARTICLE 8**

8  **ACCEPTANCE OR REJECTION; CRAMDOWN**

9     **8.1 <u>Voting Of Claims</u>**. Each holder of a Claim classified

10  into Classes 5(B), 6, 7 and 8 shall be entitled to vote each

11  such Claim separately to accept or reject this Plan.

12     **8.2 <u>Nonconsensual Confirmation</u>**. The Debtor believes that

13  the applicable requirements for confirmation of this Plan as

14  set forth in sections 901, 943, 1129(a)(2), 1129(a)(3),

15  1129(a)(6), and 1129(a)(10) are satisfied. Accordingly, the

16  Debtor will and hereby does request that the Bankruptcy Court

17  confirm this Plan in accordance with those portions of section

18  1129(b) of the Bankruptcy Code that are applicable to the

19  Chapter 9 Case and, in the event that an Impaired Class of

20  Claims rejects this Plan, on the basis that this Plan is fair

21  and equitable and does not discriminate unfairly with respect

22  to any non-accepting Impaired Class.

23  **ARTICLE 9**

24  **IMPLEMENTATION AND MEANS FOR CONSUMMATION OF THIS PLAN**

25     **9.1 <u>Funding the Plan</u>**.

26         **9.1.1 <u>Payments to Holders of Allowed Administrative</u>**

27               **<u>and Professional Claims</u>**. To the extent Allowed

28  Administrative Claims are not paid on or before the Effective

29

1  Date, payments to holders of Allowed Administrative Claims and

2  holders of Professional Claims shall made in Cash and funded

3  from Available Funds, except for Ordinary Course Administrative

4  Claims will be satisfied from LOCSD funds on hand allocated to

5  that purpose on and after the Effective Date.

6      **9.1.3 <u>Funding of Distributions to Holders of Claims in</u>**

7      **<u>Class 8</u>**.  No later than the first Business Day

8  following the sixtieth (60th) day after the Effective Date, the

9  Debtor will deposit into a segregated account ("Disbursement

10 Reserve Account") all Remaining State Revolving Fund Proceeds

11 on hand except for Remaining State Revolving Fund Proceeds

12 required to fund the Disputed Claims Reserve Account.  No later

13 than the first Business Day of following receipt by the Debtor

14 of the contribution from County on account of the return to the

15 County Solid Waste Franchise Agreement, the Debtor will deposit

16 those funds into the Disbursement Reserve Account except for

17 Remaining State Revolving Fund Proceeds required to fund the

18 Disputed Claims Reserve Account.  All Distributions required to

19 be made to holders of Class 8 Claims from Available Funds and

20 Special Tax installments will be made pursuant to Article VII,

21 Section 7.4, and the Disputed Claims Reserve Account will be

22 established and funded by the Debtor with Available funds in

23 accordance with Sections 9.2 and 11.7.

24     **9.2 <u>Establishment and Funding of Disputed Claims Reserve</u>**.

25     No later than the first Business Day following the

26 sixtieth (60th) day after the Effective Date, the Debtor shall

27 establish the Disputed Claims Reserve Account for holders of

28 Disputed Claims in Class 8 ("Disputed Claims"). Subject to

30

Section 11.7, below, the Debtor will deposit into such reserve account on each date a Distribution is made to holders of Allowed Claims in Class 8 an amount equal to the Pro Rata Share of the Distributions that would have been distributed to holders of Disputed Claims, had such Claims been Allowed on the date of each such Distribution in the Face Amount. At such time as all Disputed Claims have been finally determined and paid all Distributions to which the holders thereof are entitled to receive hereunder upon Allowance of their respective Claims in Class 8, the balance of Cash held in the Disputed Claims Reserve Account shall be distributed to the holders of Allowed General Unsecured Claims in Class 8 on a Pro Rata basis.

**9.3 <u>Bar Date and Other Deadlines</u>**. The last date for filing proofs of claim is the Bar Date, except for claims arising from the rejection of an executory contract or lease pursuant to Section 10.3 for which the last day to file a proof of claim is thirty (30) days after the Effective Date. The deadline for the filing of a request for payment of Administrative Claims other than an Ordinary Course Administrative Claim, a request for approval of a Professional Claim, or a request for payment of monetary amounts necessary to be paid to cure any existing defaults or arrearages in connection with the Debtor's assumption of an executory contract or lease pursuant to Section 10.1 Plan is thirty (30) days after the Effective Date. The deadline for the filing of a request for payment of monetary amounts in connection with executory leases or contracts assumed pursuant to Section 10.1 is thirty (30) days

31

1  after the Notice of the Effective Date is mailed pursuant to

2  Section 10.4.

3       **9.4** <u>**Retention Of Rights, Claims, And Causes Of Action, And**</u>

4            <u>**Prosecution Thereof**</u>. Pursuant to sections 901 (a) and

5  1123(b)(3) of the Bankruptcy Code, the Debtor may maintain and

6  enforce any Rights of Action of the Debtor. All Rights of

7  Action shall remain property of the Debtor and may be

8  prosecuted, settled, or abandoned by the Debtor, subject to the

9  terms and conditions of this Plan, the Confirmation Order, and

10 any Final Order of the Bankruptcy Court, after the Effective

11 Date. Also expressly retained are all of the claims, causes of

12 action, defenses, counterclaims, causes of action for equitable

13 or contractual subordination, offset and recoupment rights of

14 the Debtor against any Person whether or not particularly

15 disclosed in the Disclosure Statement, it being the intent

16 expressly provided in this Plan that the requirements of <u>In re</u>

17 <u>Heritage Hotel</u>, 160 B.R. 374, 377 (BAP. 9th Cir. 1993), affd,

18 59 F.3d 175 (9th Cir. 1995), and <u>The Alary Corp. v. Sims (In re</u>

19 <u>Associated Vintage Group, Inc.</u>), 283 B.R. 549, 564 (BAP. 9th

20 Cir. 2002), have been satisfied, and that all claims and causes

21 of action held by the Debtor are retained and shall not be

22 barred under the principles of res judicata, and will not be

23 waived by reason of estoppel, judicial estoppel or res

24 judicata.

25       **9.4.1** <u>**Authority to Prosecute and Enforce Prosecution**</u>

26            <u>**Of Rights Of Action**</u>. Following the Effective

27 Date, the Debtor shall be the appointed representative and

28 shall have the exclusive right to, and may in its sole

32

1  discretion, pursue, litigate, compromise, and settle any and

2  all Rights of Action, as appropriate, without further notice,

3  the opportunity for a hearing, or Bankruptcy Court approval.

4  The deadline for commencing an action based on a Right of

5  Action shall be one hundred eighty (180) days after the

6  Effective Date or as may be further extended by order of the

7  Bankruptcy Court; provided, however, that if the entity against

8  whom the Debtor asserts a Right of Action is a debtor under any

9  Chapter of the Bankruptcy Code, then the deadline shall be one

10  hundred eighty (180) days after the Debtor obtains relief from

11  stay or other relief which will permit the Filing of an action

12  against such entity based on a Right of Action.

13       **9.4.2 No Waiver Or Limitation Of Rights Of Action**.

14       The failure to list in the Disclosure Statement any

15  potential or existing Right of Action generally or specifically

16  is not intended to and shall not limit the rights of the Debtor

17  to pursue any such action. Unless a Right of Action is

18  expressly waived, relinquished, released, compromised or

19  settled in this Plan, the Debtor expressly reserves all Rights

20  of Action for later adjudication and, as a result, no

21  preclusion doctrine, including the doctrines of res judicata,

22  collateral estoppel, issue preclusion, claim preclusion,

23  estoppel Judicial, equitable or otherwise) or laches, shall

24  apply to such Rights of Action upon or after the confirmation

25  or consummation of this Plan or the Effective Date.

26       **9.4.3 Authority to Settle Rights of Action**. From and

27  after the Effective Date, the Debtor shall be authorized with

28  respect to any Rights of Action, pursuant to Bankruptcy Rule

33

1   9019 and section 105(a) of the Bankruptcy Code, to compromise

2   and settle such Rights of Action, in accordance with the

3   following procedures, which shall constitute sufficient notice

4   in accordance with the Bankruptcy Code and the Bankruptcy Rules

5   for compromise and settlement of such Rights of Action:

6          (i) If (a) the total amount in controversy in

7   connection with a Rights of Action to be settled is less than

8   $100,000 (i.e. the total amount the Debtor seeks to recover,

9   exclusive of costs, attorney's fees, expenses and punitive

10  damages, is less than $100,000), (b) a proceeding has not been

11  commenced with respect to such Rights of Action in any Court

12  and (c) the proposed settlement of the Rights of Action

13  involves solely the payment in Cash to the Debtor of an amount

14  not less than fifty percent (50%) of the total amount in

15  controversy in connection with such Rights of Action, then the

16  Debtor shall be authorized and empowered to settle the Rights

17  of Action and execute necessary documents, including a

18  stipulation of settlement or release, without the need for

19  prior Court approval of such settlement; and

20         (ii) If the settlement of a Rights of Action at issue

21  is not one that complies with the requirements of the foregoing

22  subsection (i), then the Debtor may settle such Rights of

23  Action with the approval of the Bankruptcy Court pursuant to

24  Bankruptcy Rule 9019 after notice to those Persons on the Post-

25  Effective Date Limited Notice List and a hearing.

26      **9.5 Continued Vesting of Property of LOCSD**. On and after

27  the Effective Date, LOCSD shall remain vested with all its

28  property.

   **9.6 <u>Cancellation Of Liens</u>**. Except as otherwise specifically provided in this Plan, on the Effective Date any Lien or security interest securing any Secured Claim shall be deemed released, and the entity holding such Secured Claim shall (i) be authorized and directed to release any collateral or other property of the Debtor (including without limitation any cash collateral) held by such entity, and (ii) take such actions as may be requested by the Debtor to evidence the release of such lien, including without limitation the execution, delivery and filing or recording of such releases.

   **9.7 <u>Objections To Claims; Prosecution Of Objections To Disputed Claims</u>**.

   **9.7.1 <u>Claims Objection Deadline</u>**. Except as otherwise provided in the Plan, the deadline for objecting to Claims shall be one hundred eighty (180) days after the Effective Date or as may be further extended by order of the Bankruptcy Court; provided, however, that if the holder of the Claim is a debtor under any Chapter of the Bankruptcy Code, then the deadline shall be one hundred eighty (180) days after the Debtor obtains relief from stay or other relief which will permit the Filing of an objection to such Claim.

   **9.7.2 <u>No Distributions Pending Allowance</u>**.
   Notwithstanding any other provision of the Plan, no Cash or other property shall be distributed under the Plan on account of any Claim unless and until such Claim becomes Allowed.

   **9.7.3 <u>Authority to Prosecute Claim Objections</u>**. Unless otherwise ordered by the Bankruptcy Court after notice and a

35

1   hearing and except as expressly provided herein, from and after

2   the Effective Date the Debtor shall have the exclusive right to

3   file objections to Claims. As to objections Filed prior to the

4   Effective Date but not resolved or determined before the

5   Effective Date, the Debtor, as provided herein, shall be vested

6   on the Effective Date with all rights, interests, and authority

7   with respect to the objections.

8          **9.7.4 <u>Authority to Settle Disputed Claims</u>**. From and

9   after the Effective Date, the Debtor shall be authorized with

10  respect to those Claims that are not Allowed hereunder or by

11  Final Order of the Bankruptcy Court, pursuant to Bankruptcy

12  Rule 9019 and section 105(a) of the Bankruptcy Code, to

13  compromise and settle Disputed Claims, in accordance with the

14  following procedures, which shall constitute sufficient notice

15  in accordance with the Bankruptcy Code and the Bankruptcy Rules

16  for compromise and settlement of claims:

17          a.   If the proposed amount at which the

18  Disputed Claim to be allowed is less than or equal to $100,000,

19  the Debtor shall be authorized and empowered to settle the

20  Disputed Claim and execute necessary documents, including a

21  stipulation of settlement or release without the need to obtain

22  Court approval of such settlement; and

23          b.   If the proposed amount at which the

24  Disputed Claim is to be allowed is greater than $100,000, the

25  Debtor shall be authorized and empowered to settle such

26  Disputed Claim and execute necessary documents, including a

27  stipulation of settlement or release, only upon receipt of

28  Bankruptcy Court approval of such settlement after notice to

36

1  those Persons on the Post-Effective Date Limited Notice List

2  and a hearing.

3     **9.8 <u>Effectuating Documents And Further Transactions</u>**. Each

4  of the officials and employees of the Debtor, and subject to

5  the extent authorized by the Debtor's Governing Board, is

6  authorized to execute, deliver, file, or record such contracts,

7  instruments, releases, indentures, and other agreements or

8  documents and take such actions as may be necessary or

9  appropriate to promote, effectuate, implement and further

10  evidence the terms and provisions of this Plan.

11     **9.9 <u>Implementation Reports</u>**. On the earlier of 90 days

12  following the Confirmation Date or 30 days after Distributions

13  are first made to the holders of Allowed Claims in Class 8, the

14  Debtor shall file an implementation report with the clerk of

15  the Bankruptcy Court setting forth the status of implementation

16  of the Plan. Supplemental implementation reports shall be filed

17  every 120 days thereafter until the time that the Debtor files

18  a motion with the clerk of the Bankruptcy Court requesting the

19  entry of a final decree closing the Case. A final

20  implementation report will be included in the Debtor's motion

21  for a final decree.

**ARTICLE 10**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

24     **10.1 <u>Assumption Of Certain Executory Contracts And</u>**

25       **<u>Unexpired Leases</u>**. The Debtor assumes the executory

26  contracts and unexpired leases set forth in Exhibit 1 This Plan

27  shall constitute a motion to assume such executory contracts

28  and unexpired leases. Subject to the occurrence of the

37

1   Effective Date, entry of the Confirmation Order by the

2   Bankruptcy Court shall constitute approval of and authorization

3   for the assumption of such executory contracts and unexpired

4   leases pursuant to section 365(a) of the Bankruptcy Code and a

5   finding by the Bankruptcy Court that each assumption is in the

6   best interest of the Debtor and all parties in interest in the

7   Chapter 9 Case.

8       **10.2 <u>Cure Payments</u>**. As soon as practicable after and in no

9   event later than thirty (30) days after the Effective Date, the

10  Debtor or its agent shall pay to each party to an executory

11  contract or unexpired lease assumed pursuant to Section 10.1

12  any monetary amounts required to be paid under section 365(b)

13  of the Bankruptcy Code as a condition to assumption, unless the

14  Debtor and such party agree to different arrangements for the

15  satisfaction of obligations under section 365(b). The

16  Bankruptcy Court shall retain jurisdiction to and, after the

17  provision of notice and the opportunity for a hearing in accord

18  with the Bankruptcy Rules, shall resolve all disputes regarding

19  (a) the amount of any cure payment to be made pursuant to this

20  Section 10.2; (b) the ability of the Debtor to provide

21  "adequate assurance of future performance" within the meaning

22  of section 365 of the Bankruptcy Code under the contract or

23  lease to be assumed; and (c) any other matter pertaining to

24  such assumption.

25      **10.3 <u>Rejection of Executory Leases and Contracts Not</u>**

26      **<u>Specifically Assumed</u>**.  Any executory contracts or

27  unexpired leases that (i) are not identified on Exhibit 1

28  hereto, (ii) have not expired by their own terms on or prior to

38

1  the Effective Date, (iii) have not been assumed, assumed and

2  assigned, or rejected with the approval of the Bankruptcy Court

3  as of the Effective Date, and (iv) are not the subject of a

4  motion for rejection pending as of the Effective Date, shall be

5  deemed to have been rejected by the Debtor effective as of the

6  Confirmation Date, and this Plan shall constitute a motion to

7  reject such executory contracts and unexpired leases. Subject

8  to the occurrence of the Effective Date, entry of the

9  Confirmation Order by the Bankruptcy Court shall constitute

10 approval of and authorization for the rejection of such

11 executory contracts and unexpired leases pursuant to section

12 365(a) of the Bankruptcy Code and a finding by the Bankruptcy

13 Court that each rejection is in the best interest of the Debtor

14 and all parties in interest in the Chapter 9 Case.

15     **10.4 Bar Date For The Assertion Of Claims For Cure**

16     **Payments**. The Debtor currently does not believe that

17 any amounts are necessary to be paid in order to cure any

18 existing defaults or arrearages under the executory contracts

19 and unexpired leases to be assumed pursuant to Section 10.1.

20 Any party to such an executory contract or unexpired lease that

21 asserts that any payment or other performance is due in

22 connection with the proposed assumption of such agreement in

23 accordance with this Plan must file with the Bankruptcy Court

24 and serve upon the Debtor a written statement and accompanying

25 declaration in support thereof specifying the basis for its

26 claim within the same deadline and in the manner established

27 July 8, 2011). The failure to timely file and serve such a

28 statement shall constitute and be deemed a waiver of any and

1 all objections to the proposed assumption and any claim for

2 cure amounts of the agreement at issue.

3     **10.5 Claims Arising From Rejection**. Proofs of Claim

4 arising from the rejection of executory contracts or unexpired

5 leases pursuant to Section 10.3 must be Filed with the

6 Bankruptcy Court and served on the Debtor no later than thirty

7 (30) days after the date on which the Notice of Effective Date

8 is mailed. Any Claim for which a proof of Claim is not Filed

9 and served within such time will be forever barred and shall

10 not be enforceable against the Debtor or its assets,

11 properties, or interests in property. Unless otherwise ordered

12 by the Bankruptcy Court, all such Claims that are timely Filed

13 as provided herein shall be treated as General Unsecured Claims

14 and be classified in Class 8 Other Allowed General Unsecured

15 Claims.

16                          **ARTICLE 11**

17              **PROVISIONS GOVERNING DISTRIBUTIONS**

18     **11.1 Disbursing Agent**.  On or after the Effective Date,

19 the Debtor may retain one or more agents to perform or assist

20 it in performing the Distributions to be made pursuant to this

21 Plan, which agents may perform without bond. The Debtor may

22 provide reasonable compensation to any such agent(s) without

23 further notice or Bankruptcy Court approval.

24     **11.2 Delivery Of Distributions**. All Distributions to any

25 holder of an Allowed Claim shall be made at the address of such

26 holder as set forth in the (i) List of Creditors, unless the

27 Debtor has been notified by such holder in a writing that

28 contains an address for such holder different from the address

1  reflected in such List of Creditors for such holder; or (ii)

2  holder's proof of claim, unless the Debtor has been notified by

3  such holder in a writing that contains an address for such

4  holder different from the address set forth in the proof of

5  claim. If any holder's Distribution is returned as

6  undeliverable, no further Distributions to such holder shall be

7  made unless and until the Debtor is notified of such holder's

8  then-current address, at which time all missed Distributions

9  shall be made to such holder, without interest.

10      **11.3 <u>Distributions Of Cash</u>**. Any payment or Distribution of

11  Cash to be made by the Debtor or its agent pursuant to this

12  Plan Shall be made by check drawn on a domestic bank or by wire

13  transfer, at the sole option of the Debtor.

14      **11.4 <u>Timeliness Of Payments</u>**. Any payments or Distributions

15  to be made pursuant to this Plan shall be deemed to be timely

16  made if made within fourteen (14) days after the dates

17  specified in this Plan. Whenever any Distribution to be made

18  under this Plan shall be due on a day other than a Business

19  Day, such Distribution instead shall be made, without interest,

20  on the immediately succeeding Business Day, but shall be deemed

21  to have been made on the date due.

22      **11.5 <u>No Post Petition Accrual</u>**. Unless otherwise

23  specifically provided in this Plan or by order of the

24  Bankruptcy Court, the Debtor shall not be required to pay to

25  any holder of a Claim any interest, penalty or late charge

26  accruing with respect to such Claim on or after the Petition

27  Date. Interest shall not accrue or be paid upon any Disputed

28  Claim in respect of the period from the Petition Date to the

41

1  date a final Distribution is made thereon if and after such

2  Disputed Claim becomes an Allowed Claim. With respect to

3  oversecured Claims (see 11 U.S.C. § 506(b)), post-petition

4  interest shall accrue on such Claims at the applicable

5  statutory or contractual nondefault rate, as the case may be.

6      **11.6 Holding Undeliverable Distributions**. If any payment

7  or Distribution to any holder is returned to the Debtor or its

8  agent as undeliverable, no further payments or Distributions

9  shall be made to such holder unless and until the Debtor is

10  notified in writing of such holder's then-current address.

11  Unless and until the Debtor is so notified, such payment or

12  Distribution, as the case may be, shall be deemed to be

13  "Unclaimed Property" and shall be dealt with in accordance with

14  Sections 11.7 and 11.8.

15      **11.7 Unclaimed Property**. LOCSD shall deposit any Unclaimed

16  Distributions in the Disputed Claims Reserve to be maintained

17  by LOCSD and held in trust for the benefit of the holders of

18  Allowed Claims entitled thereto under the terms of the Plan.

19  Prior to the expiration of two years following the payment or

20  Distribution date, Unclaimed Distributions due to the holders

21  of an Allowed Claim shall be released from the Disputed Claims

22  Reserve and delivered to the holder upon presentation of proper

23  proof by such holder of its entitlement thereto. At the end of

24  two years following the payment or Distribution date, the

25  holder of Allowed Claims theretofore entitled to Unclaimed

26  Distributions shall cease to be entitled thereto, LOCSD's

27  property.

28

**11.8 <u>Time Bar to Cash Payments</u>**. Checks issued by the Debtor on account of Allowed Claims shall be null and void if no negotiated within ninety (90) days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which the original check was issued.  Any claim based on a voided check shall be made after the second anniversary date on which the voided check was mailed.  After such date, all claims based upon voided checks shall be discharged and forever barred and the Debtor shall retain all moneys on account of such checks.

**11.9 <u>Compliance With Tax Requirements</u>**.  The Debtor shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  In connection with each Distribution requiring the filing of an information return (such as Internal Revenue Service Form 1099) or withholding, the Debtor shall file such information return with the Governmental Unit.  With respect to any entity from whom a tax identification number or other tax information is required by law to avoid withholding, if the Debtor has not received that information, the Debtor may, at its sole option, withhold the amount required and distribute the balance to such entity or decline to make such Distribution until the information is received.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of a Governmental Unit within six (6) months from the date of first notification

43

1  to the holder of the need for such information, then the

2  holder's Distribution shall be treated as an undeliverable

3  Distribution in accordance with this Plan.

4      **11.10 No Distributions On Account of Disputed Claims**.

5  Notwithstanding anything in this Plan, no Distributions shall

6  be made on account of any part of any Disputed Claim until such

7  Claim becomes Allowed, and then only to the extent it is

8  Allowed.

9      **11.11 Disputed Claims Reserve**. The Debtor will withhold in

10 the Disputed Claims Reserve the Cash to be distributed to

11 holders of Disputed Allowed General Unsecured Claims in Class 8

12 under the Plan. The Debtor may request estimation for any

13 Disputed Claim that is contingent or unliquidated and the

14 Debtor will withhold the Disputed Claims Reserve based upon the

15 estimated amount of such claim as estimated by the Bankruptcy

16 Court. If the Court so orders, any Claimant whose Claim is so

17 estimated shall have recourse only to the reserve established

18 by the Bankruptcy Court for such Claimant's Disputed Claim, and

19 not to the Debtor or any Person receiving property or

20 Distributions under the Plan, even if the Allowed Claim of such

21 Claimant exceeds the maximum estimation of such Claim. THUS,

22 THE BANKRUPTCY COURT'S ESTIMATION OF A DISPUTED CLAIM WILL

23 LIMIT THE DISTRIBUTION TO BE MADE THEREON, REGARDLESS OF THE

24 AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH CLAIM. If the Debtor

25 elects not to request such an estimation from the Bankruptcy

26 Court with respect to a Disputed Claim that is contingent or

27 unliquidated, the Debtor will withhold the Disputed Claims

28 Reserve based on the Face Amount of such Claim. If practicable,

44

1  the Debtor will invest any Cash that is withheld in the

2  Disputed Claims Reserve Account in a manner that will yield a

3  reasonable net return, taking into account the safety of the

4  investment. Nothing in the Plan or Disclosure Statement will be

5  deemed to entitle the holder of a Disputed Claim to interest,

6  post-petition or otherwise, on such Claim.

7     **11.12 Distribution After Allowance**. At such time as a

8  Disputed Claim becomes an Allowed Claim, in whole or in part,

9  the Debtor or its agent shall distribute to the holder thereof

10 the Distributions, if any, to which such holder is then

11 entitled under this Plan. Such Distributions, if any, shall be

12 made as soon as practicable after the date that the order or

13 judgment of the Bankruptcy Court allowing such Disputed Claim

14 becomes a Final Order (or such other date as the Claim becomes

15 an Allowed Claim), but in no event more than thirty (30) days

16 thereafter. Unless otherwise specifically provided in this Plan

17 or Allowed by order of the Bankruptcy Court, no interest shall

18 be paid on Disputed Claims that later become Allowed Claims.

19    **11.13 No De Minimis Distributions**. Notwithstanding any

20 other provision of this Plan, no Cash payment of less than ten

21 dollars ($10.00) shall be required by the Debtor on account of

22 any Allowed Claim.

23    **11.14 Setoffs**. The Debtor may, in accordance with section

24 553 of the Bankruptcy Code and applicable non-bankruptcy law,

25 set off against any Allowed Claim and the Distributions to be

26 made pursuant to the Plan on account of such Claim (before any

27 Distribution is made on account of such Claim), the claims,

28 rights and causes of action of any nature that the Debtor may

45

1  hold against the holder of such Allowed Claim; provided,

2  however, that neither the failure to effect such a setoff nor

3  the allowance of any Claim hereunder shall constitute a waiver

4  or release by the Debtor of any such claims, rights and causes

5  of action that the Debtor may possess against such holder.

6      **11.15 <u>Estimation of Claims</u>**. The Debtor may, at any time,

7  request that the Bankruptcy Court estimate, pursuant to section

8  502(c) of the Bankruptcy Code, any Claim that is contingent or

9  unliquidated, regardless of whether any party in interest has

10 previously objected to such Claim or whether the Bankruptcy

11 Court has ruled on any such objection, and the Bankruptcy Court

12 will retain jurisdiction to estimate any Claim at any time

13 during litigation concerning any objection to any Claim,

14 including during the pendency of any appeal relating to any

15 such objection. In the event that the Bankruptcy Court

16 estimates any contingent or unliquidated Claim, the amount of

17 such estimation will constitute either the Allowed amount of

18 such Claim or a maximum limitation on such Claim, as determined

19 by the Bankruptcy Court. If the estimated amount constitutes a

20 maximum limitation on such Claim, the Debtor may elect to

21 pursue any supplemental proceedings to object to any ultimate

22 payment on such Claim. All of the aforementioned Claims

23 objection, estimation and resolution procedures are cumulative

24 and are not necessarily exclusive of one another. Claims may be

25 estimated and thereafter resolved by any mechanism permitted

26 under the Bankruptcy Code or the Plan.

27     **11.16 <u>Amendments to Claims</u>**. A Claim may be amended prior

28 to the Confirmation Date only as agreed upon by the Debtor and

46

1   the holder of such Claim, or as otherwise permitted by the

2   Bankruptcy Court, the Bankruptcy Rules or applicable law. After

3   the Confirmation Date, a Claim may not be Filed or amended

4   without the authorization of the Bankruptcy Court. Unless

5   otherwise provided herein, any new or amended Claim Filed after

6   the Confirmation Date shall be deemed disallowed in full

7   without any action by the Debtor, unless the holder of such

8   Claim has obtained prior Bankruptcy Court authorization for the

9   Filing.

10      **11.17 Allocation of Distributions**. Distributions to any

11  holder of an Allowed Claim shall be allocated first to the

12  original principal portion of any such Allowed Claim, and then,

13  to the extent the consideration exceeds such amount, to the

14  remainder of such Claim.

15      **11.19 Fractional Dollars**. Any other provision of the Plan

16  notwithstanding, payments of fractions of dollars shall not be

17  made. Whenever any payment of a fraction of a dollar under the

18  Plan would otherwise be called for, the actual payment made

19  shall reflect a rounding of such fraction to the nearest whole

20  dollar (up or down), with half dollars being rounded up.

21                          **ARTICLE 12**

22                    **EFFECT OF CONFIRMATION**

23      **12.1 Discharge Of The Debtor**. Pursuant to section 944 of

24  the Bankruptcy Code, Confirmation of the Plan discharges the

25  Debtor from all Debts of the Debtor and Claims against the

26  Debtor that arose prior to the Confirmation Date, whether or

27  not: (a) a proof of Claim based on such Debt is filed or deemed

28  filed under section 501 of the Bankruptcy Code; (b) such Claim

47

1  is allowed under section 502 of the Bankruptcy Code; or (c) the

2  holder of such Claim accepts the Plan, except for (i) any Debt

3  specifically and expressly excepted from discharge by the Plan

4  or the Confirmation Order, or (ii) any Debt owed to an entity

5  that, before the confirmation of this Plan, had neither notice

6  nor actual knowledge of the Chapter 9 Case.

7      The rights afforded in this Plan and the treatment of all

8  holders of Claims shall be in exchange for and in complete

9  satisfaction, discharge and release of all Claims of any nature

10  whatsoever arising on or before the Confirmation Date, known or

11  unknown, including any interest accrued or expenses incurred

12  thereon from and after the Petition Date, whether against the

13  Debtor or any of its properties, assets or interests in

14  property. Except as otherwise provided herein, upon the

15  Confirmation Date, all Claims against the Debtor shall be

16  deemed to be satisfied, discharged and released in full.

17      **12.2 Judgments Obtained on Discharged Debts are Void**.

18  Pursuant to sections 901 (a) and 524(a)(1) of the Bankruptcy

19  Code, the Debtor's discharge upon Confirmation of the Plan

20  under section 944(b) of the Bankruptcy Code, voids any

21  judgments at any time obtained, to the extent that such

22  judgment is a determination of liability of the Debtor with

23  respect to any Debt discharged whether or not discharge of such

24  Debt is waived.

25      **12.3 Discharge Injunction.** Except as otherwise expressly

26  provided in this Plan, all Persons who have held, hold or may

27  hold pre-Confirmation Date Claims shall be permanently

28  enjoined, from and after the Confirmation Date, from

48

1   (a) commencing or continuing in any manner any action or other

2   proceeding of any kind with respect to any such pre-

3   Confirmation Date Claim against the Debtor or its property; (b)

4   enforcing, attaching, collecting, or recovering by any manner

5   or means any judgment, award, decree or order against the

6   Debtor or its property with respect to such pre-Confirmation

7   Date Claims; (c) creating, perfecting, or enforcing any lien or

8   encumbrance of any kind against the Debtor or its property; and

9   (d) except with respect to a setoff right under section 553 of

10  the Bankruptcy Code, asserting any other right of setoff,

11  subrogation or recoupment of any kind against any obligation

12  due to the Debtor with respect to any such pre-Confirmation

13  Date Claim.

14      12.4 **Term Of Existing Injunctions Or Stays**. Unless

15  otherwise provided or subject to Section 12.3 above, all

16  injunctions or stays provided for in the Chapter 9 Case

17  pursuant to sections 105, 362, or 922 of the Bankruptcy Code,

18  or otherwise, and in existence on the Confirmation Date, shall

19  remain in full force and effect until the Effective Date.

20      12.5 **Release by Claimants**. On the Effective Date, all

21  Claimants and each entity (collectively, "Releasing Parties")

22  that has held, holds or may hold a Claim, in consideration for

23  the obligations of LOCSD under the Plan, shall have

24  conclusively, absolutely, unconditionally, irrevocably and

25  forever, releases LOCSD from any Claim or Cause of Action

26  existing as of the Effective Date arising from, based on or

27  relating to, in whole or in part, the subject matter of, or the

28  transaction or event giving rise to, the Claim of such

49

1  Releasing Party, and any act, omission, occurrence or event in

2  any manner related to such subject matter, transaction or

3  obligation. The releases provided in this Section 12.5 shall

4  also act as a permanent injunction against any Person

5  commencing or continuing any action, employment of process, or

6  act to collect, offset or recover any Claim or Cause of Action

7  satisfied or release under this Plan to the fullest extent

8  authorized or provided by the Bankruptcy Code.

9                          **ARTICLE 13**

10                    **MODIFICATION OF PLAN**

11      **13.1** The Plan may be modified upon motion of the Debtor,

12  or corrected by the Debtor prior to the Effective Date, without

13  notice and a hearing and without additional disclosure pursuant

14  to section 942 of the Code provided that, after notice to all

15  parties who have filed and served a request for special notice

16  in the Case, the Bankruptcy Court finds that such modification

17  does not materially or adversely affect any Creditor or any

18  Class of Creditors.

19      **13.2** At any time prior to Consummation of the Plan, the

20  Debtor may seek Bankruptcy Court authorization to remedy any

21  defect or omission, reconcile any inconsistencies in the Plan

22  or in the Confirmation Order, or effect such other changes,

23  modifications, or amendments as may be necessary to carry out

24  the purposes and intent of the Plan.

25                          **ARTICLE 14**

26                  **RETENTION OF JURISDICTION**

27      **14.1** Following the Effective Date, the Bankruptcy Court

28  shall retain jurisdiction consistent with section 904 of the

1  Bankruptcy Code until Consummation of the Plan or entry of a

2  final decree closing the Chapter 9 Case. The Bankruptcy Court

3  shall further retain jurisdiction for all purposes consistent

4  with Plan, and its implementation, and the Code.

5      **14.2** The Bankruptcy Court shall retain and have exclusive

6  jurisdiction over any matter consistent with section 904 of the

7  Bankruptcy Code and: (i) arising under the Bankruptcy Code and

8  relating to the Debtor; (ii) arising in or related to the

9  Chapter 9 Case or this Plan, including administration of the

10 Chapter 9 Case and implementation and Consummation of the Plan;

11 and (ii) otherwise, including but not limited to, the following

12 purposes:

13     **14.2.1** To resolve any matters related to the assumption,

14 assumption and assignment, or rejection of any executory

15 contract or unexpired lease to which the Debtor is a party or

16 with respect to which the Debtor may be liable, and to hear,

17 determine and, if necessary, liquidate, any Claims arising

18 there from;

19     **14.2.2** To enter such orders as may be necessary or

20 appropriate to implement or consummate the provisions of this

21 Plan, documents executed, entered into delivered or recorded

22 pursuant to or in connection with the Plan and all other

23 contracts, instruments, releases, and other agreements or

24 documents related to this Plan;

25     **14.2.3** To determine any and all motions, adversary

26 proceedings, applications and contested or litigated matters

27 that may be pending on the Effective Date or that, pursuant to

28 this Plan, may be instituted by the Debtor after the Effective

1  Date or that are instituted by any holder of a Claim before or

2  after the Effective Date concerning any matter based upon,

3  arising out of, or relating to the Chapter 9 Case, whether or

4  not such action initially is filed in the Bankruptcy Court or

5  any other Bankruptcy Court;

6      **14.2.4** To determine all causes of action, controversies,

7  disputes or conflicts involving the right to participate in any

8  Distribution under the Plan, whether or not subject to an

9  action pending as of the Effective Date, between the Debtor and

10 any other party;

11     **14.2.5** To hear and determine any objections to Claims or

12 to proofs of Claim filed, both before and after the Effective

13 Date, including any objections to the classification of any

14 Claim, and to allow, disallow, determine, liquidate, classify,

15 estimate or establish the priority of or secured or unsecured

16 status of any Claim, in whole or in part;

17     **14.2.6** To enter and implement such orders as may be

18 appropriate in the event the Confirmation Order is for any

19 reason stayed, revoked, modified, reversed or vacated;

20     **14.2.7** To issue such orders in aid of execution of this

21 Plan, to the extent authorized by sections 945 or 1142(b) of

22 the Bankruptcy Code;

23     **14.2.8** To consider any modifications or amendment of this

24 Plan after Confirmation pursuant to the Bankruptcy Code or the

25 Bankruptcy Rules;

26     **14.2.9** To cure any defect or omission, or reconcile any

27 inconsistency in the Plan, any order of the Bankruptcy Court,

28 including the Confirmation Order;

**14.2.10** To hear and determine, as appropriate, the reasonableness of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

**14.2.11** To hear and determine all disputes or controversies arising in connection with or relating to this Plan or the Confirmation Order or the interpretation, implementation, or enforcement of this Plan or the Confirmation Order or the extent of any Person's obligations incurred in connection with or released under this Plan or the Confirmation Order;

**14.2.12** To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

**14.2.13** To determine any other matters that may arise in connection with or that are related to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document related to this Plan or the Disclosure Statement (including the Plan Documents);

**14.2.14** To hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code;

**14.2.15** To hear and determine any Rights of Action;

**14.2.16** To hear and determine requests for the granting of extensions of any deadline set forth in the Plan; and

**14.2.17** To enter a final decree closing the Chapter 9 Case.

53

1    **14.3** If the Bankruptcy Court abstains from exercising, or

2    declines to exercise, jurisdiction or is otherwise without

3    jurisdiction over any matter arising out of the Chapter 9 Case,

4    including the matters set forth in this Article, this Article

5    shall have no effect upon and shall not control, prohibit, or

6    limit the exercise of jurisdiction by any other court having

7    competent jurisdiction with respect to such matter.

8                            **ARTICLE 15**

9                         **CONDITIONS PRECEDENT**

10    **15.1 <u>Condition Precedent To Confirmation</u>**. Entry of the

11    Confirmation Order in form and substance satisfactory to the

12    Debtor in its sole discretion shall be a condition precedent to

13    confirmation of this Plan.

14    **15.2 <u>Conditions Precedent To Effective Date</u>**. The

15    "effective date of the plan," as used in section 1129 of the

16    Bankruptcy Code, shall not occur, and this Plan shall be of no

17    force and effect until the Effective Date. The occurrence of

18    the Effective Date is subject to the satisfaction of the

19    following condition precedents unless waived by the Debtor, in

20    whole or in part in the exercise of its sole discretion (which

21    waiver shall not require any notice or authorization from the

22    Bankruptcy Court, other than the filing of a notice of such

23    waiver with the Bankruptcy Court):

24    **15.2.1 <u>Confirmation Order</u>**. The Confirmation Order shall be

25    a Final Order and be in full force and effect; and

26    **15.2.2 <u>Plan Documents</u>**. Plan Documents shall be in a form

27    and substance acceptable to the Debtor in its sole discretion

28    and shall have been duly and validly executed and delivered, or

54

1  deemed executed by the parties thereto, and all conditions to

2  their effectiveness shall have been satisfied or waived.

3       **15.2.4 <u>Draft Water Conservation Plan</u>**.  LOCSD shall

4  have presented a draft water conservation plan to the Regional

5  Water Quality Control Board.

6       **15.2.5 <u>Board and Other Approvals</u>.**  The Board of

7  Supervisors of the County, the Board of Directors of LOCSD and

8  LAFCO shall have approved the return of the Solid Waste

9  Franchise Agreement to the County.

10      **15.2.6 <u>Effect Of Failure Of Conditions</u>**. In the event that

11  the conditions to effectiveness of this Plan have not been

12  timely satisfied or waived, and upon notification submitted by

13  the Debtor to the Bankruptcy Court, (a) the Confirmation Order

14  shall be vacated, (b) no Distributions under this Plan shall be

15  made, (c) the Debtor and all holders of Claims shall be

16  restored to the status quo ante as of the day immediately

17  preceding the Confirmation Date as though the Confirmation Date

18  never occurred, and (d) all of the Debtor's obligations with

19  respect to the Claims shall remain unchanged and nothing

20  contained herein shall be deemed to constitute a waiver or

21  release of any claims by or against the Debtor or any other

22  entity or to prejudice in any manner the rights of the Debtor

23  or any entity in any further proceedings involving the Debtor.

24                    **ARTICLE 16**

25                **MISCELLANEOUS PROVISIONS**

26      **16.1 <u>Severability</u>**. If, prior to the Confirmation Date, any

27  term or provision of this Plan is held by the Bankruptcy Court

28  to be invalid, void or unenforceable, the Bankruptcy Court,

55

1  with the consent of the Debtor shall have the power to alter

2  and interpret such term or provision to make it valid or

3  enforceable to the maximum extent practicable, consistent with

4  the original purpose of the term or provision held to be

5  invalid, void or unenforceable, and such term or provision

6  shall then be applicable as altered or interpreted.

7  Notwithstanding any such holding, alteration or interpretation,

8  the remainder of the terms and provisions of this Plan shall

9  remain in full force and effect and shall in no way be

10  affected, impaired or invalidated by such holding, alteration

11  or interpretation. The Confirmation Order shall constitute a

12  judicial determination and shall provide that each term and

13  provision of this Plan, as it may have been altered or

14  interpreted in accordance with the foregoing, is valid and

15  enforceable pursuant to its terms.

16      **16.2 Interpretation**. To the extent that the terms of the

17  Plan are inconsistent with the terms of any agreement or

18  instrument concerning any Claim, or any other matter, the terms

19  of the Plan shall control.

20      **16.3 Successors and Assigns**. The rights, benefits and

21  obligations of any Person named or referred to in this Plan

22  shall be binding upon and inure to the benefit of any heir.

23  executor, administrator, successor, or assignee of such Person.

24      **16.4 Governing Law**. Except to the extent that the

25  Bankruptcy Code or other federal law is applicable, or to the

26  extent that an Exhibit hereto or Plan Document provides

27  otherwise, the rights, duties and obligations arising under

28  this Plan shall be governed by, and construed and enforced in

1   accordance with the laws of the State of California, without

2   giving effect to principles of conflicts of laws.

3       **16.5 <u>Headings</u>**. Headings are used in the Plan for

4   convenience and reference only, and shall not constitute a part

5   of the Plan for any other purpose.

6       **16.6 <u>Saturday, Sunday or Legal Holiday</u>**. If any payment or

7   act under the Plan is required to be made or performed on a

8   date that is not a Business Day, then the making of such

9   payment or the performance of such act may be completed on the

10  next succeeding Business Day, but shall be deemed to have been

11  completed as of the required date.

12      **16.7 <u>Notice Of Effective Date</u>**. On or before ten (10)

13  Business Days after occurrence of the Effective Date, LOCSD or

14  its agent shall mail or cause to be mailed to all holders of

15  Claims a Notice that informs such holders of (a) entry of the

16  Confirmation Order; (b) the occurrence of the Effective Date;

17  (c) the rejection of LOCSD's executory contracts and unexpired

18  leases pursuant to this Plan, as well as the deadline for the

19  filing of Claims arising from such rejection; (d) the deadline

20  established under this Plan for the filing of Administrative

21  Claims; (e) the procedures for changing an address of record

22  pursuant to Section 11.2; and (f) such other matters as LOCSD

23  deems to be appropriate.

24

25  Signatures on next page

26

27

28

1  DATED:    April 20, 2011.

2

3                                      LOS OSOS COMMUNITY SERVICES DISTRICT

4

5                                      By:_____

6                                          MARSHALL OCHYLSKI, President of
                                           the Board of Directors of the Los
7                                          Osos Community Services District

8

9
   DATED:    April 20, 2011.
10

11                                         GRIFFITH & THORNBURGH, LLP

12

13                                     By _____

14                                         JOSEPH M. SHOLDER, Attorneys
                                           For the Los Osos Community
15                                         Services District

16

17

18

19

20

21

22

23

24

25

26

27

28

58

## LOCSD LIST OF EXECUTORY CONTRACTS

| Party | Purpose |
|-------|---------|
| Cal Fire | Contract for Fire Protection Services |
| Mission Country Disposal | Solid Waste Franchise Agreement |
| George Contento | Office Lease |
| Labor Agreements | |
| San Luis Obispo County Employees Association -San Luis Obispo County | Memorandum of Understanding |
| Wallace Group | Laboratory Services (Water and wastewater) District Engineering |
| Public Employee Retirement System (CalPers) | Employee Retirement Benefits |
| Insurance (Medical/Liability) -PERS | Medical Insurance |
| AGP Video | Video/audio recording of board meetings |
| South Bay Community Center | Room for Board Meetings |
| Stanley Security Solutions | Alarm Service for Main Office and other facilities |

*NEW file
Zones of Benefit*

## CSA #9, ZONES OF BENEFIT

Services in Los Osos are provided primarily through County Service Area #9 (CSA #9). Within the boundaries of CSA #9, some services are provided to the entire district and others to smaller specific zones of benefit. CSA #9 zones of benefit are shown in Figure 3-2, below. Additional water service is provided by California Cities Water Company and S & T Mutual Water Company. Service areas for water supply are shown in Figure 3-4.



Zones A, B, D, E, F, G, H

Zone I

Zone I

Services Provided by CSA #9

Zone A  Water
Zone B  Fire Protection
Zone D  Drainage, Street Lighting
Zone E  Drainage, Street Lighting,
        Septic Tank Maintenance
Zone F  Drainage, Street Lighting,
        Septic Tank Maintenance,
        Open Space Maintenance
Zone G  Drainage
Zone H  Road Construction
Zone I  Fire Protection,
        Emergency Medical Services

Figure 3-2    CSA #9, Zones of Benefit
              Los Osos Area

FACILITIES, SERVICES, RESOURCES              3-8              ESTERO AREA PLAN UPDATE
PUBLIC HEARING DRAFT                                          NOVEMBER 1998





EXHIBIT B
page 147



February 24, 2011

**President**
Marshall E. Ochylski

**Vice President**
Maria M. Kelly

**Directors**
Craig V. Baltimore
Leonard Moothart
David Vogel

**General Manager**
Dan Gilmore

**District Accountant**
Amparo Haber

**Administrative Supervisor**
Sandi L. Woods

**Utilities Supervisor**
Margaret Falkner

**Fire Chief**
Robert Lewin

**Battalion Chief**
Phill Veneris

**Mailing Address:**
P.O. Box 6064
Los Osos, CA 93412

**Offices:**
2122 9th Street
Suite 102
Los Osos, CA 93402

**Phone** 805/528-9370
**FAX**    805/528-9377

TO:        LOCSD Board of Directors

FROM:    Ampy Haber, District Accountant

SUBJECT: **Agenda Item 5-D – 03-03-11 Board Meeting**
Receive Financial Statements for Period ending January 31, 2010, Cash and Reserves Schedules as of February 28, 2011

**RECOMMENDATION**
Staff recommends that your Board receive and file the following reports:
1) Statement of Operations for the month ending January 31, 2010;
2) Cash Schedules as of February 28, 2011
3) Schedule of Reserves/Designations as of February 28, 2011

**DISCUSSION**
Funds status
A detailed analysis of the funds was done to project their budget status to the year-end. The conclusions arrived at are summarized in the following page.

It would appear that both Vista de Oro and Bayridge are projected to end the year with very modest appropriations savings. The projected shortage in Water Sales may only be about $50,000 to $65,000 which is fully offset by various savings in appropriations accounts. It would appear therefore that all its budgeted increases to Reserves will be fully funded.

Cash and Investments
The rate of returns on the LAIF investments for the quarter December 31, 2010 which posted in January 2011 was 0.51%. It posted an increase of .05% over the previous quarter.

The Business Investment Sweep (BIS) account with the local bank has dwindled to 0.41 % as of the last month. We are now planning into moving these into their Money Market fund in March 2011. This is guaranteed to exceed LAIF rate by 0.15%. Withdrawals are restricted to six withdrawals per month which still allows us a lot of flexibility in case the reorganization plan will require us to withdraw funds at any time.

**FINANCIAL IMPACT**

This item has no financial impact.

## PROJECTING TO JUNE 30, 2011

### 100- Admin

The Admin Fund is expected to end the year with a savings of $ 25,000. The major accounts that are behind the savings are listed below.

|  |  | Projected Savings FY10/11 |  |
|---|---|---|---|
|  | Salaries and Fringes | 9,500 | 1 |
| 7320 | Professional & Consulting Services | 2,000 | 2 |
| 7322 | Director's Compensation | 5,000 | 3 |
| 7325 | Insurance | 3,000 | 4 |
| 7350 | Rent meetings | 2,000 |  |
| 8550 | Mileage Reimbursements | 2,500 |  |
| 8610 | Electric ( for office ) | 900 |  |
|  |  | 24,900 |  |

1. Combination of various factors like unpaid leave and reduced retirement rate
2. In prior years, we had hired the District engineer for some projects. There has not been one for the Admin fund this year.
3. The budget was still set at a high level when there were two meetings a month.
4. the insurance premium was lower due to favorable experience factor.

### 200- Bayridge

This fund is projected to end the year with a modest savings in operating accounts of $1,900. This is mostly due to savings in Salary and Fringe accounts of $2,600. It has a deficit in line item 8645- Septage Handling of $1,300 after allowing for one more pumping before the end of the year. The last pumping in Sept 2010 cost $5,700.

### 400- Vista de Oro

This fund appears to end the year with a savings of $1,500. This is coming from modest savings in a number of accounts that are shown below.

|  |  | Projected Savings FY10/11 |  |
|---|---|---|---|
| 7320 | Professional and Consulting Services | 670 | 1 |
| 8645 | Septage Handling | 700 | 2 |
| 6430 | Maintenance & Repairs | 130 | 3 |

1. The billing for tax assessments by Wallace was lower than anticipated.

2. One more pumping needs to be done before year-end. This will cost about $1,500, much less than normal due to the emergency pumping done in December when there was a pump failure.
3. Maintenance has used up manpower resources but not parts and supplies.

Projections- Page 1

EXHIBIT C - page 150

## PROJECTING TO JUNE 30, 2011

### 500-Water

There has been a concern on the trend of Water Sales for 2010/11 even after increased rates were adopted. In the prior report to the board, it was identified that the shortage may be about $100,000. However, current analysis puts this amount to be about $55,000 to $65,000.

There are many accounts that appear to end the year with savings in appropriation that can backfill this amount and still allow full funding of budgeted increases in Reserves for a total of $142,420. The most material accounts are identified below.

|  |  | Projected Savings FY10/11 |  |
|---|---|---|---|
|  | Salaries, Wages & Fringes | 22,479 | 1 |
| 7299 | Contract Services-Maintenance | 10,000 | 2 |
| 7320 | Professional & Consulting Services | 20,000 | 3 |
| 7348 | Water Conservation Program | 24,400 | 4 |
|  | Other various operating accounts | 46,774 |  |
|  | Total Projected savings in Operating accts | **123,653** |  |
|  | Projected shortage in Water Sales | (55,000) |  |
|  | **Net projected savings to fall into FBA**<br>(FBA=Fund Balance Available) | **68,653** |  |

1. This is after deducting Salaries & Fringes $19,500 to hire a new Water Operator 1 in March 2011 to fill in for an employee on Workers Comp leave. The savings come from not paying the employee on workers comp leave. It should be noted however that SDRMA is increasing premiums for next year by at least $10,000 for experience modification factor. This will be charged mostly to Water.

2. This was planned to have a pool of qualified contractors to be called in in the event of an emergency instead of paying overtime to field operators. A major water purveyor in the area has commented that this has proven very cost efficient to them. No decision has been done to pursue this option.

3. This amount is after leaving $20,000 for estimated engineering costs for the 10th Street tank. This also leaves $9,500 for other consulting services for unforeseen circumstances. Note however that the $20,000 will be submitted to the Board for transfer to Capital Outlay once the tank project starts.

4. Reflects deduction for salary and fringe of $4,600 for a contracted employee which are recorded in Salary accounts in the books. This account was budgeted for $30,000.

### 301- Fire

The Fire fund is projected to end the year with at least $89,000 in its operating accounts. This comes from almost all account groups the biggest of which is $40,000 from Salaries and Fringes. This is due to the reserves positions not filled in for the whole year after vacancies occur.

Unused appropriations in Capital Asset accounts will be submitted to the Board for fund reservations so they will forward to the next year. The biggest of these is the window project. As of January 31, 2011, Capital accounts have a budget balance of $50,400.

### 650- Solid Waste

This fund is projected to end the year with about $1300 in its operating accounts other than in Salaries and Fringes. However, it appears that the labor billings from other funds like Water and Fire employees for the Chipping Day event has not been budgeted and will therefore use up these savings in the operating accounts. At any rate, over-all, this fund should end the year just breaking even.

### 800- Drainage

The Drainage Fund is projected to end the year with savings of $16,000 in its operating accounts. This is coming mostly from Salaries and Fringes in the amount of $13,000. This includes also savings of $2,600 in 6430-Maintenance & Repairs and $1,000 in Computer -Labor & Support. Charging for this last one was changed in that this is part of the Admin cost allocation now.

EXHIBIT C - page 151

## TOTAL CASH AS OF 02/28/11 AND AS RECONCILED TO THE RESERVES SCHEDULE
### (see note b as to actual cut-off)

| Account Code | Account Title | Operating Cash Acct 1012 ** | Cash In Reserves & Restricted Funds | In Trust & Deferred Revenues | Total Cash |
|---|---|---|---|---|---|
| **100** | **100-Admin** | | | | |
| 1012 | Operating Cash-General checking acct | (1,254,380) | | | (1,254,380) |
| 0328 | Low Income Savings | | | 1,155 (trust) | 1,155 |
| **Total Cash** | **100-Admin** | (1,254,380) | 0 | 1,155 | (1,253,225) |
| **200** | **200-Bayridge** | | | | |
| 1012 | Operating Cash-General checking acct | 29,977 | | | 29,977 |
| **301** | **301 - Fire** | | | | |
| 1012 | Operating Cash-General checking acct | 764,760 | | | 764,760 |
| 0332 | BIS: Cash for Reserve Accounts | | 246,115 | | 246,115 |
| 1011 | CASH-LAIF-RESERVE FUNDS | | 336,713 | | 336,713 |
| 1056 | FIRE PUBLIC FAC. - Coast Natl Bank CD | | 50,055 | | 50,055 |
| 1057 | FIRE SINKING FUND | | 190,748 | | 190,748 |
| **Total Cash** | **301 - Fire** | 764,760 | 823,631 | 0 | 1,588,391 |
| **400** | **400-Vista de Oro** | | | | |
| 1012 | Operating Cash-General checking acct | 33,251 | | | 33,251 |
| **500** | **500 - Water** | | | | |
| 1012 | Operating Cash-General checking acct | 431,921 | | | 431,921 |
| 1000 | Petty Cash | | 0 | | 0 |
| 0326 | BIS:Specific Revenue Designated | | 19,910 | | 19,910 |
| 0327 | BIS:Funds Restricted for Long-term Debt | | 280,983 | | 280,983 |
| 0331 | BIS: WATER QUALITY TRUST | | 125,865 | | 125,865 |
| 0332 | BIS: Cash for Reserve Accounts | | 76,437 | | 76,437 |
| 1011 | CASH-LAIF-RESERVE FUNDS | | 218,259 | | 218,259 |
| **Total Cash** | **500 - Water** | 431,921 | 721,454 | 0 | 1,153,376 |
| **600** | **600 - Waste Water Project** | | | | |
| 1012 | Operating Cash-General checking acct | 155,328 | | | 155,328 |
| 0324 | BIS:Prepaid Assessments (old accts=1024&1005 | | | 91,132 (Deferred Revenue) | 91,132 |
| 0330 | BIS:Wastewater SRF Funds | | 1,681,822 | | 1,681,822 |
| 0991 | Barnard Constr. Escrow Acct. | | 0 | | 0 |
| 1077 & 1078 | US Bank - WW Bond Reserve/Redemption Fund | | 1,306,839 | | 1,306,839 |
| **Total Cash Date** | **600 - Waste Water Project** | 155,328 | 2,988,662 | 91,132 | 3,235,121 |

EXHIBIT C - page 152

| Account Code | Account Title | Operating Cash Acct 1012 ** | Cash In Reserves & Restricted Funds | In Trust & Deferred Revenues | Total Cash |
|---|---|---|---|---|---|
| 650 | 650 - Solid Waste | | | | |
| 1012 | Operating Cash-General checking acct | 383,711 | | | 383,711 |
| 0332 | BIS: Cash for Reserve Accounts | | 25,828 | | 25,828 |
| 1011 | CASH-LAIF-RESERVE FUNDS | | 92,739 | | 92,739 |
| 3111 | General Contingency Reserve | | | | 0 |
| Total Cash | 650 - Solid Waste | 383,711 | 118,567 | 0 | 502,278 |
| | | | | | |
| 800 | 800 - Drainage | | | | |
| 1012 | Operating Cash-General checking acct | 369,008 | | | 369,008 |
| 0332 | BIS: Cash for Reserve Accounts | | 57,582 | | 57,582 |
| 1011 | CASH-LAIF-RESERVE FUNDS | | 19,786 | | 19,786 |
| Total Cash | 800 - Drainage | 369,008 | 77,368 | 0 | 446,376 |
| | | | | | |
| 900 | 900 - Parks & Recreation | | | | |
| 1012 | Operating Cash-General checking acct | 209 | | | 209 |
| 1011 | CASH-LAIF-RESERVE FUNDS | | 301,242 | | 301,242 |
| 3090 | Restricted Pool Funds | | | | 0 |
| Total Cash | 900 - Parks & Recreation | 209 | 301,242 | 0 | 301,452 |
| | **TOTAL CASH AT 02/28/11 (see note A )** | 913,785 | 5,030,924 | 92,287 | 6,036,997 |
| | | | | | |
| | **IMPREST CASH** | | | | |
| 100-Admin | Petty Cash | | | | 300 |
| 100-Admin | Debit Card Accounts | | | | 12,000 |
| 301-Fire | Petty Cash | | | | 400 |
| 500-Water | Change Fund | | | | 200 |
| | | | | | 12,900 |

100- Low Income Savings not In Reserve Schedule → 5,123,211

Not District Funds (1,155)

Schedule 5,122,055

A. To report the most current Cash balances, some cash receipts or payments for a few days before the month-end are not reflected in the report as follows:

(Cash receipts and disbursements were cut off to 02/24/11.)

** Operating Cash means they are available for Operations & to fund Budgeted Reserves not yet set up; due to the issue of the Admin deficit, closure of Fund Balance Available to Reserves was done only once, for 06/30/09 balances.

Date:

EXHIBIT C - page 153

## RESERVE & TRUST BALANCES WITH THEIR ASSOCIATED CASH ACCOUNTS
### AS OF FEBRUARY 28, 2011

| Account Code | Account Title | Cash accounts | Reserve accounts |
|---|---|---:|---:|
| 301 | 301 - Fire | | |
| 0332 | BIS: Cash for Reserve Accounts | 246,115 | |
| 1011 | CASH-LAIF-RESERVE FUNDS | 336,713 | |
| 1056 | FIRE PUBLIC FAC. - Coast Natl Bank CD | 50,055 | |
| 1057 | FIRE SINKING FUND | 190,748 | |
| 3110 | Reserve for Replacement- Fire Vehicle & Equip | | 489,205 |
| 3111 | General Contingency Reserve | | 17,519 |
| 3115 | Designation- Public Facilities Fees | | 50,055 |
| 3160 | Capital Outlay Reserve | | 266,852 |
| Balance 301 | 301 - Fire | 823,631 | 823,631 |
| | | | |
| 500 | 500 - Water | | |
| 0326 | BIS:Specific Revenue  Designated | 19,910 | |
| 0327 | BIS:Funds Restricted for Long-term Debt | 280,983 | |
| 0331 | BIS: WATER QUALITY TRUST | 125,865 | |
| 0332 | BIS: Cash for Reserve Accounts | 76,437 | |
| 1011 | CASH-LAIF-RESERVE FUNDS | 218,259 | |
| 3050 | Water Quality Trust Reserve (0331) | | 125,865 |
| 3109 | Designation-Proceeds for Asset Replacement | | 19,910 |
| 3111 | General Contingency Reserve | | 47,188 |
| 3160 | Capital Outlay Reserve | | 215,436 |
| 3162 | Reserve for I-Bank Loan | | 280,983 |
| 3163 | Water Stabilization Reserve | | 32,073 |
| Balance 500 | 500 - Water | 721,454 | 721,454 |
| | | | |
| 600 | 600 - Waste Water Project | | |
| 0324 | BIS:Prepaid Assessments (old accts=1024&1005 | 91,132 | |
| 0330 | BIS:Wastewater SRF Funds | 1,681,822 | |
| 0991 | Barnard Constr. Escrow Acct. | 0 | |
| 1077 & 1078 | US Bank - WW Bond Reserve/Redemption Fund | 1,306,839 | |
| 2510 | Retention-Prin & Interest (Prin=$85,075) | | 0 |
| 2512 | Trust Liability- Prepaid 02 Bond Assessments | | 91,132 |
| 3091 | Restricted for 02 Bond Debt Service | | 1,306,839 |
| 3191 | Restricted Funds-600 Acct 0330 | | 1,681,822 |
| Balance 600 | 600 - Waste Water Project | 3,079,793 | 3,079,793 |
| | | | |
| 650 | 650 - Solid Waste | | |
| 0332 | BIS: Cash for Reserve Accounts | 25,828 | |
| 1011 | CASH-LAIF-RESERVE FUNDS | 92,739 | |
| 3111 | General Contingency Reserve | | 118,567 |
| Balance 650 | 650 - Solid Waste | 118,567 | 118,567 |

Date:

EXHIBIT C - page 154

| Account Code | Account Title | Cash accounts | Reserve accounts |
|---|---|---|---|
| **800** | **800 - Drainage** | | |
| 0332 | BIS: Cash for Reserve Accounts | 57,582 | |
| 1011 | CASH-LAIF-RESERVE FUNDS | 19,786 | |
| 3111 | General Contingency Reserve | | 12,037 |
| 3159 | Capital Outlay Reserve-Pump | | 40,274 |
| 3160 | Capital Outlay Reserve | | 25,057 |
| **Balance 800** | **800 - Drainage** | 77,368 | 77,368 |
| | | | |
| **900** | **900 - Parks & Recreation** | | |
| 1011 | CASH-LAIF-RESERVE FUNDS | 301,242 | |
| 3090 | Restricted Pool Funds | | 301,242 |
| **Balance 900** | **900 - Parks & Recreation** | 301,242 | 301,242 |
| | **TOTAL RESERVE/TRUST ACCOUNTS AS OF JANUARY 31, 2011** | 5,122,055 | 5,122,055 |

The following Reserves were budgeted in FY 2010/11 but will be set up by year-end when it is certain the results of operations for the year show that there is full funding available at that time:

| | | |
|---|---|---|
| 301-Fire | Increase to Vehicle Replacement Reserve | 100,821 |
| 301-Fire | Increase to General Contingency Reserve | 10,000 |
| | | **110,821** |
| 500-Water | Increase to Capital Outlay Reserve | 60,000 |
| 500-Water | Increase to General Contingency Reserve | 50,420 |
| 500-Water | Increase to Water Rate Stabilization Reserve | 32,000 |
| | | **142,420** |
| 600-Waste Water | Increase to Bond Reserve ( Payback is $ 25,000 & estimated income is $ 5,000) | **30,000** |
| 650-Solid Waste | Increase to General Contingency Reserve | **43,758** |
| 800- Drainage | Increase to General Contingency Reserve | 5,000 |
| 800- Drainage | Increase to Capital Outlay Reserve | 3,630 |
| | | **8,630** |
| | **TOTAL TO BE SET UP** | **335,629** |

Date:

EXHIBIT C - page 155

# Funds Maintained by the District and Their Specific Functions

**Fund 100 – Administration**
The Administrative Fund provides centralized inter-fund services to all the other funds of the District such as management, accounting, payroll, insurance management and financial system. Expenditures that are not for services but could not be attributed to specific functions of the other funds like some legal expenses are recorded in this fund and become a component of costs for allocation to other funds.

**Fund 200 – Bayridge**
Bayridge is a subdivision in Los Osos that has a dedicated residential community septic system. The fund provides septic management, streetlight, and open space management.

**Fund 301 – Fire and Emergency Services**
Fire and Emergency Services are provided through a contract with Cal Fire for the entire community. Reserve Fire Fighters and administrative operational costs are paid by the District outside the Cal Fire contract.

**Fund 400 – Vista de Oro**
Vista de Oro is a subdivision in Los Osos that has a dedicated residential community septic system. The fund provides septic management, streetlight, and open space management.

**Fund 500 – Water**
The Water Utility Department is responsible for the operation and maintenance of five groundwater supply wells providing treatment, monitoring and distribution services to approximately 2,750 connections, through a network that consists of 25 miles of pipelines and includes 162 fire hydrants and 558 valves, 3 tanks and one pump station. These services not only assure delivery of pure, wholesome and potable drinking water, but also water for fire flow protection in the community of Los Osos and Baywood Park.

**Fund 600 – Capital Projects**
This fund was used to account for the construction of a sewage treatment plant which was stopped. Under special legislation AB2701, the project was transferred to the County of San Luis Obispo which has yet to formally accept the project. This fund currently functions to service the debt associated with the aborted project and to account for expenses related to unpaid claims charged for the District's aborted project.

**Fund 650 – Solid Waste**
Solid Waste provides trash cleanup and recycling services to the community of Los Osos. Actual trash and recycling services are provided by Mission Country Disposal and LOCSD receives a Franchise Fee. LOCSD provides additional recycling opportunities to the community through Chipping and Clean-up Days.

**Fund 700 – Cabrillo**
Cabrillo Estates is a subdivision in Los Osos. This fund provides street lighting using special assessments paid for by the homeowners within its boundary. In January 2010, this service has been discontinued due to the deficiency of the assessments to cover utility costs. No assessments are planned to be collected in Fiscal Year 2010/11. Drainage costs and work on the drainage basin situated in the subdivision are done by and charged to the Drainage Fund (800).

**Fund 800 – Drainage**
This fund provides drainage services for the whole community. It maintains five pump station sites, monitors and mitigate as necessary the impact of storm run offs, clears channels of obstructions and manages five drainage basins.

**Fund 900 – Park and Recreation**
This fund's current function is to account for assessments collected in prior years for a community swimming pool and account for the investments of these funds. Its long term function is to provide recreation opportunities for the community of Los Osos.

EXHIBIT C - page 156

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Summary - Unposted Transactions Included In Report

100 - Administration

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| Gross Revenues | | | | | | |
| Interest and Investment Income | 0 | 0 | 0 | 0 | 0 | 97 |
| Other Revenues | 5 | 9 | 0 | 9 | 0 | 0 |
| Total Gross Revenues | 5 | 9 | 0 | 9 | 0 | 97 |
| Total Revenues | 5 | 9 | 0 | 9 | 0 | 97 |
| **Expenditures & Other Uses** | | | | | | |
| Operating Expenditures | | | | | | |
| Salaries and Wages | 22,854 | 168,557 | 300,883 | 132,326 | 44 | 114,630 |
| Fringe Benefits | 8,359 | 50,172 | 105,277 | 55,105 | 52 | 30,980 |
| Communications | 289 | 2,193 | 5,500 | 3,307 | 60 | 2,188 |
| Computer Support | 4,599 | 20,758 | 29,187 | 8,429 | 29 | 11,727 |
| Employee Hiring & Medical Costs | 490 | 490 | 0 | (490) | 0 | 150 |
| Fees | 0 | 18,391 | 16,500 | (1,891) | (11) | 16,383 |
| Maint-Equip,Veh,Grounds,Structr | 0 | 0 | 300 | 300 | 100 | 0 |
| Support Operations | 21,403 | 168,270 | 274,440 | 106,170 | 39 | 180,422 |
| Travel,Training,Educ and Utilities | 696 | 7,714 | 18,200 | 10,486 | 58 | 7,710 |
| Administrative Costs Allocation | (58,503) | (409,521) | (702,035) | (292,514) | 42 | (365,491) |
| Total Operating Expenditures | 187 | 27,023 | 48,252 | 21,229 | 45 | (1,300) |
| Capital Outlay | | | | | | |
| Equipment, Fixtures & Systems | 0 | 0 | 20,000 | 20,000 | 100 | 0 |
| Total Capital Outlay | 0 | 0 | 20,000 | 20,000 | 100 | 0 |
| Inter-Fund Transfers | (3,550) | (24,850) | (17,600) | 7,250 | (41) | 206,059 |
| Reserves and Designations | 0 | 0 | 0 | 0 | 0 | (205,891) |
| Beginning Equities Used for Funding | 0 | (50,652) | (50,652) | (0) | 0 | 0 |
| Total Expenditures & Other Uses | (3,363) | (48,479) | (50,652) | 48,479 | ...5,033,923,328 | (1,132) |
| Net Fund Change | 3,367 | 48,488 | 0 | 48,488 | 0 | 1,229 |

EXHIBIT C - page 157

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS By Fund - Summary - Unposted Transactions Included In Report

200 - Bayridge

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| **Gross Revenues** | | | | | | |
| Property Taxes | 2,083 | 3,760 | 6,550 | (2,790) | (43) | 3,672 |
| Service Charges and Fees | 7,816 | 16,657 | 29,500 | (12,844) | (44) | 16,352 |
| Interest and Investment Income | 0 | 21 | 0 | 21 | 0 | 90 |
| Total Gross Revenues | 9,898 | 20,438 | 36,050 | (15,612) | (43) | 20,114 |
| Total Revenues | 9,898 | 20,438 | 36,050 | (15,612) | (43) | 20,114 |
| **Expenditures & Other Uses** | | | | | | |
| **Operating Expenditures** | | | | | | |
| Salaries and Wages | 257 | 2,368 | 6,300 | 3,932 | 62 | 2,874 |
| Fringe Benefits | 92 | 838 | 2,205 | 1,367 | 62 | 964 |
| Communications | 27 | 106 | 150 | 44 | 29 | 81 |
| Fees | 0 | 866 | 1,000 | 134 | 13 | 866 |
| Maint-Equip,Veh,Grounds,Struetr | 0 | 3,034 | 4,300 | 1,266 | 29 | 3,115 |
| Support Operations | 71 | 737 | 1,600 | 863 | 54 | 2,228 |
| Travel,Training,Educ and Utilities | 341 | 9,360 | 16,300 | 6,940 | 43 | 11,625 |
| Administrative Costs Allocation | 829 | 5,803 | 9,952 | 4,149 | 42 | 5,425 |
| Total Operating Expenditures | 1,616 | 23,113 | 41,807 | 18,694 | 45 | 27,178 |
| **Capital Outlay** | | | | | | |
| Building & Structures & Improvements | 0 | 0 | 0 | 0 | 0 | 10,947 |
| Total Capital Outlay | 0 | 0 | 0 | 0 | 0 | 10,947 |
| Inter-Fund Transfers | 0 | 0 | 0 | 0 | 0 | (30,229) |
| Reserves and Designations | 0 | 0 | 0 | 0 | 0 | 18,319 |
| Beginning Equities Used for Funding | 0 | (5,757) | (5,757) | 0 | 0 | (4,018) |
| Total Expenditures & Other Uses | 1,616 | 17,356 | 36,050 | 18,694 | 52 | 22,197 |
| Net Fund Change | 8,282 | 3,082 | 0 | 3,082 | 0 | (2,083) |

EXHIBIT C - page 158

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Summary - Unposted Transactions Included In Report

301 - Fire

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| **Gross Revenues** | | | | | | |
| Property Taxes | 549,208 | 886,802 | 1,582,500 | (695,698) | (44) | 888,287 |
| Special Taxes and Assessments | 153,941 | 263,039 | 469,209 | (206,170) | (44) | 261,263 |
| Franchise and Contract Revenues | 0 | 15,528 | 84,611 | (69,083) | (82) | 34,424 |
| Governmental Aid | 0 | 0 | 19,000 | (19,000) | (100) | 977 |
| Interest and Investment Income | 386 | 3,424 | 0 | 3,424 | 0 | 7,460 |
| Other Revenues | 0 | 4,466 | 0 | 4,466 | 0 | 372 |
| Total Gross Revenues | 703,536 | 1,173,259 | 2,155,320 | (982,061) | (46) | 1,192,783 |
| Total Revenues | 703,536 | 1,173,259 | 2,155,320 | (982,061) | (46) | 1,192,783 |
| **Expenditures & Other Uses** | | | | | | |
| **Operating Expenditures** | | | | | | |
| Salaries and Wages | 7,609 | 49,959 | 121,050 | 71,091 | 59 | 62,036 |
| Fringe Benefits | 1,302 | 8,784 | 32,431 | 23,647 | 73 | 12,481 |
| Communications | 472 | 2,734 | 11,870 | 9,136 | 77 | 2,892 |
| Computer Support | 450 | 450 | 9,800 | 9,350 | 95 | 19,014 |
| Employee Hiring & Medical Costs | 490 | 1,306 | 3,500 | 2,195 | 63 | 0 |
| Fees | 0 | 430 | 600 | 170 | 28 | 373 |
| Maint-Equip,Veh,Grounds,Structr | 181 | 26,390 | 50,322 | 23,931 | 48 | 13,100 |
| Support Operations | 560,193 | 919,640 | 1,630,700 | 711,060 | 44 | 917,616 |
| Travel,Training,Educ and Utilities | 478 | 4,237 | 17,713 | 13,476 | 76 | 4,264 |
| Administrative Costs Allocation | 9,208 | 64,456 | 110,490 | 46,034 | 42 | 60,236 |
| Total Operating Expenditures | 580,382 | 1,078,386 | 1,988,476 | 910,090 | 46 | 1,092,012 |
| Other Charges | 0 | 23,451 | 23,451 | 0 | 0 | 24,223 |
| **Capital Outlay** | | | | | | |
| Building & Structures & Improvements | 105 | 99,423 | 121,821 | 22,398 | 18 | 0 |
| Equipment, Fixtures & Systems | 0 | 0 | 28,000 | 28,000 | 100 | 298 |
| Total Capital Outlay | 105 | 99,423 | 149,821 | 50,398 | 34 | 298 |
| Inter-Fund Transfers | 0 | 0 | 0 | 0 | 0 | (62,117) |
| Reserves and Designations | 386 | 3,032 | 110,821 | 107,789 | 97 | 97,032 |

Date: 2/24/11 03:51:26 PM

Page: 3

EXHIBIT C - page 159

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Summary - Unposted Transactions Included In Report

301 - Fire

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| Beginning Equities Used for Funding | 0 | (117,249) | (117,249) | 0 | 0 | (21,509) |
| Total Expenditures & Other Uses | 580,873 | 1,087,043 | 2,155,320 | 1,068,277 | 50 | 1,129,940 |
| Net Fund Change | 122,663 | 86,216 | 0 | 86,216 | 0 | 62,843 |

Page: 4

Date: 2/24/11 03:51:26 PM

EXHIBIT C - page 160

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Summary - Unposted Transactions Included in Report

400 - Vista de Oro

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| **Gross Revenues** | | | | | | |
| Service Charges and Fees | 5,232 | 8,574 | 15,760 | (7,186) | (46) | 8,247 |
| Interest and Investment Income | 0 | 28 | 0 | 28 | 0 | 38 |
| Total Gross Revenues | 5,232 | 8,602 | 15,760 | (7,158) | (45) | 8,285 |
| Total Revenues | 5,232 | 8,602 | 15,760 | (7,158) | (45) | 8,285 |
| **Expenditures & Other Uses** | | | | | | |
| **Operating Expenditures** | | | | | | |
| Salaries and Wages | 215 | 1,582 | 2,800 | 1,218 | 43 | 852 |
| Fringe Benefits | 77 | 556 | 980 | 424 | 43 | 286 |
| Communications | 27 | 106 | 100 | (6) | (6) | 81 |
| Fees | 0 | 631 | 730 | 99 | 14 | 631 |
| Maint-Equip,Veh,Grounds,Structr | 0 | 999 | 1,150 | 151 | 13 | 946 |
| Support Operations | 35 | 516 | 1,300 | 784 | 60 | 405 |
| Travel,Training,Educ and Utilities | 93 | 7,062 | 10,250 | 3,188 | 31 | 3,366 |
| Administrative Costs Allocation | 361 | 2,527 | 4,326 | 1,799 | 42 | 2,359 |
| Total Operating Expenditures | 808 | 13,980 | 21,636 | 7,656 | 35 | 8,926 |
| Inter-Fund Transfers | 0 | 0 | 0 | 0 | 0 | (5,576) |
| Reserves and Designations | 0 | 0 | 0 | 0 | 0 | 5,614 |
| Beginning Equities Used for Funding | 0 | (5,876) | (5,876) | 0 | 0 | (1,732) |
| Total Expenditures & Other Uses | 808 | 8,104 | 15,760 | 7,656 | 49 | 7,232 |
| Net Fund Change | 4,424 | 498 | 0 | 498 | 0 | 1,053 |

Date: 2/24/11 03:51:26 PM

Page 5

EXHIBIT C - page 161

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Summary - Unposted Transactions Included In Report

500 - Water

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| **Gross Revenues** | | | | | | |
| Property Taxes | 56,913 | 102,500 | 188,343 | (85,843) | (46) | 102,781 |
| Service Charges and Fees | 131,890 | 980,657 | 1,640,000 | (659,343) | (40) | 989,374 |
| Governmental Aid | 0 | 0 | 0 | 0 | 0 | 1,615 |
| Interest and Investment Income | 250 | 1,942 | 0 | 1,942 | 0 | 314 |
| Other Revenues | 5 | 6,418 | 0 | 6,418 | 0 | 23,480 |
| Total Gross Revenues | 189,059 | 1,091,517 | 1,828,343 | (736,826) | (40) | 1,117,564 |
| Total Revenues | 189,059 | 1,091,517 | 1,828,343 | (736,826) | (40) | 1,117,564 |
| **Expenditures & Other Uses** | | | | | | |
| **Operating Expenditures** | | | | | | |
| Salaries and Wages | 21,842 | 170,270 | 338,337 | 168,067 | 50 | 213,468 |
| Fringe Benefits | 10,293 | 66,717 | 118,411 | 51,694 | 44 | 73,757 |
| Communications | 837 | 4,711 | 8,000 | 3,289 | 41 | 4,765 |
| Computer Support | 2,891 | 5,325 | 17,580 | 12,255 | 70 | 20,670 |
| Employee Hiring & Medical Costs | 0 | 150 | 1,100 | 950 | 86 | 0 |
| Fees | 272 | 8,394 | 20,500 | 12,106 | 59 | 17,960 |
| Maint-Equip,Veh,Grounds,Structr | 19 | 15,687 | 36,770 | 21,083 | 57 | 7,007 |
| Support Operations | 12,257 | 95,718 | 255,697 | 159,979 | 63 | 97,968 |
| Travel,Training,Educ and Utilities | 6,955 | 63,184 | 100,440 | 37,256 | 37 | 65,467 |
| Administrative Costs Allocation | 41,836 | 292,852 | 502,037 | 209,185 | 42 | 258,399 |
| Total Operating Expenditures | 97,201 | 723,008 | 1,398,872 | 675,865 | 48 | 759,462 |
| **Other Charges** | 72,120 | 301,948 | 320,097 | 18,149 | 6 | 288,174 |
| **Capital Outlay** | | | | | | |
| Building & Structures & Improvements | 0 | 8,874 | 10,000 | 1,126 | 11 | 1,500 |
| Equipment, Fixtures & Systems | 0 | 7,290 | 7,290 | 0 | 0 | 0 |
| Total Capital Outlay | 0 | 16,164 | 17,290 | 1,126 | 7 | 1,500 |
| **Inter-Fund Transfers** | 0 | 0 | 0 | 0 | 0 | (31,171) |
| **Reserves and Designations** | 250 | 991 | 142,420 | 141,429 | 99 | 50,813 |
| **Beginning Equities Used for Funding** | | | | | | |

Date: 2/24/11 03:51:26 PM

Page: 6

EXHIBIT C - page 162

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Summary - Unposted Transactions Included In Report

500 - Water

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| | 0 | (50,336) | (50,336) | 0 | 0 | (1,971) |
| | 169,571 | 991,773 | 1,828,343 | 836,570 | 46 | 1,066,806 |
| Total Expenditures & Other Uses | | | | | | |
| | 19,487 | 99,744 | 0 | 99,744 | 0 | 50,758 |
| Net Fund Change | | | | | | |

Date: 2/24/11 03:51:26 PM

Page: 7

EXHIBIT C - page 163

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Summary - Unposted Transactions Included In Report

600 - Waste Water Project

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| **Gross Revenues** | | | | | | |
| Special Taxes and Assessments | 352,013 | 645,673 | 1,163,283 | (517,610) | (44) | 635,454 |
| Interest and Investment Income | 0 | 4,096 | 5,000 | (904) | (18) | (1,006) |
| Total Gross Revenues | 352,013 | 649,768 | 1,168,283 | (518,515) | (44) | 634,449 |
| Total Revenues | 352,013 | 649,768 | 1,168,283 | (518,515) | (44) | 634,449 |
| **Expenditures & Other Uses** | | | | | | |
| **Operating Expenditures** | | | | | | |
| Fees | 0 | 1,846 | 2,200 | 354 | 16 | 1,844 |
| Support Operations | 38 | 101,148 | 202,700 | 101,552 | 50 | 88,491 |
| Total Operating Expenditures | 38 | 102,994 | 204,900 | 101,906 | 50 | 90,336 |
| Other Charges | 0 | 762,568 | 1,148,383 | 385,816 | 34 | 769,110 |
| Inter-Fund Transfers | 0 | 0 | (25,000) | (25,000) | 100 | 0 |
| Reserves and Designations | 0 | 3,948 | 30,000 | 26,052 | 87 | (90,134) |
| Beginning Equities Used for Funding | (98,976) | (98,976) | (190,000) | (91,024) | 48 | 0 |
| Total Expenditures & Other Uses | (98,938) | 770,534 | 1,168,283 | 397,749 | 34 | 769,311 |
| Net Fund Change | 450,951 | (120,765) | 0 | (120,765) | 0 | (134,863) |

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - JS by Fund - Summary - Unposted Transactions Included In Report

650 - Solid Waste

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| **Gross Revenues** | | | | | | |
| Franchise and Contract Revenues | 4,944 | 80,879 | 160,000 | (79,121) | (49) | 78,717 |
| Interest and Investment Income | 106 | 585 | 0 | 585 | 0 | 292 |
| Other Revenues | 0 | 0 | 0 | 0 | 0 | 15 |
| Total Gross Revenues | 5,050 | 81,464 | 160,000 | (78,536) | (49) | 79,024 |
| Total Revenues | 5,050 | 81,464 | 160,000 | (78,536) | (49) | 79,024 |
| | | | | | | |
| **Expenditures & Other Uses** | | | | | | |
| **Operating Expenditures** | | | | | | |
| Salaries and Wages | 1,202 | 9,013 | 15,777 | 6,764 | 43 | 23,375 |
| Fringe Benefits | 524 | 3,252 | 5,523 | 2,271 | 41 | 8,093 |
| Communications | 0 | 0 | 50 | 50 | 100 | 0 |
| Computer Support | 0 | 0 | 750 | 750 | 100 | 0 |
| Support Operations | 280 | 1,987 | 5,050 | 3,063 | 61 | 2,553 |
| Travel,Training,Educ and Utilities | 0 | 13 | 0 | (13) | 0 | 0 |
| Administrative Costs Allocation | 3,874 | 27,118 | 46,492 | 19,374 | 42 | 23,932 |
| Total Operating Expenditures | 5,880 | 41,383 | 73,642 | 32,259 | 44 | 57,953 |
| | | | | | | |
| Inter-Fund Transfers | 3,550 | 24,850 | 42,600 | 17,750 | 42 | (66,966) |
| | | | | | | |
| Reserves and Designations | 106 | 284 | 43,758 | 43,474 | 99 | 67,258 |
| Total Expenditures & Other Uses | 9,537 | 66,517 | 160,000 | 93,483 | 58 | 58,245 |
| | | | | | | |
| Net Fund Change | (4,486) | 14,946 | 0 | 14,946 | 0 | 20,779 |

EXHIBIT C - page 165

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Summary - Unposted Transactions Included in Report

800 - Drainage

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| **Gross Revenues** | | | | | | |
| Property Taxes | 1,074 | 1,950 | 3,450 | (1,500) | (43) | 1,919 |
| Special Taxes and Assessments | 30,546 | 48,969 | 95,360 | (46,391) | (49) | 48,553 |
| Interest and Investment Income | 23 | 453 | 0 | 453 | 0 | 122 |
| Other Revenues | 22 | 50 | 0 | 50 | 0 | 40 |
| Total Gross Revenues | 31,665 | 51,421 | 98,810 | (47,389) | (48) | 50,634 |
| Total Revenues | 31,665 | 51,421 | 98,810 | (47,389) | (48) | 50,634 |
| **Expenditures & Other Uses** | | | | | | |
| **Operating Expenditures** | | | | | | |
| Salaries and Wages | 946 | 4,427 | 17,800 | 13,373 | 75 | 6,536 |
| Fringe Benefits | 338 | 1,491 | 6,230 | 4,739 | 76 | 2,206 |
| Communications | 179 | 730 | 1,650 | 920 | 56 | 899 |
| Computer Support | 0 | 0 | 1,000 | 1,000 | 100 | 0 |
| Fees | 0 | 5,497 | 5,970 | 473 | 8 | 3,634 |
| Maint-Equip,Veh,Grounds,Structr | 68 | 1,104 | 5,100 | 3,996 | 78 | 320 |
| Support Operations | 521 | 2,126 | 3,900 | 1,774 | 45 | 2,286 |
| Travel,Training,Educ and Utilities | 28 | 425 | 1,400 | 975 | 70 | 1,531 |
| Administrative Costs Allocation | 2,395 | 16,765 | 28,738 | 11,973 | 42 | 14,791 |
| Total Operating Expenditures | 4,476 | 32,566 | 71,788 | 39,222 | 55 | 32,203 |
| **Capital Outlay** | | | | | | |
| Building & Structures & Improvements | 6,075 | 6,075 | 0 | (6,075) | 0 | 0 |
| Equipment, Fixtures & Systems | 0 | 0 | 20,000 | 20,000 | 100 | 5,281 |
| Total Capital Outlay | 6,075 | 6,075 | 20,000 | 13,925 | 70 | 5,281 |
| Inter-Fund Transfers | 0 | 0 | 0 | 0 | 0 | (10,000) |
| Reserves and Designations | 23 | 179 | 8,630 | 8,451 | 98 | 10,108 |
| Beginning Equities Used for Funding | 0 | (1,608) | (1,608) | 0 | 0 | (15,036) |
| Total Expenditures & Other Uses | 10,574 | 37,212 | 98,810 | 61,598 | 62 | 22,556 |
| Net Fund Change | 21,091 | 14,209 | 0 | 14,209 | 0 | 28,078 |

Date: 2/24/11 03:51:26 PM

Page: 10

EXHIBIT C - page 166

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Summary - Unposted Transactions Included In Report

900 - Parks & Recreation

From 1/1/2011 Through 1/31/2011

(In Whole Numbers)

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| Gross Revenues | | | | | | |
| Interest and Investment Income | 346 | 734 | 0 | 734 | 0 | 1,060 |
| Total Gross Revenues | 346 | 734 | 0 | 734 | 0 | 1,060 |
| Total Revenues | 346 | 734 | 0 | 734 | 0 | 1,060 |
| | | | | | | |
| **Expenditures & Other Uses** | | | | | | |
| Operating Expenditures | | | | | | |
| Travel,Training,Educ and Utilities | 0 | 0 | 0 | 0 | 0 | 118 |
| Total Operating Expenditures | 0 | 0 | 0 | 0 | 0 | 118 |
| Reserves and Designations | 346 | 734 | 0 | (734) | 0 | 1,131 |
| Total Expenditures & Other Uses | 346 | 734 | 0 | (734) | 0 | 1,249 |
| | | | | | | |
| Net Fund Change | 0 | 0 | 0 | 0 | 0 | (189) |

EXHIBIT C - page 167

# LINE ITEM
# REPORTS
# FOLLOW

EXHIBIT C - page 168

Page: 1

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

100 - 100 - Administration

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| Revenues | | | | | | | |
| Gross Revenues | | | | | | | |
| Interest and Investment Income | | | | | | | |
| 4510 | Investment Income on Restricted Funds | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 96.89 |
| | Total Interest and Investment Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 96.89 |
| Other Revenues | | | | | | | |
| 4989 | Other Reimbursements | 4.50 | 9.00 | 0.00 | 9.00 | 0.00% | 0.00 |
| | Total Other Revenues | 4.50 | 9.00 | 0.00 | 9.00 | 0.00% | 0.00 |
| | Total Gross Revenues | 4.50 | 9.00 | 0.00 | 9.00 | 0.00% | 96.89 |
| | Total Revenues | 4.50 | 9.00 | 0.00 | 9.00 | 0.00% | 96.89 |
| Expenditures & Other Uses | | | | | | | |
| Operating Expenditures | | | | | | | |
| Salaries and Wages | | | | | | | |
| 8018 | Holiday Pay | 2,715.40 | 12,286.14 | 0.00 | (12,286.14) | 0.00% | 9,379.50 |
| 8045 | Overtime Pay | 0.00 | 196.31 | 0.00 | (196.31) | 0.00% | 576.96 |
| 8050 | Administrative Leave Pay | 86.54 | 1,990.39 | 0.00 | (1,990.39) | 0.00% | 3,232.42 |
| 8051 | Floating Holiday Pay | 0.00 | 892.96 | 0.00 | (892.96) | 0.00% | 1,379.04 |
| 8054 | Salaries & Wages- Regular Time | 17,612.86 | 164,138.81 | 362,400.00 | 198,261.19 | 54.71% | 122,942.04 |
| 8060 | Sick Leave Pay | 2,687.29 | 8,467.36 | 0.00 | (8,467.36) | 0.00% | 4,422.45 |
| 8066 | Comp Time Used | 0.00 | 2,182.10 | 0.00 | (2,182.10) | 0.00% | 375.54 |
| 8081 | Vacation Pay | 2,887.79 | 12,167.01 | 0.00 | (12,167.01) | 0.00% | 9,893.71 |
| 8100 | Salaries - Regular Time | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 5,622.50 |
| 8110 | Salaries - OT & Call Back | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 290.92 |
| 8150 | Salaries Leave Pay | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 2,608.65 |
| 8197 | Labor Billings to Other Funds | (3,136.21) | (33,764.10) | (61,517.00) | (27,752.90) | 45.11% | (46,093.29) |
| | Total Salaries and Wages | 22,853.67 | 168,556.98 | 300,883.00 | 132,326.02 | 43.98% | 114,630.44 |
| Fringe Benefits | | | | | | | |
| 5010 | Total Fringe Benefits | 0.00 | (1,294.00) | 126,800.00 | 128,094.00 | 101.02% | 0.00 |
| 5020 | FICA Employer Contribution | 9.30 | 353.40 | 0.00 | (353.40) | 0.00% | 898.31 |
| 5030 | Life Ins Cost | 348.66 | 2,450.02 | 0.00 | (2,450.02) | 0.00% | 1,542.96 |
| 5050 | Medicare Employer Contributions | 368.52 | 3,033.60 | 0.00 | (3,033.60) | 0.00% | 2,455.67 |
| 5060 | Medical Plan Employer Contribution | 3,654.15 | 24,783.94 | 0.00 | (24,783.94) | 0.00% | 18,387.64 |

EXHIBIT C - page 169

Page: 2

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

100 - 100 - Administration

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| 5070 | Retirement Employer Contrib-Regular | 2,431.65 | 19,090.21 | 0.00 | (19,090.21) | 0.00% | 14,831.56 |
| 5071 | Retirement Employer Contrib- Addl Pick-up | 1,205.73 | 9,568.68 | 0.00 | (9,568.68) | 0.00% | 7,420.42 |
| 5100 | Unemp Ins Costs | 1,575.81 | 1,873.41 | 0.00 | (1,873.41) | 0.00% | 2,392.66 |
| 5102 | CA Training Tax- ER only | 25.43 | 30.23 | 0.00 | (30.23) | 0.00% | 0.00 |
| 5120 | Workers Comp Insurance ER Costs | 319.97 | 2,486.43 | 0.00 | (2,486.43) | 0.00% | 353.06 |
| 5197 | Benefits Billings to Other Funds | (1,579.92) | (12,204.03) | (21,523.00) | (9,318.97) | 43.30% | (17,302.48) |
| | **Total Fringe Benefits** | 8,359.30 | 50,171.89 | 105,277.00 | 55,105.11 | 52.34% | 30,979.80 |
| | **Communications** | | | | | | |
| 6000 | Cell Phones | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 126.59 |
| 6015 | Pagers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (16.05) |
| 6025 | Telephone | 289.35 | 2,193.12 | 5,500.00 | 3,306.88 | 60.13% | 2,077.38 |
| | **Total Communications** | 289.35 | 2,193.12 | 5,500.00 | 3,306.88 | 60.13% | 2,187.92 |
| | **Computer Support** | | | | | | |
| 6100 | Computer & Softwares-Labor & Support | 4,534.17 | 11,105.01 | 20,000.00 | 8,894.99 | 44.47% | 10,993.60 |
| 6110 | Internet Service | 64.98 | 227.43 | 390.00 | 162.57 | 41.68% | 227.43 |
| 6120 | Computer H/W & S/W | 0.00 | 9,425.42 | 8,797.17 | (628.25) | (7.14)% | 505.86 |
| | **Total Computer Support** | 4,599.15 | 20,757.86 | 29,187.17 | 8,429.31 | 28.88% | 11,726.89 |
| | **Employee Hiring & Medical Costs** | | | | | | |
| 6200 | Employee Hiring | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 150.00 |
| 6230 | Medical Exam | 490.00 | 490.00 | 0.00 | (490.00) | 0.00% | 0.00 |
| | **Total Employee Hiring & Medical Costs** | 490.00 | 490.00 | 0.00 | (490.00) | 0.00% | 150.00 |
| | **Fees** | | | | | | |
| 6330 | Hazardous Materials Permits | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 71.12 |
| 6340 | Misc Fees | 0.00 | 3.00 | 0.00 | (3.00) | 0.00% | 0.00 |
| 6341 | LAFCO Fees | 0.00 | 18,387.63 | 16,500.00 | (1,887.63) | (11.44)% | 16,311.65 |
| | **Total Fees** | 0.00 | 18,390.63 | 16,500.00 | (1,890.63) | (11.46)% | 16,382.77 |
| | **Maint-Equip,Veh,Grounds,Structr** | | | | | | |
| 6900 | Building Maintenance | 0.00 | 0.00 | 300.00 | 300.00 | 100.00% | 0.00 |
| | **Total Maint-Equip,Veh,Grounds,Structr** | 0.00 | 0.00 | 300.00 | 300.00 | 100.00% | 0.00 |
| | **Support Operations** | | | | | | |
| 7100 | Copier Maintenance Contract | 491.46 | 5,914.34 | 9,750.00 | 3,835.66 | 39.34% | 4,387.78 |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 170

Page: 3

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

100 - 100 - Administration

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| 7140 | General Office Supplies | 356.07 | 3,212.38 | 7,000.00 | 3,787.62 | 54.11% | 2,520.82 |
| 7160 | Postage & Shipping | 1,258.04 | 2,829.29 | 5,500.00 | 2,670.71 | 48.56% | 2,506.61 |
| 7165 | Director's Office Supplies Expense | 0.00 | 38.01 | 200.00 | 161.99 | 81.00% | 0.00 |
| 7170 | Special Purpose Forms and Printing | 0.00 | 0.00 | 500.00 | 500.00 | 100.00% | 12.38 |
| 7202 | Building Alarms & Security | 0.00 | 0.00 | 300.00 | 300.00 | 100.00% | 75.00 |
| 7226 | Membership & Dues | 4,141.00 | 4,326.00 | 4,200.00 | (126.00) | (3.00)% | 3,799.00 |
| 7230 | Misc Small Parts | 0.00 | 39.79 | 0.00 | (39.79) | 0.00% | 0.00 |
| 7305 | Auditing Services | 0.00 | 30,800.00 | 30,800.00 | 0.00 | 0.00% | 29,800.00 |
| 7320 | Professional & Consulting Services | 0.00 | 0.00 | 2,000.00 | 2,000.00 | 100.00% | 926.75 |
| 7321 | Janitorial Cleaning | 131.00 | 1,097.24 | 2,200.00 | 1,102.76 | 50.13% | 984.11 |
| 7322 | Director's Compensation | 150.00 | 5,700.00 | 17,000.00 | 11,300.00 | 66.47% | 7,900.00 |
| 7323 | Books, Publications & Subscriptions | 0.00 | 0.00 | 210.00 | 210.00 | 100.00% | 213.70 |
| 7325 | Insurance | (379.00) | 27,032.00 | 30,200.00 | 3,168.00 | 10.49% | 28,729.00 |
| 7326 | Legal Services | 12,370.35 | 59,626.17 | 116,000.00 | 56,373.83 | 48.60% | 79,482.16 |
| 7328 | Working Meals | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 15.20 |
| 7330 | Misc Expenses | 293.80 | 293.80 | 500.00 | 206.20 | 41.24% | 365.61 |
| 7334 | Directors Education & Training | 225.00 | 225.00 | 0.00 | (225.00) | 0.00% | 0.00 |
| 7340 | Public Notices | 0.00 | 0.00 | 500.00 | 500.00 | 100.00% | 49.60 |
| 7342 | Public Meeting Recordings | 1,125.00 | 8,670.00 | 16,000.00 | 7,330.00 | 45.81% | 7,622.19 |
| 7343 | Election Expense | 0.00 | 9,556.94 | 9,700.00 | 143.06 | 1.47% | 0.00 |
| 7350 | Rent - Meetings | 0.00 | 1,781.25 | 7,000.00 | 5,218.75 | 74.55% | 2,280.62 |
| 7352 | Rent - Offices and Other Structures | 1,240.00 | 7,440.00 | 14,880.00 | 7,440.00 | 50.00% | 8,680.00 |
| 7360 | Forms and Supplies>sec 7140 or 7170 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 228.06 |
| 7600 | Prior Year Expense Adj | 0.00 | (312.70) | 0.00 | 312.70 | 0.00% | (156.12) |
| | Total Support Operations | 21,402.72 | 168,269.51 | 274,440.00 | 106,170.49 | 38.69% | 180,422.47 |
| | Travel,Training,Educ and Utilities | | | | | | |
| 7324 | Education | 0.00 | 1,054.00 | 2,500.00 | 1,446.00 | 57.84% | 792.84 |
| 8510 | Travel Expenses | 8.00 | 2,429.16 | 3,000.00 | 570.84 | 19.03% | 847.84 |
| 8511 | Car Allowance | 200.00 | 1,400.00 | 2,400.00 | 1,000.00 | 41.67% | 500.00 |
| 8540 | Meals - Directors | 0.00 | 173.00 | 0.00 | (173.00) | 0.00% | 95.50 |
| 8541 | Director's Meals- Travel | 44.83 | 340.49 | 1,000.00 | 659.51 | 65.95% | 84.60 |
| 8550 | Mileage Reimbursement | 9.75 | 764.14 | 5,000.00 | 4,235.86 | 84.72% | 3,481.75 |
| 8551 | Director's Mileage Expense | 424.83 | 649.83 | 500.00 | (149.83) | (29.97)% | 528.80 |
| 8610 | Electric | 8.59 | 850.68 | 3,500.00 | 2,649.32 | 75.69% | 1,341.00 |

Page: 4

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

100 - 100 - Administration

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| 8620 | Gas Service | 0.00 | 52.42 | 300.00 | 247.58 | 82.53% | 38.05 |
| | Total Travel,Training,Educ and Utilities | 696.00 | 7,713.72 | 18,200.00 | 10,486.28 | 57.62% | 7,710.38 |
| | **Administrative Costs Allocation** | | | | | | |
| 8810 | Admin Cost Allocation to 200 | (829.00) | (5,803.00) | (9,952.00) | (4,149.00) | 41.69% | (5,425.00) |
| 8811 | Admin Cost Allocation to 301 | (9,208.00) | (64,456.00) | (110,490.00) | (46,034.00) | 41.66% | (60,236.00) |
| 8812 | Admin Cost Allocation to 400 | (361.00) | (2,527.00) | (4,326.00) | (1,799.00) | 41.59% | (2,359.00) |
| 8813 | Admin Cost Allocation to 500 | (41,836.00) | (292,852.00) | (502,037.00) | (209,185.00) | 41.67% | (258,399.00) |
| 8815 | Admin Cost  Alloc to 650 | (3,874.00) | (27,118.00) | (46,492.00) | (19,374.00) | 41.67% | (23,932.00) |
| 8816 | Admin Cost Allocation to 700 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (349.00) |
| 8817 | Admin Cost Allocation to 800 | (2,395.00) | (16,765.00) | (28,738.00) | (11,973.00) | 41.66% | (14,791.00) |
| | Total Administrative Costs Allocation | (58,503.00) | (409,521.00) | (702,035.00) | (292,514.00) | 41.67% | (365,491.00) |
| | Total Operating Expenditures | 187.19 | 27,022.71 | 48,252.17 | 21,229.46 | 44.00% | (1,300.33) |
| | **Capital Outlay** | | | | | | |
| | **Equipment, Fixtures & Systems** | | | | | | |
| 9058 | Systems and Softwares-Capital | 0.00 | 0.00 | 20,000.00 | 20,000.00 | 100.00% | 0.00 |
| | Total Equipment, Fixtures & Systems | 0.00 | 0.00 | 20,000.00 | 20,000.00 | 100.00% | 0.00 |
| | Total Capital Outlay | 0.00 | 0.00 | 20,000.00 | 20,000.00 | 100.00% | 0.00 |
| | **Inter-Fund Transfers** | | | | | | |
| 9465 | Transfer in from SW | (3,550.00) | (24,850.00) | (42,600.00) | (17,750.00) | 41.67% | 0.00 |
| 9511 | Interfund Transfer Out | 0.00 | 0.00 | 25,000.00 | 25,000.00 | 100.00% | 206,059.00 |
| | Total Inter-Fund Transfers | (3,550.00) | (24,850.00) | (17,600.00) | 7,250.00 | (41.19)% | 206,059.00 |
| | **Reserves and Designations** | | | | | | |
| 9506 | *Decrease Reserves | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (206,059.00) |
| 9987 | *Increase Reserve from Investment Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 167.99 |
| | Total Reserves and Designations | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (205,891.01) |
| | **Beginning Equities Used for Funding** | | | | | | |
| 9507 | *Beg FY Encumbrances & Fund Reservation | 0.00 | (5,297.17) | (5,297.17) | 0.00 | 0.00% | 0.00 |
| 9508 | *Beg Reserves Released to Fund Final Budget | 0.00 | (45,354.90) | (45,355.00) | (0.10) | 0.00% | 0.00 |
| | Total Beginning Equities Used for Funding | 0.00 | (50,652.07) | (50,652.17) | (0.10) | 0.00% | 0.00 |
| | Total Expenditures & Other Uses | (3,362.81) | (48,479.36) | 0.00 | 48,479.36 | 923,416.00% | (1,132.34) |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 172

Page: 5

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

100 - 100 - Administration

From 1/1/2011 Through 1/31/2011

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| Net Fund Change | 3,367.31 | 48,488.36 | 0.00 | 48,488.36 | 0.00% | 1,229.23 |

Date: 2/24/11 03:49:05 PM

EXHIBIT C - page 173

Page 6

## LOS OSOS COMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

200 - 200 - Bayridge

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| | **Revenues** | | | | | | |
| | **Gross Revenues** | | | | | | |
| | **Property Taxes** | | | | | | |
| 4035 | Property Taxes | 2,082.76 | 3,759.81 | 6,550.00 | (2,790.19) | (42.60)% | 3,671.77 |
| | Total Property Taxes | 2,082.76 | 3,759.81 | 6,550.00 | (2,790.19) | (42.60)% | 3,671.77 |
| | **Service Charges and Fees** | | | | | | |
| 4550 | Lighting & Septic Assessments | 7,815.50 | 16,656.50 | 29,500.00 | (12,843.50) | (43.54)% | 16,352.00 |
| | Total Service Charges and Fees | 7,815.50 | 16,656.50 | 29,500.00 | (12,843.50) | (43.54)% | 16,352.00 |
| | **Interest and Investment Income** | | | | | | |
| 4500 | Investment Income on Oper Funds | 0.00 | 21.40 | 0.00 | 21.40 | 0.00% | 0.00 |
| 4501 | Interest-Undistributed Taxes | 0.00 | (0.01) | 0.00 | (0.01) | 0.00% | (0.07) |
| 4510 | Investment Income on Restricted Funds | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 90.12 |
| | Total Interest and Investment Income | 0.00 | 21.39 | 0.00 | 21.39 | 0.00% | 90.05 |
| | Total Gross Revenues | 9,898.26 | 20,437.70 | 36,050.00 | (15,612.30) | (43.31)% | 20,113.82 |
| | Total Revenues | 9,898.26 | 20,437.70 | 36,050.00 | (15,612.30) | (43.31)% | 20,113.82 |
| | **Expenditures & Other Uses** | | | | | | |
| | **Operating Expenditures** | | | | | | |
| | **Salaries and Wages** | | | | | | |
| 8153 | Labor Charged by Water | 256.63 | 2,368.38 | 6,300.00 | 3,931.62 | 62.41% | 2,874.04 |
| | Total Salaries and Wages | 256.63 | 2,368.38 | 6,300.00 | 3,931.62 | 62.41% | 2,874.04 |
| | **Fringe Benefits** | | | | | | |
| 5133 | Benefits Charged by Water | 91.61 | 838.47 | 2,205.00 | 1,366.53 | 61.97% | 963.98 |
| | Total Fringe Benefits | 91.61 | 838.47 | 2,205.00 | 1,366.53 | 61.97% | 963.98 |
| | **Communications** | | | | | | |
| 6000 | Cell Phones | 27.20 | 106.11 | 150.00 | 43.89 | 29.26% | 81.23 |
| | Total Communications | 27.20 | 106.11 | 150.00 | 43.89 | 29.26% | 81.23 |
| | **Fees** | | | | | | |
| 6342 | Fees - Regulatory | 0.00 | 613.00 | 700.00 | 87.00 | 12.43% | 613.00 |
| 6345 | Property Taxes and Assessments | 0.00 | 252.56 | 300.00 | 47.44 | 15.81% | 252.56 |
| | Total Fees | 0.00 | 865.56 | 1,000.00 | 134.44 | 13.44% | 865.56 |
| | **Maint-Equip,Veh,Grounds,Structr** | | | | | | |
| 6430 | Maintenance & Repairs | 0.00 | 74.41 | 200.00 | 125.59 | 62.80% | 219.81 |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 174

Page: 7

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report
200 - 200 - Bayridge
From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| 6800 | Grounds & Collection Sys. Maint. | 0.00 | 2,960.00 | 4,000.00 | 1,040.00 | 26.00% | 2,895.47 |
| 6900 | Building Maintenance | 0.00 | 0.00 | 100.00 | 100.00 | 100.00% | 0.00 |
| | Total Maint-Equip,Veh,Grounds,Structr | 0.00 | 3,034.41 | 4,300.00 | 1,265.59 | 29.43% | 3,115.28 |
| | Support Operations | | | | | | |
| 7055 | Routine Maintenance & Supplies | 0.00 | 32.08 | 0.00 | (32.08) | 0.00% | 0.00 |
| 7210 | Emergency Meals/Drinks/Prepackaged | 0.00 | 6.28 | 0.00 | (6.28) | 0.00% | 0.00 |
| 7211 | Misc Fuel/Diesel | 19.12 | 92.03 | 50.00 | (42.03) | (84.06)% | 0.00 |
| 7220 | Gasoline | 51.86 | 278.69 | 300.00 | 21.31 | 7.10% | 287.24 |
| 7230 | Misc Small Parts | 0.00 | 0.00 | 50.00 | 50.00 | 100.00% | 0.00 |
| 7320 | Professional & Consulting Services | 0.00 | 327.87 | 1,200.00 | 872.13 | 72.68% | 1,940.52 |
| | Total Support Operations | 70.98 | 736.95 | 1,600.00 | 863.05 | 53.94% | 2,227.76 |
| | Travel,Training,Educ and Utilities | | | | | | |
| 8610 | Electric | 126.91 | 1,544.68 | 2,000.00 | 455.32 | 22.77% | 1,186.80 |
| 8645 | Septage Handling | 0.00 | 5,675.00 | 10,000.00 | 4,325.00 | 43.25% | 8,055.00 |
| 8670 | Street Lighting | 214.16 | 1,880.38 | 4,000.00 | 2,119.62 | 52.99% | 2,383.08 |
| 8680 | Water Quality | 0.00 | 260.00 | 300.00 | 40.00 | 13.33% | 0.00 |
| | Total Travel,Training,Educ and Utilities | 341.07 | 9,360.06 | 16,300.00 | 6,939.94 | 42.58% | 11,624.88 |
| | Administrative Costs Allocation | | | | | | |
| 8801 | Administrative Costs Allocation | 829.00 | 5,803.00 | 9,952.00 | 4,149.00 | 41.69% | 5,425.00 |
| | Total Administrative Costs Allocation | 829.00 | 5,803.00 | 9,952.00 | 4,149.00 | 41.69% | 5,425.00 |
| | Total Operating Expenditures | 1,616.49 | 23,112.94 | 41,807.00 | 18,694.06 | 44.72% | 27,177.73 |
| | Capital Outlay | | | | | | |
| | Building & Structures & Improvements | | | | | | |
| 9000 | Building, Structures & Improvements | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 10,946.95 |
| | Total Building & Structures & Improvements | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 10,946.95 |
| | Total Capital Outlay | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 10,946.95 |
| | Inter-Fund Transfers | | | | | | |
| 9512 | Transfer In | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (30,229.00) |
| | Total Inter-Fund Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (30,229.00) |
| | Reserves and Designations | | | | | | |
| 9503 | *Increase to Reserve From Interfd Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 30,229.00 |

Date: 2/24/11 03:49:05 PM

EXHIBIT C - page 175

Page: 8

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

200 - 200 - Bayridge

From 1/1/2011 Through 1/31/2011

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| 9506  *Decrease Reserves | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (12,000.00) |
| 9987  *Increase Reserve from Investment Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 90.12 |
| Total Reserves and Designations | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 18,319.12 |
| Beginning Equities Used for Funding | | | | | | |
| 9508  *Beg Reserves Released to Fund Final Budget | 0.00 | 0.00 | (5,757.00) | (5,757.00) | 100.00% | (4,018.00) |
| 9990  *Beg FBA Used to Fund Budget | 0.00 | (5,757.00) | 0.00 | 5,757.00 | 0.00% | 0.00 |
| Total Beginning Equities Used for Funding | 0.00 | (5,757.00) | (5,757.00) | 0.00 | 0.00% | (4,018.00) |
| Total Expenditures & Other Uses | 1,616.49 | 17,355.94 | 36,050.00 | 18,694.06 | 51.86% | 22,196.80 |
| Net Fund Change | 8,281.77 | 3,081.76 | 0.00 | 3,081.76 | 0.00% | (2,082.98) |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 176

Page: 9

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

301 - 301 - Fire

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| | Revenues | | | | | | |
| | Gross Revenues | | | | | | |
| | Property Taxes | | | | | | |
| 4035 | Property Taxes | 549,208.29 | 886,802.06 | 1,582,500.00 | (695,697.94) | (43.96)% | 888,287.08 |
| | Total Property Taxes | 549,208.29 | 886,802.06 | 1,582,500.00 | (695,697.94) | (43.96)% | 888,287.08 |
| | Special Taxes and Assessments | | | | | | |
| 4050 | Special Fire Tax | 153,941.20 | 263,039.28 | 469,209.00 | (206,169.72) | (43.94)% | 261,262.72 |
| | Total Special Taxes and Assessments | 153,941.20 | 263,039.28 | 469,209.00 | (206,169.72) | (43.94)% | 261,262.72 |
| | Franchise and Contract Revenues | | | | | | |
| 4000 | Ambulance Agreement | 0.00 | 15,527.71 | 62,111.00 | (46,583.29) | (75.00)% | 34,424.40 |
| 4015 | CSA 9-I Assessments ( Contract) | 0.00 | 0.00 | 22,500.00 | (22,500.00) | (100.00)% | 0.00 |
| | Total Franchise and Contract Revenues | 0.00 | 15,527.71 | 84,611.00 | (69,083.29) | (81.65)% | 34,424.40 |
| | Governmental Aid | | | | | | |
| 4055 | Mutual Aid Reimbursement | 0.00 | 0.00 | 10,000.00 | (10,000.00) | (100.00)% | 976.80 |
| 4955 | Govt-Other St Aids & Reimbursements | 0.00 | 0.00 | 9,000.00 | (9,000.00) | (100.00)% | 0.00 |
| | Total Governmental Aid | 0.00 | 0.00 | 19,000.00 | (19,000.00) | (100.00)% | 976.80 |
| | Interest and Investment Income | | | | | | |
| 4500 | Investment Income on Oper Funds | 0.00 | 539.66 | 0.00 | 539.66 | 0.00% | 0.00 |
| 4501 | Interest-Undistributed Taxes | 0.00 | 2.67 | 0.00 | 2.67 | 0.00% | 11.34 |
| 4510 | Investment Income on Restricted Funds | 386.31 | 2,882.08 | 0.00 | 2,882.08 | 0.00% | 7,448.23 |
| | Total Interest and Investment Income | 386.31 | 3,424.41 | 0.00 | 3,424.41 | 0.00% | 7,459.57 |
| | Other Revenues | | | | | | |
| 4929 | Settlements & Recoveries | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 272.16 |
| 4930 | Other Revenue | 0.00 | 706.00 | 0.00 | 706.00 | 0.00% | 100.00 |
| 4934 | Proceeds from Sale of Fixed Assets | 0.00 | 3,550.00 | 0.00 | 3,550.00 | 0.00% | 0.00 |
| 4935 | Sale-Non_Capital Items | 0.00 | 210.00 | 0.00 | 210.00 | 0.00% | 0.00 |
| | Total Other Revenues | 0.00 | 4,466.00 | 0.00 | 4,466.00 | 0.00% | 372.16 |
| | Total Gross Revenues | 703,535.80 | 1,173,259.46 | 2,155,320.00 | (982,060.54) | (45.56)% | 1,192,782.73 |
| | Total Revenues | 703,535.80 | 1,173,259.46 | 2,155,320.00 | (982,060.54) | (45.56)% | 1,192,782.73 |
| | Expenditures & Other Uses | | | | | | |
| | Operating Expenditures | | | | | | |
| | Salaries and Wages | | | | | | |

EXHIBIT C - page 177

Page: 10

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

301 - 301 - Fire

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| 8290 | Resv FF-Overtime/Misc | 0.00 | 36.00 | 350.00 | 314.00 | 89.71% | 0.00 |
| 8295 | Resv FF-Overtime/Shift Coverage | 0.00 | 84.00 | 3,000.00 | 2,916.00 | 97.20% | 0.00 |
| 8310 | Resv FF-Emerg Resp-Off Duty | 611.68 | 2,807.99 | 3,000.00 | 192.01 | 6.40% | 3,413.21 |
| 8330 | Resv FF- Mutual Aid Coverage | 40.00 | 82.10 | 500.00 | 417.90 | 83.58% | 0.00 |
| 8340 | Resv FF-Shift Coverage | 5,576.16 | 40,202.77 | 80,000.00 | 39,797.23 | 49.75% | 42,169.18 |
| 8345 | Resv FF-Special Projects | 200.92 | 1,707.15 | 2,700.00 | 992.85 | 36.77% | 2,413.15 |
| 8350 | Resv FF-Standby | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 79.00 |
| 8355 | Resv FF- Training & Drills | 1,180.65 | 5,039.22 | 30,000.00 | 24,960.78 | 83.20% | 13,961.36 |
| 8360 | Resv FF-Weed Abatement | 0.00 | 0.00 | 1,500.00 | 1,500.00 | 100.00% | 0.00 |
| | **Total Salaries and Wages** | 7,609.41 | 49,959.23 | 121,050.00 | 71,090.77 | 58.73% | 62,035.90 |
| | **Fringe Benefits** | | | | | | |
| 5000 | Periodic Medical Exams & Procedures | 0.00 | 0.00 | 1,500.00 | 1,500.00 | 100.00% | 3,430.00 |
| 5021 | FICA-Fire Reserves- ER | 451.72 | 2,835.92 | 7,965.00 | 5,129.08 | 64.40% | 3,571.37 |
| 5030 | Life Ins Cost | 0.00 | 0.00 | 2,180.00 | 2,180.00 | 100.00% | 0.00 |
| 5051 | Medicare Costs – Reserves | 110.34 | 710.02 | 1,780.00 | 1,069.98 | 60.11% | 860.00 |
| 5060 | Medical Plan Employer Contribution | 0.00 | (103.69) | 0.00 | 103.69 | 0.00% | 19.50 |
| 5100 | Unemp Ins Costs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 106.44 |
| 5101 | Unemp. Costs - Reserves | 368.05 | 2,747.06 | 4,141.00 | 1,393.94 | 33.66% | 1,788.14 |
| 5120 | Workers Comp Insurance ER Costs | 371.42 | 2,594.67 | 14,865.00 | 12,270.33 | 82.55% | 2,705.21 |
| | **Total Fringe Benefits** | 1,301.53 | 8,783.98 | 32,431.00 | 23,647.02 | 72.91% | 12,480.66 |
| | **Communications** | | | | | | |
| 6000 | Cell Phones | 207.80 | 831.77 | 1,470.00 | 638.23 | 43.42% | 727.55 |
| 6025 | Telephone | 263.87 | 1,902.24 | 3,500.00 | 1,597.76 | 45.65% | 1,493.36 |
| 6035 | Radios - Portable | 0.00 | 0.00 | 3,500.00 | 3,500.00 | 100.00% | 671.42 |
| 6055 | Radios - Mobile | 0.00 | 0.00 | 2,100.00 | 2,100.00 | 100.00% | 0.00 |
| 6070 | Radio Repeater & Base | 0.00 | 0.00 | 1,300.00 | 1,300.00 | 100.00% | 0.00 |
| | **Total Communications** | 471.67 | 2,734.01 | 11,870.00 | 9,135.99 | 76.97% | 2,892.33 |
| | **Computer Support** | | | | | | |
| 6100 | Computer & Softwares-Labor & Support | 0.00 | 0.00 | 3,800.00 | 3,800.00 | 100.00% | 824.50 |
| 6120 | Computer H/W & S/W | 449.97 | 449.97 | 6,000.00 | 5,550.03 | 92.50% | 18,189.83 |
| | **Total Computer Support** | 449.97 | 449.97 | 9,800.00 | 9,350.03 | 95.41% | 19,014.33 |
| | **Employee Hiring & Medical Costs** | | | | | | |
| 6200 | Employee Hiring | 0.00 | 0.00 | 400.00 | 400.00 | 100.00% | 0.00 |

Date: 2/24/11 03:49:05 PM

EXHIBIT C - page 178

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

301 - 301 - Fire

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| 6230 | Medical Exam | 490.00 | 1,305.50 | 3,100.00 | 1,794.50 | 57.89% | 0.00 |
| | Total Employee Hiring & Medical Costs | 490.00 | 1,305.50 | 3,500.00 | 2,194.50 | 62.70% | 0.00 |
| | **Fees** | | | | | | |
| 6300 | DMV Driv Lic Class B | 0.00 | 0.00 | 200.00 | 200.00 | 100.00% | 0.00 |
| 6340 | Misc Fees | 0.00 | 56.00 | 0.00 | (56.00) | 0.00% | 0.00 |
| 6345 | Property Taxes and Assessments Expenditures | 0.00 | 373.78 | 400.00 | 26.22 | 6.55% | 373.36 |
| | Total Fees | 0.00 | 429.78 | 600.00 | 170.22 | 28.37% | 373.36 |
| | **Maint-Equip,Veh,Grounds,Structr** | | | | | | |
| 6400 | Maintenance- Air Compressors | 0.00 | 0.00 | 500.00 | 500.00 | 100.00% | 0.00 |
| 6405 | Maintenance- Extinguishers | 0.00 | 0.00 | 300.00 | 300.00 | 100.00% | 230.00 |
| 6410 | Cords, Lights & Other Maint Supplies | 0.00 | 0.00 | 2,000.00 | 2,000.00 | 100.00% | 132.61 |
| 6422 | Hdrants: Fire | 0.00 | 0.00 | 150.00 | 150.00 | 100.00% | 0.00 |
| 6440 | Fire Pers Prot Equip-Struct | 0.00 | 1,697.42 | 9,500.00 | 7,802.58 | 82.13% | 5,796.50 |
| 6460 | Self-Contained Breathing Apparatus | 0.00 | 22,651.64 | 26,911.64 | 4,260.00 | 15.83% | 4,255.90 |
| 6610 | Rescue - Extrication Equipment | 63.73 | 265.08 | 500.00 | 234.92 | 46.98% | 0.00 |
| 6630 | Rope & Climbing Equipment | 0.00 | 0.00 | 600.00 | 600.00 | 100.00% | 0.00 |
| 6640 | Fixed Asset Maintenance | 0.00 | 0.00 | 1,500.00 | 1,500.00 | 100.00% | 0.00 |
| 6750 | Mechanical Tools/Equipment | 0.00 | 231.05 | 1,500.00 | 1,268.95 | 84.60% | 78.90 |
| 6800 | Grounds & Collection Sys. Maint. | 0.00 | 72.00 | 400.00 | 328.00 | 82.00% | 670.50 |
| 6840 | Septic System | 0.00 | 0.00 | 160.00 | 160.00 | 100.00% | 0.00 |
| 6900 | Building Maintenance | 116.97 | 1,473.20 | 6,300.00 | 4,826.80 | 76.62% | 1,935.42 |
| | Total Maint-Equip,Veh,Grounds,Structr | 180.70 | 26,390.39 | 50,321.64 | 23,931.25 | 47.56% | 13,099.83 |
| | **Support Operations** | | | | | | |
| 7025 | Significant Value Purchase | 0.00 | 0.00 | 2,000.00 | 2,000.00 | 100.00% | 0.00 |
| 7055 | Routine Maintenance & Supplies | 0.00 | 397.98 | 400.00 | 2.02 | 0.51% | 0.00 |
| 7100 | Copier Maintenance Contract | 139.82 | 489.00 | 1,500.00 | 1,011.00 | 67.40% | 462.77 |
| 7140 | General Office Supplies | 132.50 | 1,003.05 | 4,000.00 | 2,996.95 | 74.92% | 1,410.94 |
| 7160 | Postage & Shipping | 0.00 | 0.00 | 650.00 | 650.00 | 100.00% | 130.83 |
| 7170 | Special Purpose Forms and Printing | 0.00 | 0.00 | 200.00 | 200.00 | 100.00% | 0.00 |
| 7200 | Batteries - Common Sizes | 0.00 | 94.61 | 500.00 | 405.39 | 81.08% | 0.00 |
| 7201 | Bedding | 0.00 | 0.00 | 300.00 | 300.00 | 100.00% | 2,272.05 |
| 7202 | Building Alarms & Security | 0.00 | 222.48 | 850.00 | 627.52 | 73.83% | 209.88 |

Date: 2/4/11 03:49:06 PM

EXHIBIT C - page 179

Page: 12

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

301 - 301 - Fire

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| 7204 | Cleaning Supplies | 210.26 | 1,409.37 | 1,660.00 | 250.63 | 15.10% | 688.12 |
| 7209 | District Operating Center Expense | 0.00 | 0.00 | 440.00 | 440.00 | 100.00% | 0.00 |
| 7216 | Fire Prevention Education Materials | 0.00 | 347.50 | 1,150.00 | 802.50 | 69.78% | 703.81 |
| 7218 | Food/Drink | 90.00 | 114.00 | 1,310.00 | 1,196.00 | 91.30% | 299.70 |
| 7222 | Hazardous Materials CW JPA Cost | 0.00 | 1,050.00 | 1,000.00 | (50.00) | (5.00)% | 1,000.00 |
| 7224 | Kitchen Supplies - Dishes, Pots | 0.00 | 0.00 | 300.00 | 300.00 | 100.00% | 44.32 |
| 7225 | Mapping Costs | 1,800.00 | 1,800.00 | 0.00 | (1,800.00) | 0.00% | 0.00 |
| 7226 | Membership & Dues | 0.00 | 0.00 | 2,300.00 | 2,300.00 | 100.00% | 2,175.00 |
| 7234 | Oxygen Supplies - Medical | 119.88 | 1,761.61 | 2,400.00 | 638.39 | 26.60% | 1,533.73 |
| 7238 | Paramedic & EMT Supplies | 313.20 | 4,329.15 | 10,500.00 | 6,170.85 | 58.77% | 3,200.07 |
| 7240 | Propane | 0.00 | 0.00 | 650.00 | 650.00 | 100.00% | 21.64 |
| 7242 | Minor Tools, Accessories, Office & Field Machines | 0.00 | 1,673.57 | 1,500.00 | (173.57) | (11.57)% | 0.00 |
| 7244 | Subscriptions | 183.00 | 183.00 | 0.00 | (183.00) | 0.00% | 180.00 |
| 7246 | Uniform/Gear Expenses | 420.67 | 870.47 | 3,000.00 | 2,129.53 | 70.98% | 1,740.43 |
| 7248 | Uniform Safety Boots | 450.00 | 963.59 | 1,050.00 | 86.41 | 8.23% | 750.00 |
| 7320 | Professional & Consulting Services | 0.00 | 0.00 | 1,300.00 | 1,300.00 | 100.00% | 1,266.92 |
| 7323 | Books, Publications & Subscriptions | 0.00 | 0.00 | 300.00 | 300.00 | 100.00% | 0.00 |
| 7325 | Insurance | 0.00 | 18,967.00 | 20,000.00 | 1,033.00 | 5.17% | 18,157.00 |
| 7328 | Working Meals | 0.00 | (31.31) | 0.00 | 31.31 | 0.00% | 854.46 |
| 7330 | Misc Expenses | 0.00 | 792.20 | 0.00 | (792.20) | 0.00% | 0.00 |
| 7499 | CSA 9-1 Payments for Services to Area Served | 0.00 | 0.00 | 22,500.00 | 22,500.00 | 100.00% | 0.00 |
| 7500 | Schedule A Charges | 556,333.34 | 883,202.98 | 1,548,940.00 | 665,737.02 | 42.98% | 881,420.89 |
| 7600 | Prior Year Expense Adj | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (906.25) |
| | Total Support Operations | 560,192.67 | 919,640.25 | 1,630,700.00 | 711,059.75 | 43.60% | 917,616.31 |
| | Travel,Training,Educ and Utilities | | | | | | |
| 8405 | All Resv FF Training Costs | 0.00 | 160.00 | 4,000.00 | 3,840.00 | 96.00% | 0.00 |
| 8410 | Certification | 0.00 | 0.00 | 650.00 | 650.00 | 100.00% | 0.00 |
| 8415 | All Special Trng Costs-Burns | 0.00 | 0.00 | 300.00 | 300.00 | 100.00% | 0.00 |
| 8425 | Seminars/Conferences | 0.00 | 0.00 | 800.00 | 800.00 | 100.00% | 0.00 |
| 8540 | Meals - Directors | 0.00 | 0.00 | 250.00 | 250.00 | 100.00% | 0.00 |
| 8610 | Electric | 214.16 | 2,237.71 | 6,051.00 | 3,813.29 | 63.02% | 2,406.50 |
| 8620 | Gas Service | 157.81 | 520.24 | 1,792.00 | 1,271.76 | 70.97% | 495.24 |
| 8630 | Trash | 78.30 | 548.10 | 1,102.00 | 553.90 | 50.26% | 548.10 |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 180

## LOS OSOS COMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

301 - 301 - Fire

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| 8640 | Water | 22.00 | 556.11 | 1,503.00 | 946.89 | 63.00% | 754.06 |
| 8670 | Street Lighting | 5.40 | 46.73 | 365.00 | 318.27 | 87.20% | 59.77 |
| 8745 | Postage for Legal Notices | 0.00 | 168.00 | 900.00 | 732.00 | 81.33% | 0.00 |
| | Total Travel,Training,Educ and Utilities | 477.67 | 4,236.89 | 17,713.00 | 13,476.11 | 76.08% | 4,263.67 |
| | Administrative Costs Allocation | | | | | | |
| 8801 | Administrative Costs Allocation | 9,208.00 | 64,456.00 | 110,490.00 | 46,034.00 | 41.66% | 60,236.00 |
| | Total Administrative Costs Allocation | 9,208.00 | 64,456.00 | 110,490.00 | 46,034.00 | 41.66% | 60,236.00 |
| | Total Operating Expenditures | 580,381.62 | 1,078,386.00 | 1,988,475.64 | 910,089.64 | 45.77% | 1,092,012.39 |
| | Other Charges | | | | | | |
| 9022 | Debt Service - Principal | 0.00 | 22,581.46 | 0.00 | (22,581.46) | 0.00% | 0.00 |
| 9023 | Debt Service -Interest & Adm | 0.00 | 869.42 | 0.00 | (869.42) | 0.00% | 0.00 |
| 9079 | Debt Service Payment-Long Term Debt | 0.00 | 0.00 | 23,451.00 | 23,451.00 | 100.00% | 23,450.88 |
| 9154 | Losses and Damages | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 772.16 |
| | Total Other Charges | 0.00 | 23,450.88 | 23,451.00 | 0.12 | 0.00% | 24,223.04 |
| | Capital Outlay | | | | | | |
| | Building & Structures & Improvements | | | | | | |
| 9000 | Building, Structures & Improvements | 105.00 | 99,422.96 | 121,821.00 | 22,398.04 | 18.39% | 0.00 |
| | Total Building & Structures & Improvements | 105.00 | 99,422.96 | 121,821.00 | 22,398.04 | 18.39% | 0.00 |
| | Equipment, Fixtures & Systems | | | | | | |
| 9035 | Telephone System Replacement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 298.29 |
| 9059 | Equipment, Furniture & Fixtures | 0.00 | 0.00 | 28,000.00 | 28,000.00 | 100.00% | 0.00 |
| | Total Equipment, Fixtures & Systems | 0.00 | 0.00 | 28,000.00 | 28,000.00 | 100.00% | 298.29 |
| | Total Capital Outlay | 105.00 | 99,422.96 | 149,821.00 | 50,398.04 | 33.64% | 298.29 |
| | Inter-Fund Transfers | | | | | | |
| 9512 | Transfer In | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (62,117.00) |
| | Total Inter-Fund Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (62,117.00) |
| | Reserves and Designations | | | | | | |
| 9065 | Incr Veh Replacement (use 9504) | 0.00 | 150.00 | 0.00 | (150.00) | 0.00% | 27,466.88 |
| 9503 | *Increase to Reserve From Interfd Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 62,117.00 |
| 9504 | *Increase to Vehicle Replacement Reserve | 0.00 | 0.00 | 100,821.00 | 100,821.00 | 100.00% | 0.00 |

EXHIBIT C - page 181

Page: 14

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

301 - 301 - Fire

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| 9572 | *Increase General Contingency (Operations) Reserve | 0.00 | 0.00 | 10,000.00 | 10,000.00 | 100.00% | 0.00 |
| 9987 | *Increase Reserve from Investment Income | 386.31 | 2,882.08 | 0.00 | (2,882.08) | 0.00% | 7,448.23 |
| | Total Reserves and Designations | 386.31 | 3,032.08 | 110,821.00 | 107,788.92 | 97.26% | 97,032.11 |
| | Beginning Equities Used for Funding | | | | | | |
| 9507 | *Beg FY Encumbrances & Fund Reservation | 0.00 | (117,248.64) | (117,248.64) | 0.00 | 0.00% | (21,508.97) |
| | Total Beginning Equities Used for Funding | 0.00 | (117,248.64) | (117,248.64) | 0.00 | 0.00% | (21,508.97) |
| | Total Expenditures & Other Uses | 580,872.93 | 1,087,043.28 | 2,155,320.00 | 1,068,276.72 | 49.56% | 1,129,939.86 |
| | Net Fund Change | 122,662.87 | 86,216.18 | 0.00 | 86,216.18 | 0.00% | 62,842.87 |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 182

Page: 15

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

400 - 400 - Vista de Oro

From 1/1/2011 Through 1/31/2011

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| **Gross Revenues** | | | | | | |
| **Service Charges and Fees** | | | | | | |
| 4550 Lighting & Septic Assessments | 5,232.00 | 8,574.00 | 15,760.00 | (7,186.00) | (45.60)% | 8,247.00 |
| Total Service Charges and Fees | 5,232.00 | 8,574.00 | 15,760.00 | (7,186.00) | (45.60)% | 8,247.00 |
| **Interest and Investment Income** | | | | | | |
| 4500 Investment Income on Oper Funds | 0.00 | 27.76 | 0.00 | 27.76 | 0.00% | 0.00 |
| 4510 Investment Income on Restricted Funds | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 37.87 |
| Total Interest and Investment Income | 0.00 | 27.76 | 0.00 | 27.76 | 0.00% | 37.87 |
| Total Gross Revenues | 5,232.00 | 8,601.76 | 15,760.00 | (7,158.24) | (45.42)% | 8,284.87 |
| Total Revenues | 5,232.00 | 8,601.76 | 15,760.00 | (7,158.24) | (45.42)% | 8,284.87 |
| **Expenditures & Other Uses** | | | | | | |
| **Operating Expenditures** | | | | | | |
| **Salaries and Wages** | | | | | | |
| 8153 Labor Charged by Water | 215.01 | 1,582.16 | 2,800.00 | 1,217.84 | 43.49% | 852.15 |
| Total Salaries and Wages | 215.01 | 1,582.16 | 2,800.00 | 1,217.84 | 43.49% | 852.15 |
| **Fringe Benefits** | | | | | | |
| 5133 Benefits Charged by Water | 77.06 | 556.39 | 980.00 | 423.61 | 43.23% | 286.35 |
| Total Fringe Benefits | 77.06 | 556.39 | 980.00 | 423.61 | 43.23% | 286.35 |
| **Communications** | | | | | | |
| 6000 Cell Phones | 27.20 | 106.11 | 100.00 | (6.11) | (6.11)% | 81.23 |
| Total Communications | 27.20 | 106.11 | 100.00 | (6.11) | (6.11)% | 81.23 |
| **Fees** | | | | | | |
| 6342 Fees - Regulatory | 0.00 | 613.00 | 700.00 | 87.00 | 12.43% | 613.00 |
| 6345 Property Taxes and Assessments Expenditures | 0.00 | 18.00 | 30.00 | 12.00 | 40.00% | 18.00 |
| Total Fees | 0.00 | 631.00 | 730.00 | 99.00 | 13.56% | 631.00 |
| **Maint-Equip,Veh,Grounds,Struct** | | | | | | |
| 6430 Maintenance & Repairs | 0.00 | 0.00 | 150.00 | 150.00 | 100.00% | 0.00 |
| 6800 Grounds & Collection Sys. Maint. | 0.00 | 999.00 | 1,000.00 | 1.00 | 0.10% | 945.70 |
| Total Maint-Equip,Veh,Grounds,Structr | 0.00 | 999.00 | 1,150.00 | 151.00 | 13.13% | 945.70 |
| **Support Operations** | | | | | | |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 183

Page: 16

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

400 - 400 - Vista de Oro

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| 7210 | Emergency Meals/Drinks/Prepackaged | 0.00 | 3.14 | 0.00 | (3.14) | 0.00% | 0.00 |
| 7211 | Misc Fuel/Diesel | 9.05 | 45.50 | 0.00 | (45.50) | 0.00% | 0.00 |
| 7220 | Gasoline | 25.93 | 139.35 | 200.00 | 60.65 | 30.32% | 138.36 |
| 7230 | Misc Small Parts | 0.00 | 0.00 | 100.00 | 100.00 | 100.00% | 0.00 |
| 7320 | Professional & Consulting Services | 0.00 | 327.87 | 1,000.00 | 672.13 | 67.21% | 266.34 |
| | Total Support Operations | 34.98 | 515.86 | 1,300.00 | 784.14 | 60.32% | 404.70 |
| | Travel,Training,Educ and Utilities | | | | | | |
| 8610 | Electric | 13.75 | 282.31 | 350.00 | 67.69 | 19.34% | 183.43 |
| 8645 | Septage Handling | 0.00 | 5,800.00 | 8,000.00 | 2,200.00 | 27.50% | 2,250.00 |
| 8670 | Street Lighting | 79.32 | 719.88 | 1,700.00 | 980.12 | 57.65% | 932.14 |
| 8680 | Water Quality | 0.00 | 260.00 | 200.00 | (60.00) | (30.00)% | 0.00 |
| | Total Travel,Training,Educ and Utilities | 93.07 | 7,062.19 | 10,250.00 | 3,187.81 | 31.10% | 3,365.57 |
| | Administrative Costs Allocation | | | | | | |
| 8801 | Administrative Costs Allocation | 361.00 | 2,527.00 | 4,326.00 | 1,799.00 | 41.59% | 2,359.00 |
| | Total Administrative Costs Allocation | 361.00 | 2,527.00 | 4,326.00 | 1,799.00 | 41.59% | 2,359.00 |
| | Total Operating Expenditures | 808.32 | 13,979.71 | 21,636.00 | 7,656.29 | 35.39% | 8,925.70 |
| | Inter-Fund Transfers | | | | | | |
| 9512 | Transfer In | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (5,576.00) |
| | Total Inter-Fund Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (5,576.00) |
| | Reserves and Designations | | | | | | |
| 9503 | *Increase to Reserve From Interfd Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 5,576.00 |
| 9987 | *Increase Reserve from Investment Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 37.87 |
| | Total Reserves and Designations | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 5,613.87 |
| | Beginning Equities Used for Funding | | | | | | |
| 9508 | *Beg Reserves Released to Fund Final Budget | 0.00 | 0.00 | (5,876.00) | (5,876.00) | 100.00% | (1,732.00) |
| 9990 | *Beg FBA Used to Fund Budget | 0.00 | (2,440.93) | 0.00 | 2,440.93 | 0.00% | 0.00 |
| 9994 | *Beg Capital Outlay Reserve to Fund Budget | 0.00 | (3,435.07) | 0.00 | 3,435.07 | 0.00% | 0.00 |
| | Total Beginning Equities Used for Funding | 0.00 | (5,876.00) | (5,876.00) | 0.00 | 0.00% | (1,732.00) |

Page: 17

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

400 - 400 - Vista de Oro

From 1/1/2011 Through 1/31/2011

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|
| Total Expenditures & Other Uses | 808.32 | 8,103.71 | 15,760.00 | 7,656.29 | 48.58% | 7,231.57 |
| Net Fund Change | 4,423.68 | 498.05 | 0.00 | 498.05 | 0.00% | 1,053.30 |

Date: 2/24/11 03:49:56 PM

EXHIBIT C - page 185

**Water Revenues on Accrual Basis to January 31, 2011 - Fund 500**
**Compared to the YTD revenues of Prior Year (Accrual Basis)**

| | Monthly Revenues- Accrual Basis | YTD Revenues- Accrual Basis | Prior Yr Rev Accrual Basis Note ** | Increase over prior year-YTD | 2010/11-Budget Balance |
|---|---|---|---|---|---|
| **Original budget** | | | | | 1,600,000 |
| July 2010 | 161,324 | 161,324 | | | |
| August 2010 | 171,447 | 332,771 | | | |
| September 2010 | 148,921 | 481,692 | | | |
| October 2010 | 134,769 | 616,461 | | | |
| November 2010 | 88,903 | 705,364 | | | |
| December 2010 | 117,664 | 823,028 | 799,800 | 23,228 | 776,972 |
| January 2011 | 102,993 | 926,021 | 886,399 | 39,622 | 673,979 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

** For the prior yr 2009/10, Actual Water Sales revenues at year-end totaled $1,444,717.

EXHIBIT C - page 186

Page: 18

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

500 - 500 - Water

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | |
| **Gross Revenues** | | | | | | | |
| **Property Taxes** | | | | | | | |
| 4035 | Property Taxes | 56,913.03 | 102,499.99 | 188,343.00 | (85,843.01) | (45.58)% | 102,780.83 |
| | Total Property Taxes | 56,913.03 | 102,499.99 | 188,343.00 | (85,843.01) | (45.58)% | 102,780.83 |
| **Service Charges and Fees** | | | | | | | |
| 4030 | Water Revenues | 128,678.55 | 954,419.31 | 1,600,000.00 | (645,580.69) | (40.35)% | 962,493.35 |
| 4931 | Water Activation Fees | 450.00 | 6,050.00 | 10,000.00 | (3,950.00) | (39.50)% | 6,550.00 |
| 4932 | Water Bill Late Notices | 2,761.56 | 20,187.88 | 30,000.00 | (9,812.12) | (32.71)% | 20,330.34 |
| | Total Service Charges and Fees | 131,890.11 | 980,657.19 | 1,640,000.00 | (659,342.81) | (40.20)% | 989,373.69 |
| **Governmental Aid** | | | | | | | |
| 4948 | Govt-Federal Grants | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 1,615.00 |
| | Total Governmental Aid | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 1,615.00 |
| **Interest and Investment Income** | | | | | | | |
| 4500 | Investment Income on Oper Funds | 0.00 | 918.51 | 0.00 | 918.51 | 0.00% | 481.48 |
| 4501 | Interest-Undistributed Taxes | 0.00 | 32.89 | 0.00 | 32.89 | 0.00% | 94.77 |
| 4510 | Investment Income on Restricted Funds | 250.41 | 990.55 | 0.00 | 990.55 | 0.00% | (262.17) |
| | Total Interest and Investment Income | 250.41 | 1,941.95 | 0.00 | 1,941.95 | 0.00% | 314.08 |
| **Other Revenues** | | | | | | | |
| 4929 | Settlements & Recoveries | 0.00 | 5,363.07 | 0.00 | 5,363.07 | 0.00% | 0.00 |
| 4930 | Other Revenue | 0.00 | 1,049.99 | 0.00 | 1,049.99 | 0.00% | 3,092.45 |
| 4934 | Proceeds from Sale of Fixed Assets | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 19,877.00 |
| 4935 | Sale-Non Capital Items | 5.00 | 5.00 | 0.00 | 5.00 | 0.00% | 510.93 |
| | Total Other Revenues | 5.00 | 6,418.06 | 0.00 | 6,418.06 | 0.00% | 23,480.38 |
| | Total Gross Revenues | 189,058.55 | 1,091,517.19 | 1,828,343.00 | (736,825.81) | (40.30)% | 1,117,563.98 |
| | **Total Revenues** | 189,058.55 | 1,091,517.19 | 1,828,343.00 | (736,825.81) | (40.30)% | 1,117,563.98 |
| **Expenditures & Other Uses** | | | | | | | |
| **Operating Expenditures** | | | | | | | |
| **Salaries and Wages** | | | | | | | |
| 8012 | Call Back Pay | 61.53 | 555.00 | 3,000.00 | 2,445.00 | 81.50% | 1,938.73 |
| 8018 | Holiday Pay | 1,667.84 | 7,171.52 | 0.00 | (7,171.52) | 0.00% | 8,594.08 |
| 8045 | Overtime Pay | 334.63 | 2,010.86 | 5,000.00 | 2,989.14 | 59.78% | 2,900.52 |
| 8051 | Floating Holiday Pay | 0.00 | 690.64 | 0.00 | (690.64) | 0.00% | 1,552.24 |

EXHIBIT C - page 187

Page: 19

## LOS OSOS COMMUNITY SERVICES DISTRICT
### Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report
### 500 - 500 - Water
### From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| 8054 | Salaries & Wages- Regular Time | 15,189.64 | 110,661.36 | 290,532.00 | 179,870.64 | 61.91% | 144,022.73 |
| 8060 | Sick Leave Pay | 588.77 | 6,020.08 | 0.00 | (6,020.08) | 0.00% | 7,452.38 |
| 8063 | Standby Pay | 1,336.50 | 9,900.00 | 19,375.00 | 9,475.00 | 48.90% | 9,105.96 |
| 8066 | Comp Time Used | 1,490.24 | 10,188.27 | 0.00 | (10,188.27) | 0.00% | 603.41 |
| 8081 | Vacation Pay | 656.32 | 6,698.07 | 0.00 | (6,698.07) | 0.00% | 13,771.21 |
| 8100 | Salaries - Regular Time | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 6,499.50 |
| 8110 | Salaries - OT & Call Back | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 952.35 |
| 8120 | Salaries - Standby | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 621.50 |
| 8150 | Salaries Leave Pay | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 1,856.84 |
| 8152 | Labor Charged by Admin | 1,934.49 | 24,027.47 | 45,730.00 | 21,702.53 | 47.46% | 24,107.95 |
| 8197 | Labor Billings to Other Funds | (1,417.95) | (7,653.64) | (25,300.00) | (17,646.36) | 69.75% | (10,511.04) |
| | Total Salaries and Wages | 21,842.01 | 170,269.63 | 338,337.00 | 168,067.37 | 49.67% | 213,468.36 |
| | Fringe Benefits | | | | | | |
| 5000 | Periodic Medical Exams & Procedures | 128.00 | 228.00 | 0.00 | (228.00) | 0.00% | 0.00 |
| 5010 | Total Fringe Benefits | 0.00 | (915.00) | 111,266.00 | 112,181.00 | 100.82% | 0.00 |
| 5020 | FICA Employer Contribution | 79.36 | 643.47 | 0.00 | (643.47) | 0.00% | 0.00 |
| 5030 | Life Ins Cost | 250.56 | 1,994.10 | 0.00 | (1,994.10) | 0.00% | 2,228.66 |
| 5050 | Medicare Employer Contributions | 287.32 | 2,151.91 | 0.00 | (2,151.91) | 0.00% | 3,006.12 |
| 5060 | Medical Plan Employer Contribution | 3,036.56 | 20,884.23 | 0.00 | (20,884.23) | 0.00% | 27,705.88 |
| 5070 | Retirement Employer Contrib-Regular | 1,778.36 | 12,959.00 | 0.00 | (12,959.00) | 0.00% | 22,099.64 |
| 5071 | Retirement Employer Contrib- Addl Pick-up | 1,642.94 | 11,835.23 | 0.00 | (11,835.23) | 0.00% | 9,630.58 |
| 5075 | Retirement- Retirees' Incentive | 108.00 | 633.00 | 0.00 | (633.00) | 0.00% | 105.00 |
| 5100 | Unemp Ins Costs | 1,228.52 | 1,857.81 | 0.00 | (1,857.81) | 0.00% | 1,604.55 |
| 5102 | CA Training Tax- ER only | 19.82 | 29.99 | 0.00 | (29.99) | 0.00% | 0.00 |
| 5120 | Workers Comp Insurance ER Costs | 1,184.98 | 8,349.29 | 0.00 | (8,349.29) | 0.00% | 3,111.81 |
| 5132 | Benefits Charges by Admin | 1,055.54 | 8,691.88 | 16,000.00 | 7,308.12 | 45.68% | 7,819.74 |
| 5197 | Benefits Billings to Other Funds | (507.13) | (2,625.78) | (8,855.00) | (6,229.22) | 70.35% | (3,554.51) |
| | Total Fringe Benefits | 10,292.83 | 66,717.13 | 118,411.00 | 51,693.87 | 43.66% | 73,757.47 |
| | Communications | | | | | | |
| 6000 | Cell Phones | 326.39 | 1,273.38 | 2,000.00 | 726.62 | 36.33% | 1,319.35 |
| 6025 | Telephone | 510.26 | 3,437.37 | 6,000.00 | 2,562.63 | 42.71% | 3,445.54 |
| | Total Communications | 836.65 | 4,710.75 | 8,000.00 | 3,289.25 | 41.12% | 4,764.89 |

Page: 20

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

500 - 500 - Water

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| | **Computer Support** | | | | | | |
| 6100 | Computer & Softwares-Labor & Support | 158.49 | 878.49 | 10,500.00 | 9,621.51 | 91.63% | 16,062.17 |
| 6110 | Internet Service | 32.49 | 194.94 | 0.00 | (194.94) | 0.00% | 353.43 |
| 6120 | Computer H/W & S/W | 2,700.00 | 4,252.02 | 5,000.00 | 747.98 | 14.96% | 3,212.69 |
| 6142 | GIS Maps/Data/Upgrades | 0.00 | 0.00 | 2,080.00 | 2,080.00 | 100.00% | 1,041.25 |
| | **Total Computer Support** | 2,890.98 | 5,325.45 | 17,580.00 | 12,254.55 | 69.71% | 20,669.54 |
| | **Employee Hiring & Medical Costs** | | | | | | |
| 6200 | Employee Hiring | 0.00 | 0.00 | 500.00 | 500.00 | 100.00% | 0.00 |
| 6210 | Background Investigation | 0.00 | 0.00 | 100.00 | 100.00 | 100.00% | 0.00 |
| 6230 | Medical Exam | 0.00 | 150.00 | 500.00 | 350.00 | 70.00% | 0.00 |
| | **Total Employee Hiring & Medical Costs** | 0.00 | 150.00 | 1,100.00 | 950.00 | 86.36% | 0.00 |
| | **Fees** | | | | | | |
| 6340 | Misc Fees | 271.50 | 1,442.33 | 6,000.00 | 4,557.67 | 75.96% | 5,032.02 |
| 6342 | Fees - Regulatory | 0.00 | 5,542.20 | 13,000.00 | 7,457.80 | 57.37% | 11,519.99 |
| 6345 | Property Taxes and Assessments | 0.00 | 1,409.60 | 1,500.00 | 90.40 | 6.03% | 1,408.46 |
| | **Total Fees** | 271.50 | 8,394.13 | 20,500.00 | 12,105.87 | 59.05% | 17,960.47 |
| | **Expenditures** | | | | | | |
| | **Maint-Equip,Veh,Grounds,Structr** | | | | | | |
| 6405 | Maintenance- Extinguishers | 0.00 | 409.73 | 350.00 | (59.73) | (17.07)% | 347.82 |
| 6430 | Maintenance & Repairs | 6.48 | 14,963.67 | 16,920.00 | 1,956.33 | 11.56% | 4,749.44 |
| 6730 | Generator - Standby | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 149.37 |
| 6750 | Mechanical Tools/Equipment | 0.00 | 18.07 | 0.00 | (18.07) | 0.00% | 285.00 |
| 6800 | Grounds & Collection Sys. Maint. | 0.00 | 172.28 | 4,000.00 | 3,827.72 | 95.69% | 308.78 |
| 6900 | Building Maintenance | 12.43 | 122.90 | 5,000.00 | 4,877.10 | 97.54% | 1,166.42 |
| 6945 | Signs | 0.00 | 0.00 | 500.00 | 500.00 | 100.00% | 0.00 |
| 7299 | Contract Services- Maintenance | 0.00 | 0.00 | 10,000.00 | 10,000.00 | 100.00% | 0.00 |
| | **Total Maint-Equip,Veh,Grounds,Structr** | 18.91 | 15,686.65 | 36,770.00 | 21,083.35 | 57.34% | 7,006.83 |
| | **Support Operations** | | | | | | |
| 7020 | Major Mechanical Repairs | 0.00 | 0.00 | 3,000.00 | 3,000.00 | 100.00% | 92.16 |
| 7025 | Significant Value Purchase | 0.00 | 0.00 | 4,999.00 | 4,999.00 | 100.00% | 0.00 |
| 7055 | Routine Maintenance & Supplies | 129.23 | 1,913.34 | 3,000.00 | 1,086.66 | 36.22% | 1,034.36 |
| 7140 | General Office Supplies | 811.66 | 1,546.20 | 6,000.00 | 4,453.80 | 74.23% | 1,370.64 |
| 7160 | Postage & Shipping | 707.20 | 4,925.10 | 13,000.00 | 8,074.90 | 62.11% | 5,002.76 |

LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included in Report

500 - 500 - Water

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| 7170 | Special Purpose Forms and Printing | 0.00 | 0.00 | 750.00 | 750.00 | 100.00% | 6.51 |
| 7180 | Billing Supplies, Forms, & Printing | 1,108.05 | 2,251.31 | 4,000.00 | 1,748.69 | 43.72% | 2,287.23 |
| 7200 | Batteries - Common Sizes | 0.00 | 33.54 | 0.00 | (33.54) | 0.00% | 10.60 |
| 7204 | Cleaning Supplies | 0.00 | 90.15 | 0.00 | (90.15) | 0.00% | 0.00 |
| 7210 | Emergency | 0.00 | 42.11 | 0.00 | (42.11) | 0.00% | 0.00 |
| | Meals/Drinks/Prepackaged | | | | | | |
| 7211 | Misc Fuel/Diesel | 130.39 | 875.23 | 1,500.00 | 624.77 | 41.65% | 888.09 |
| 7220 | Gasoline | 347.43 | 1,867.12 | 6,000.00 | 4,132.88 | 68.88% | 1,939.03 |
| 7226 | Membership & Dues | 0.00 | 160.00 | 500.00 | 340.00 | 68.00% | 0.00 |
| 7230 | Misc Small Parts | 95.97 | 290.02 | 4,500.00 | 4,209.98 | 93.56% | 1,372.41 |
| 7237 | Process Control Supplies | 315.27 | 471.23 | 5,000.00 | 4,528.77 | 90.58% | 4,045.57 |
| 7239 | Water Treatment Chemicals | 1,056.06 | 6,829.20 | 15,000.00 | 8,170.80 | 54.47% | 5,693.09 |
| 7241 | Water Distribution System | 968.16 | 2,619.63 | 7,880.00 | 5,260.37 | 66.76% | 13,207.94 |
| 7242 | Minor Tools, Accessories, Office & Field Machines | 126.44 | 184.15 | 5,000.00 | 4,815.85 | 96.32% | 697.64 |
| 7246 | Uniform/Gear Expenses | 0.00 | 1,471.31 | 3,000.00 | 1,528.69 | 50.96% | 798.68 |
| 7249 | Safety Supplies | 53.22 | 2,552.32 | 1,000.00 | (1,552.32) | (155.23)% | 225.07 |
| 7250 | Water Quality Testing | 1,977.00 | 14,919.00 | 27,000.00 | 12,081.00 | 44.74% | 10,189.00 |
| 7253 | Rent - Equipment | 0.00 | 594.96 | 500.00 | (94.96) | (18.99)% | 487.17 |
| 7255 | Security | 246.00 | 246.00 | 6,500.00 | 6,254.00 | 96.22% | 544.26 |
| 7256 | Meters R & M | 0.00 | 3,933.28 | 3,500.00 | (433.28) | (12.38)% | 1,390.92 |
| 7320 | Professional & Consulting Services | 810.50 | 17,251.46 | 67,068.39 | 49,816.93 | 74.28% | 17,110.38 |
| 7321 | Janitorial Cleaning | 131.00 | 917.00 | 2,000.00 | 1,083.00 | 54.15% | 917.00 |
| 7325 | Insurance | 0.00 | 18,036.00 | 20,000.00 | 1,964.00 | 9.82% | 18,659.00 |
| 7326 | Legal Services | 2,763.20 | 7,656.00 | 8,000.00 | 344.00 | 4.30% | 5,146.00 |
| 7330 | Misc Expenses | 0.00 | 181.60 | 0.00 | (181.60) | 0.00% | 0.00 |
| 7340 | Public Notices | 0.00 | 0.00 | 1,000.00 | 1,000.00 | 100.00% | 0.00 |
| 7345 | Outreach | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 1,031.77 |
| 7348 | Water Conservation Program | 0.00 | 981.04 | 30,000.00 | 29,018.96 | 96.73% | 0.00 |
| 7352 | Rent - Offices and Other Structures | 480.00 | 2,880.00 | 6,000.00 | 3,120.00 | 52.00% | 3,360.00 |
| 7360 | Forms and Supplies>see 7140 or 7170 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 460.87 |
| | Total Support Operations | 12,256.78 | 95,718.30 | 255,697.39 | 159,979.09 | 62.57% | 97,968.15 |
| | Travel,Training,Educ and Utilities | | | | | | |
| 7324 | Education | 669.00 | 962.04 | 300.00 | (662.04) | (220.68)% | 90.00 |

EXHIBIT C - page 190

Page: 22

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

500 - 500 - Water

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| 8410 | Certification | 180.00 | 180.00 | 2,000.00 | 1,820.00 | 91.00% | 500.00 |
| 8425 | Seminars/Conferences | 0.00 | 0.00 | 2,000.00 | 2,000.00 | 100.00% | 383.13 |
| 8510 | Travel Expenses | 0.00 | 0.00 | 500.00 | 500.00 | 100.00% | 438.05 |
| 8550 | Mileage Reimbursement | 22.02 | 56.96 | 0.00 | (56.96) | 0.00% | 0.00 |
| 8610 | Electric | 5,883.52 | 58,817.53 | 93,000.00 | 34,182.47 | 36.76% | 62,853.43 |
| 8620 | Gas Service | 70.59 | 175.55 | 300.00 | 124.45 | 41.48% | 131.98 |
| 8630 | Trash | 94.44 | 712.08 | 1,140.00 | 427.92 | 37.54% | 661.08 |
| 8645 | Septage Handling | 0.00 | 0.00 | 500.00 | 500.00 | 100.00% | 0.00 |
| 8670 | Street Lighting | 35.69 | 2,279.42 | 700.00 | (1,579.42) | (225.63)% | 409.45 |
| | Total Travel,Training,Educ and Utilities | 6,955.26 | 63,183.58 | 100,440.00 | 37,256.42 | 37.09% | 65,467.12 |
| | Administrative Costs Allocation | | | | | | |
| 8801 | Administrative Costs Allocation | 41,836.00 | 292,852.00 | 502,037.00 | 209,185.00 | 41.67% | 258,399.00 |
| | Total Administrative Costs Allocation | 41,836.00 | 292,852.00 | 502,037.00 | 209,185.00 | 41.67% | 258,399.00 |
| | Total Operating Expenditures | 97,200.92 | 723,007.62 | 1,398,872.79 | 675,864.77 | 48.31% | 759,461.83 |
| | Other Charges | | | | | | |
| 9022 | Debt Service - Principal | 0.00 | 126,500.78 | 0.00 | (126,500.78) | 0.00% | 193,555.17 |
| 9023 | Debt Service -Interest & Adm | 68,869.33 | 153,595.36 | 0.00 | (153,595.36) | 0.00% | 87,023.39 |
| 9079 | Debt Service Payment-Long Term Debt | 0.00 | 0.00 | 280,097.00 | 280,097.00 | 100.00% | 0.00 |
| 9155 | Ground Water Adj. Expenses | 3,250.40 | 21,851.62 | 40,000.00 | 18,148.38 | 45.37% | 7,595.26 |
| | Total Other Charges | 72,119.73 | 301,947.76 | 320,097.00 | 18,149.24 | 5.67% | 288,173.82 |
| | Capital Outlay | | | | | | |
| | Building & Structures & Improvements | | | | | | |
| 9000 | Building, Structures & Improvements | 0.00 | 8,874.00 | 10,000.00 | 1,126.00 | 11.26% | 1,500.00 |
| | Total Building & Structures & Improvements | 0.00 | 8,874.00 | 10,000.00 | 1,126.00 | 11.26% | 1,500.00 |
| | Equipment, Fixtures & Systems | | | | | | |
| 9059 | Equipment, Furniture & Fixtures | 0.00 | 7,289.56 | 7,290.00 | 0.44 | 0.01% | 0.00 |
| | Total Equipment, Fixtures & Systems | 0.00 | 7,289.56 | 7,290.00 | 0.44 | 0.01% | 0.00 |
| | Total Capital Outlay | 0.00 | 16,163.56 | 17,290.00 | 1,126.44 | 6.51% | 1,500.00 |
| | Inter-Fund Transfers | | | | | | |
| 9512 | Transfer In | 0.00 | 0.00 | 0.00 | 0.00 | 0.09% | (31,171.00) |
| | Total Inter-Fund Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (31,171.00) |
| | Reserves and Designations | | | | | | |

Date: 2/24/11 03:49:05 PM

EXHIBIT C - page 191

Page: 23

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

500 - 500 - Water

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| 9503 | *Increase to Reserve From Interfd Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 31,171.00 |
| 9509 | *Designate FA Proceeds for Replacement | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 19,877.00 |
| 9571 | *Increase Capital Outlay Reserve | 0.00 | 0.00 | 60,000.00 | 60,000.00 | 100.00% | 0.00 |
| 9572 | *Increase General Contingency (Operations) Reserve | 0.00 | 0.00 | 50,420.00 | 50,420.00 | 100.00% | 0.00 |
| 9987 | *Increase Reserve from Investment Income | 250.41 | 990.55 | 0.00 | (990.55) | 0.00% | (235.27) |
| 9988 | *Incr Water Rate Stabilization Reserve | 0.00 | 0.00 | 32,000.00 | 32,000.00 | 100.00% | 0.00 |
| | Total Reserves and Designations | 250.41 | 990.55 | 142,420.00 | 141,429.45 | 99.30% | 50,812.73 |
| | Beginning Equities Used for Funding | | | | | | |
| 9507 | *Beg FY Encumrances & Fund Reservation | 0.00 | (7,068.39) | (7,068.39) | 0.00 | 0.00% | (1,971.25) |
| 9994 | *Beg Capital Outlay Reserve to Fund Budget | 0.00 | (35,348.00) | (35,348.00) | 0.00 | 0.00% | 0.00 |
| 9995 | *Beg Gen Contingency Reserve to Fund Budget | 0.00 | (7,920.00) | (7,920.00) | 0.00 | 0.00% | 0.00 |
| | Total Beginning Equities Used for Funding | 0.00 | (50,336.39) | (50,336.39) | 0.00 | 0.00% | (1,971.25) |
| | Total Expenditures & Other Uses | 169,571.06 | 991,773.10 | 1,828,343.00 | 836,569.90 | 45.76% | 1,066,806.13 |
| | Net Fund Change | 19,487.49 | 99,744.09 | 0.00 | 99,744.09 | 0.00% | 50,757.85 |

Page: 24

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

600 - 600 - Waste Water Project

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | |
| **Gross Revenues** | | | | | | | |
| | **Special Taxes and Assessments** | | | | | | |
| 4061 | Debt Service Assessments-2002 WW Bond | 352,012.94 | 645,672.57 | 1,148,383.00 | (502,710.43) | (43.78)% | 635,454.45 |
| 4062 | Wastewater Admin Charge | 0.00 | 0.00 | 14,900.00 | (14,900.00) | (100.00)% | 0.00 |
| | Total Special Taxes and Assessments | 352,012.94 | 645,672.57 | 1,163,283.00 | (517,610.43) | (44.50)% | 635,454.45 |
| | **Interest and Investment Income** | | | | | | |
| 4500 | Investment Income on Oper Funds | 0.00 | 134.84 | 0.00 | 134.84 | 0.00% | 0.00 |
| 4501 | Interest-Undistributed Taxes | 0.00 | 12.84 | 0.00 | 12.84 | 0.00% | 33.49 |
| 4510 | Investment Income on Restricted Funds | 0.00 | 3,948.08 | 5,000.00 | (1,051.92) | (21.04)% | (1,039.05) |
| | Total Interest and Investment Income | 0.00 | 4,095.76 | 5,000.00 | (904.24) | (18.08)% | (1,005.56) |
| | **Total Gross Revenues** | 352,012.94 | 649,768.33 | 1,168,283.00 | (518,514.67) | (44.38)% | 634,448.89 |
| | **Total Revenues** | 352,012.94 | 649,768.33 | 1,168,283.00 | (518,514.67) | (44.38)% | 634,448.89 |
| **Expenditures & Other Uses** | | | | | | | |
| **Operating Expenditures** | | | | | | | |
| | **Fees** | | | | | | |
| 6345 | Property Taxes and Assessments Expenditures | 0.00 | 1,845.92 | 2,200.00 | 354.08 | 16.09% | 1,844.24 |
| | **Total Fees** | 0.00 | 1,845.92 | 2,200.00 | 354.08 | 16.09% | 1,844.24 |
| | **Support Operations** | | | | | | |
| 7310 | Bank Service Charges | 0.00 | 0.00 | 7,000.00 | 7,000.00 | 100.00% | 0.00 |
| 7320 | Professional & Consulting Services | 38.00 | 2,172.05 | 5,700.00 | 3,527.95 | 61.89% | 5,296.36 |
| 7326 | Legal Services | 0.00 | 57,959.62 | 130,000.00 | 72,040.38 | 55.42% | 75,565.00 |
| 7335 | Legal - Creditor Committee | 0.00 | 41,016.68 | 60,000.00 | 18,983.32 | 31.64% | 7,630.00 |
| | **Total Support Operations** | 38.00 | 101,148.35 | 202,700.00 | 101,551.65 | 50.10% | 88,491.36 |
| | **Total Operating Expenditures** | 38.00 | 102,994.27 | 204,900.00 | 101,905.73 | 49.73% | 90,335.60 |
| **Other Charges** | | | | | | | |
| 9001 | Debt Service | 0.00 | 0.00 | 1,148,383.00 | 1,148,383.00 | 100.00% | 758,777.50 |
| 9022 | Debt Service - Principal | 0.00 | 370,000.00 | 0.00 | (370,000.00) | 0.00% | 0.00 |
| 9023 | Debt Service -Interest & Adm | 0.00 | 392,567.50 | 0.00 | (392,567.50) | 0.00% | 0.00 |
| 9351 | Tri-W Property Expenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 10,332.64 |
| | **Total Other Charges** | 0.00 | 762,567.50 | 1,148,383.00 | 385,815.50 | 33.60% | 769,110.14 |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 193

Page: 25

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

600 - 600 - Waste Water Project

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| | Inter-Fund Transfers | | | | | | |
| 9512 | Transfer In | 0.00 | 0.00 | (25,000.00) | (25,000.00) | 100.00% | 0.00 |
| | Total Inter-Fund Transfers | 0.00 | 0.00 | (25,000.00) | (25,000.00) | 100.00% | 0.00 |
| | Reserves and Designations | | | | | | |
| 9503 | *Increase to Reserve From Interfd Transfers | 0.00 | 0.00 | 25,000.00 | 25,000.00 | 100.00% | 0.00 |
| 9506 | *Decrease Reserves | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (89,317.50) |
| 9987 | *Increase Reserve from Investment Income | 0.00 | 3,948.08 | 5,000.00 | 1,051.92 | 21.04% | (816.77) |
| | Total Reserves and Designations | 0.00 | 3,948.08 | 30,000.00 | 26,051.92 | 86.84% | (90,134.27) |
| | Beginning Equities Used for Funding | | | | | | |
| 9508 | *Beg Reserves Released to Fund Final Budget | (98,976.30) | (98,976.30) | (190,000.00) | (91,023.70) | 47.91% | 0.00 |
| | Total Beginning Equities Used for Funding | (98,976.30) | (98,976.30) | (190,000.00) | (91,023.70) | 47.91% | 0.00 |
| | Total Expenditures & Other Uses | (98,938.30) | 770,533.55 | 1,168,283.00 | 397,749.45 | 34.05% | 769,311.47 |
| | Net Fund Change | 450,951.24 | (120,765.22) | 0.00 | (120,765.22) | 0.00% | (134,862.58) |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 194

Page: 26

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

650 - 650 - Solid Waste

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | |
| **Gross Revenues** | | | | | | | |
| | Franchise and Contract Revenues | | | | | | |
| 4800 | Franchise Revenues | 4,943.75 | 80,878.82 | 160,000.00 | (79,121.18) | (49.45)% | 78,717.37 |
| | Total Franchise and Contract Revenues | 4,943.75 | 80,878.82 | 160,000.00 | (79,121.18) | (49.45)% | 78,717.37 |
| | Interest and Investment Income | | | | | | |
| 4500 | Investment Income on Oper Funds | 0.00 | 300.28 | 0.00 | 300.28 | 0.00% | 0.00 |
| 4510 | Investment Income on Restricted Funds | 106.40 | 284.48 | 0.00 | 284.48 | 0.00% | 291.83 |
| | Total Interest and Investment Income | 106.40 | 584.76 | 0.00 | 584.76 | 0.00% | 291.83 |
| | Other Revenues | | | | | | |
| 4989 | Other Reimbursements | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 15.00 |
| | Total Other Revenues | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 15.00 |
| | Total Gross Revenues | 5,050.15 | 81,463.58 | 160,000.00 | (78,536.42) | (49.09)% | 79,024.20 |
| | Total Revenues | 5,050.15 | 81,463.58 | 160,000.00 | (78,536.42) | (49.09)% | 79,024.20 |
| **Expenditures & Other Uses** | | | | | | | |
| **Operating Expenditures** | | | | | | | |
| | Salaries and Wages | | | | | | |
| 8152 | Labor Charged by Admin | 1,201.72 | 9,012.90 | 15,777.00 | 6,764.10 | 42.87% | 23,374.86 |
| | Total Salaries and Wages | 1,201.72 | 9,012.90 | 15,777.00 | 6,764.10 | 42.87% | 23,374.86 |
| | Fringe Benefits | | | | | | |
| 5132 | Benefits Charges by Admin | 524.38 | 3,251.62 | 5,523.00 | 2,271.38 | 41.13% | 8,093.22 |
| | Total Fringe Benefits | 524.38 | 3,251.62 | 5,523.00 | 2,271.38 | 41.13% | 8,093.22 |
| | Communications | | | | | | |
| 6025 | Telephone | 0.00 | 0.00 | 50.00 | 50.00 | 100.00% | 0.00 |
| | Total Communications | 0.00 | 0.00 | 50.00 | 50.00 | 100.00% | 0.00 |
| | Computer Support | | | | | | |
| 6100 | Computer & Softwares-Labor & Support | 0.00 | 0.00 | 750.00 | 750.00 | 100.00% | 0.00 |
| | Total Computer Support | 0.00 | 0.00 | 750.00 | 750.00 | 100.00% | 0.00 |
| | Support Operations | | | | | | |
| 7140 | General Office Supplies | 0.00 | 0.00 | 100.00 | 100.00 | 100.00% | 3.23 |
| 7160 | Postage & Shipping | 0.00 | 22.00 | 200.00 | 178.00 | 89.00% | 10.24 |
| 7170 | Special Purpose Forms and Printing | 0.00 | 0.00 | 100.00 | 100.00 | 100.00% | 0.00 |

EXHIBIT C - page 195

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

650 - 650 - Solid Waste

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| 7320 | Professional & Consulting Services | 0.00 | 0.00 | 500.00 | 500.00 | 100.00% | 0.00 |
| 7326 | Legal Services | 0.00 | 35.20 | 50.00 | 14.80 | 29.60% | 34.00 |
| 7330 | Misc Expenses | 0.00 | 250.00 | 250.00 | 0.00 | 0.00% | 545.66 |
| 7344 | Food Expense - Event | 0.00 | 0.00 | 300.00 | 300.00 | 100.00% | 0.00 |
| 7346 | Promotional Expenses - Event | 0.00 | 0.00 | 150.00 | 150.00 | 100.00% | 0.00 |
| 7352 | Rent - Offices and Other Structures | 280.00 | 1,680.00 | 3,400.00 | 1,720.00 | 50.59% | 1,960.00 |
| | Total Support Operations | 280.00 | 1,987.20 | 5,050.00 | 3,062.80 | 60.65% | 2,553.13 |
| | **Travel,Training,Educ and Utilities** | | | | | | |
| 8510 | Travel Expenses | 0.00 | 13.00 | 0.00 | (13.00) | 0.00% | 0.00 |
| | Total Travel,Training,Educ and Utilities | 0.00 | 13.00 | 0.00 | (13.00) | 0.00% | 0.00 |
| | **Administrative Costs Allocation** | | | | | | |
| 8801 | Administrative Costs Allocation | 3,874.00 | 27,118.00 | 46,492.00 | 19,374.00 | 41.67% | 23,932.00 |
| | Total Administrative Costs Allocation | 3,874.00 | 27,118.00 | 46,492.00 | 19,374.00 | 41.67% | 23,932.00 |
| | Total Operating Expenditures | 5,880.10 | 41,382.72 | 73,642.00 | 32,259.28 | 43.81% | 57,953.21 |
| | **Inter-Fund Transfers** | | | | | | |
| 9511 | Interfund Transfer Out | 3,550.00 | 24,850.00 | 42,600.00 | 17,750.00 | 41.67% | 0.00 |
| 9512 | Transfer In | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (66,966.00) |
| | Total Inter-Fund Transfers | 3,550.00 | 24,850.00 | 42,600.00 | 17,750.00 | 41.67% | (66,966.00) |
| | **Reserves and Designations** | | | | | | |
| 9503 | *Increase to Reserve From Interfd Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 66,966.00 |
| 9572 | *Increase General Contingency (Operations) Reserve | 0.00 | 0.00 | 43,758.00 | 43,758.00 | 100.00% | 0.00 |
| 9987 | *Increase Reserve from Investment Income | 106.40 | 284.48 | 0.00 | (284.48) | 0.00% | 291.83 |
| | Total Reserves and Designations | 106.40 | 284.48 | 43,758.00 | 43,473.52 | 99.35% | 67,257.83 |
| | Total Expenditures & Other Uses | 9,536.50 | 66,517.20 | 160,000.00 | 93,482.80 | 58.43% | 58,245.04 |
| | Net Fund Change | (4,486.35) | 14,946.38 | 0.00 | 14,946.38 | 0.00% | 20,779.16 |

EXHIBIT C - page 196

Page: 28

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

800 - 800 - Drainage

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---|---|---|---|---|---|
| | **Revenues** | | | | | | |
| | **Gross Revenues** | | | | | | |
| | **Property Taxes** | | | | | | |
| 4035 | Property Taxes | 1,073.95 | 1,949.92 | 3,450.00 | (1,500.08) | (43.48)% | 1,919.43 |
| | Total Property Taxes | 1,073.95 | 1,949.92 | 3,450.00 | (1,500.08) | (43.48)% | 1,919.43 |
| | **Special Taxes and Assessments** | | | | | | |
| 4400 | Drainage Assessments | 30,546.00 | 48,969.00 | 95,360.00 | (46,391.00) | (48.65)% | 48,553.00 |
| | Total Special Taxes and Assessments | 30,546.00 | 48,969.00 | 95,360.00 | (46,391.00) | (48.65)% | 48,553.00 |
| | **Interest and Investment Income** | | | | | | |
| 4500 | Investment Income on Oper Funds | 0.00 | 273.73 | 0.00 | 273.73 | 0.00% | 13.77 |
| 4510 | Investment Income on Restricted Funds | 22.70 | 178.82 | 0.00 | 178.82 | 0.00% | 108.22 |
| | Total Interest and Investment Income | 22.70 | 452.55 | 0.00 | 452.55 | 0.00% | 121.99 |
| | **Other Revenues** | | | | | | |
| 4930 | Other Revenue | 22.20 | 49.70 | 0.00 | 49.70 | 0.00% | 39.95 |
| | Total Other Revenues | 22.20 | 49.70 | 0.00 | 49.70 | 0.00% | 39.95 |
| | Total Gross Revenues | 31,664.85 | 51,421.17 | 98,810.00 | (47,388.83) | (47.96)% | 50,634.37 |
| | Total Revenues | 31,664.85 | 51,421.17 | 98,810.00 | (47,388.83) | (47.96)% | 50,634.37 |
| | **Expenditures & Other Uses** | | | | | | |
| | **Operating Expenditures** | | | | | | |
| | **Salaries and Wages** | | | | | | |
| 8153 | Labor Charged by Water | 946.31 | 4,426.81 | 17,800.00 | 13,373.19 | 75.13% | 6,536.41 |
| | Total Salaries and Wages | 946.31 | 4,426.81 | 17,800.00 | 13,373.19 | 75.13% | 6,536.41 |
| | **Fringe Benefits** | | | | | | |
| 5133 | Benefits Charged by Water | 338.46 | 1,491.47 | 6,230.00 | 4,738.53 | 76.06% | 2,205.73 |
| | Total Fringe Benefits | 338.46 | 1,491.47 | 6,230.00 | 4,738.53 | 76.06% | 2,205.73 |
| | **Communications** | | | | | | |
| 6000 | Cell Phones | 163.20 | 636.69 | 600.00 | (36.69) | (6.12)% | 478.74 |
| 6025 | Telephone | 15.76 | 93.70 | 1,050.00 | 956.30 | 91.08% | 419.92 |
| | Total Communications | 178.96 | 730.39 | 1,650.00 | 919.61 | 55.73% | 898.66 |
| | **Computer Support** | | | | | | |
| 6100 | Computer & Softwares-Labor & Support | 0.00 | 0.00 | 1,000.00 | 1,000.00 | 100.00% | 0.00 |
| | Total Computer Support | 0.00 | 0.00 | 1,000.00 | 1,000.00 | 100.00% | 0.00 |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 197

Page: 29

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

800 - 800 - Drainage

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|---|
| | **Fees** | | | | | | |
| 6340 | Misc Fees | 0.00 | 0.00 | 1,000.00 | 1,000.00 | 100.00% | 0.00 |
| 6342 | Fees - Regulatory | 0.00 | 5,400.00 | 4,970.00 | (430.00) | (8.65)% | 3,600.00 |
| 6345 | Property Taxes and Assessments | 0.00 | 97.28 | 0.00 | (97.28) | 0.00% | 34.32 |
| | **Expenditures** | | | | | | |
| | **Total Fees** | 0.00 | 5,497.28 | 5,970.00 | 472.72 | 7.92% | 3,634.32 |
| | **Maint-Equip,Veh,Grounds,Structr** | | | | | | |
| 6430 | Maintenance & Repairs | 68.34 | 143.13 | 5,000.00 | 4,856.87 | 97.14% | 281.79 |
| 6800 | Grounds & Collection Sys. Maint. | 0.00 | 945.00 | 100.00 | (845.00) | (845.00)% | 0.00 |
| 6801 | Grounds Maintenance (Discontinued) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 37.86 |
| 6925 | Hose Tower | 0.00 | 15.68 | 0.00 | (15.68) | 0.00% | 0.00 |
| | **Total Maint-Equip,Veh,Grounds,Structr** | 68.34 | 1,103.81 | 5,100.00 | 3,996.19 | 78.36% | 319.65 |
| | **Support Operations** | | | | | | |
| 7210 | Emergency Meals/Drinks/Prepackaged | 0.00 | (12.25) | 0.00 | 12.25 | 0.00% | 0.00 |
| 7211 | Misc Fuel/Diesel | 32.61 | 736.70 | 0.00 | (736.70) | 0.00% | 0.00 |
| 7220 | Gasoline | 93.34 | 501.62 | 700.00 | 198.38 | 28.34% | 445.32 |
| 7242 | Minor Tools, Accessories, Office & Field Machines | 0.00 | 17.23 | 100.00 | 82.77 | 82.77% | 0.00 |
| 7246 | Uniform/Gear Expenses | 0.00 | 0.00 | 500.00 | 500.00 | 100.00% | 0.00 |
| 7253 | Rent - Equipment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 105.00 |
| 7320 | Professional & Consulting Services | 394.72 | 722.60 | 2,000.00 | 1,277.40 | 63.87% | 1,735.33 |
| 7344 | Food Expense - Event | 0.00 | 0.00 | 100.00 | 100.00 | 100.00% | 0.00 |
| 7346 | Promotional Expenses - Event | 0.00 | 160.16 | 500.00 | 339.84 | 67.97% | 0.00 |
| | **Total Support Operations** | 520.67 | 2,126.06 | 3,900.00 | 1,773.94 | 45.49% | 2,285.65 |
| | **Travel,Training,Educ and Utilities** | | | | | | |
| 8610 | Electric | 28.49 | 425.18 | 700.00 | 274.82 | 39.26% | 535.61 |
| 8660 | Parts/Materials | 0.00 | 0.00 | 700.00 | 700.00 | 100.00% | 995.88 |
| | **Total Travel,Training,Educ and Utilities** | 28.49 | 425.18 | 1,400.00 | 974.82 | 69.63% | 1,531.49 |
| | **Administrative Costs Allocation** | | | | | | |
| 8801 | Administrative Costs Allocation | 2,395.00 | 16,765.00 | 28,738.00 | 11,973.00 | 41.65% | 14,791.00 |
| | **Total Administrative Costs Allocation** | 2,395.00 | 16,765.00 | 28,738.00 | 11,973.00 | 41.65% | 14,791.00 |
| | **Total Operating Expenditures** | 4,476.23 | 32,566.00 | 71,788.00 | 39,222.00 | 54.64% | 32,202.91 |
| | **Capital Outlay** | | | | | | |

Date: 2/24/11 09:49:05 PM

EXHIBIT C - page 198

**LOS OSOS COMMUNITY SERVICES DISTRICT**

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

800 - 800 - Drainage

From 1/1/2011 Through 1/31/2011

| | | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year-Actual YTD |
|---|---|---:|---:|---:|---:|---:|---:|
| | Building & Structures & Improvements | | | | | | |
| 9000 | Building, Structures & Improvements | 6,074.88 | 6,074.88 | 0.00 | (6,074.88) | 0.00% | 0.00 |
| | Total Building & Structures & Improvements | 6,074.88 | 6,074.88 | 0.00 | (6,074.88) | 0.00% | 0.00 |
| | Equipment, Fixtures & Systems | | | | | | |
| 9059 | Equipment, Furniture & Fixtures | 0.00 | 0.00 | 10,000.00 | 10,000.00 | 100.00% | 0.00 |
| 9100 | Pump Purchase | 0.00 | 0.00 | 10,000.00 | 10,000.00 | 100.00% | 5,281.00 |
| | Total Equipment, Fixtures & Systems | 0.00 | 0.00 | 20,000.00 | 20,000.00 | 100.00% | 5,281.00 |
| | Total Capital Outlay | 6,074.88 | 6,074.88 | 20,000.00 | 13,925.12 | 69.63% | 5,281.00 |
| | Inter-Fund Transfers | | | | | | |
| 9512 | Transfer In | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (10,000.00) |
| | Total Inter-Fund Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (10,000.00) |
| | Reserves and Designations | | | | | | |
| 9503 | *Increase to Reserve From Interfd Transfers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 10,000.00 |
| 9987 | *Increase Reserve from Investment Income | 22.70 | 178.82 | 0.00 | (178.82) | 0.00% | 108.22 |
| 9989 | Contingency Reserve-Capital | 0.00 | 0.00 | 3,630.00 | 3,630.00 | 100.00% | 0.00 |
| 9999 | Contingency Reserve-Operations | 0.00 | 0.00 | 5,000.00 | 5,000.00 | 100.00% | 0.00 |
| | Total Reserves and Designations | 22.70 | 178.82 | 8,630.00 | 8,451.18 | 97.93% | 10,108.22 |
| | Beginning Equities Used for Funding | | | | | | |
| 9508 | *Beg Reserves Released to Fund Final Budget | 0.00 | (1,608.00) | (1,608.00) | 0.00 | 0.00% | (15,036.00) |
| 9995 | *Beg Gen Contingency Reserve to Fund Budget | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 |
| | Total Beginning Equities Used for Funding | 0.00 | (1,608.00) | (1,608.00) | 0.00 | 0.00% | (15,036.00) |
| | Total Expenditures & Other Uses | 10,573.81 | 37,211.70 | 98,810.00 | 61,598.30 | 62.34% | 22,556.13 |
| | Net Fund Change | 21,091.04 | 14,209.47 | 0.00 | 14,209.47 | 0.00% | 28,078.24 |

Page: 30

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 199

Page: 31

## LOS OSOS COMMUNITY SERVICES DISTRICT

Statement of Revenues and Expenditures - IS by Fund - Detail - Unposted Transactions Included In Report

900 - 900 - Parks & Recreation

From 1/1/2011 Through 1/31/2011

| | Current Period | YTD Actual | Budget | Budget Balance | % Budget Balance | Prior Year- Actual YTD |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| **Gross Revenues** | | | | | | |
| Interest and Investment Income | | | | | | |
| 4510   Investment Income on Restricted Funds | 345.61 | 733.72 | 0.00 | 733.72 | 0.00% | 1,060.34 |
| Total Interest and Investment Income | 345.61 | 733.72 | 0.00 | 733.72 | 0.00% | 1,060.34 |
| Total Gross Revenues | 345.61 | 733.72 | 0.00 | 733.72 | 0.00% | 1,060.34 |
| **Total Revenues** | 345.61 | 733.72 | 0.00 | 733.72 | 0.00% | 1,060.34 |
| **Expenditures & Other Uses** | | | | | | |
| **Operating Expenditures** | | | | | | |
| Travel,Training,Educ and Utilities | | | | | | |
| 8640   Water | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 117.79 |
| Total Travel,Training,Educ and Utilities | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 117.79 |
| Total Operating Expenditures | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 117.79 |
| **Reserves and Designations** | | | | | | |
| 9987   *Increase Reserve from Investment Income | 345.61 | 733.72 | 0.00 | (733.72) | 0.00% | 1,131.17 |
| Total Reserves and Designations | 345.61 | 733.72 | 0.00 | (733.72) | 0.00% | 1,131.17 |
| **Total Expenditures & Other Uses** | 345.61 | 733.72 | 0.00 | (733.72) | 0.00% | 1,248.96 |
| **Net Fund Change** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | (188.62) |

Date: 2/24/11 03:49:06 PM

EXHIBIT C - page 200